Exhibit B

1
2
3
4

Rilla Huml
25 Medici
Aliso Viejo, CA 92656
Plaintiff, Pro Se
(949) 215-7777
dreamlife7@att.net

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 10 2022

DAVID H. YAMASAKI, Clerk of the Court

BY: _____A. THAU_____ ,DEPUTY

5

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

6

## ORANGE COUNTY, CENTRAL JUSTICE CENTER

**30-2022**

7

RILLA HUML, an individual,

8

Plaintiff,

9

vs.

10

11

BROUGHAM REO OWNER LP, a
foreign limited partnership based in
NEW YORK county in DELAWARE;
doing business as Prime Asset Fund
III, an unknown entity;  Prime Capital
Advisors, LLC, an unknown entity;
SERVIS ONE, INC., a Delaware
corporation, authorized to do business
in California, doing business as BSI
FINANCIAL SERVICES;
WILMINGTON SAVINGS FUND
SOCIETY, FSB, a Delaware
corporation, doing business, but not
authorized to do business, as
CHRISTIANA TRUST, in California,
as Trustee, for BROUGHAM FUND I
TRUST, an unknown entity;
and Does 1 through 10,

12
13
14
15
16
17
18
19
20

21

Defendants.

22

CASE NO.

**01244882**

**VERIFIED COMPLAINT FOR:**

1. **GROSS NEGLIGENCE**
2. **LIBEL**
3. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
4. **VIOLATION OF THE CALIFORNIA FINANCING LAW (FIN. CODE, § 22000 ET SEQ.)**
5. **FRAUDULENT MISREPRESENTATION**
6. **UNJUST ENRICHMENT**
7. **UNFAIR AND DECEPTIVE TRADE PRACTCES ACT, F.S. 501.201 ET SEQ.**
8. **FRAUDULENT CONCEALMENT**
9. **VOID ASSIGNMENT TO THE DEED OF TRUST**
10. **QUIET TITLE**

Assigned for All Purposes
**JUDGE MARTHA GOODING**

23

24

## THE PARTIES AND VENUE

25
26
27
28

1.Plaintiff Rilla Huml ("Plaintiff" or "Huml") respectfully alleges and submits this Complaint for Damages, Injunctive and Declaratory Relief, and Demand for Jury Trial as follows:

-1-

2. Plaintiff is informed and believes, and based thereon, alleges that Defendant SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES ("BSI"), is now the "Servicer" of the Loan.

3. Plaintiff is informed and believes, and based thereon, alleges that Defendant WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity, claims to be the "Lender" of the Loan, and the current Beneficiary under the Deed of Trust securing the Loan, and believes they are entitled to receive Loan payments, being collected by BSI from Plaintiff.

4. Plaintiff is informed and believes, and based thereon, alleges that Defendant Brougham REO Owner, LP is a foreign limited partnership consisting of bank owned properties, and is not a trust registered with the SEC as Brougham Fund I Trust, which is an unknown entity.

5. Plaintiff is informed and believes, and based thereon, alleges that Defendant Prime Asset Fund III is a limited liability corporation in real estate and rental and leasing, D/B/A Prime Capital Advisors, LLC, and is conducting business with Brougham REO Owner, LP.

6. The true names and capacities of Does 1-10, inclusive, whether individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff alleges on information and belief that each fictitiously named Defendant is responsible in some manner for the events described herein and is liable to Plaintiff for the damages they have incurred.

Plaintiff will amend this Complaint to show the true names and capacities of the Doe Defendants when they have been ascertained.

7. Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants. Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, brokers and/or representatives while they were acting within the actual or ostensible scope of their authority. The exact terms and conditions of the agency, representation, or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert appropriate allegations.

8. At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent or the assignee or the substitute of other Defendants, and all of Defendants acted within the scope of their agency if acting as an agent, the assignee or the substitute of another. At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

9. At all relevant times, Defendants have engaged in conspiracy, common

enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continues to the present.

10. Venue is proper in this Court, as the subject Property is located within its' jurisdiction. The violations of law alleged in this Complaint occurred in Orange County, California, and elsewhere in Orange County, California.

### THE LOAN HISTORY

**11**. In 1989, Plaintiff purchased the Property. In March 2004, Plaintiff refinanced the Property with a $200,000 Loan (the "Loan") from World Savings Bank, FSB secured by a Deed of Trust, recorded in priority position against the Property, **(Exhibit "A")**.

12. In August 2005, Plaintiff borrowed an additional $100,000 from World Savings Bank, FSB, in the form of a Home Equity Line of Credit, secured by a Deed of Trust, recorded in subordinate position against the Property.

13. *In or about 2006, Wachovia Corporation acquired World Savings Bank, FSB.*

14. In or about 2008, Wells Fargo Bank, N.A. acquired Wachovia Corporation.

15. On February 23, 2017, - *when the problems started* – Wells Fargo Bank, N.A., sold and transferred the Loan to Wells Fargo Bank South Central, N.A, an unknown entity..

16. Also, that same day on February 23, 2017, Wells Fargo Bank South Central, N.A. an unknown entity sold and transferred the Loan to Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christiana Trust, in California, as Trustee, for Brougham Fund I Trust, claiming to be the current Lender. See the Corporate Assignment of Deed of Trust attached hereto as **(Exhibit "B")**, which is incorporated herein by this reference.

**PLAINTIFF'S EFFORTS TO RECTIFY THE SERVICER AND LENDER ERRORS**

17.  On February 24, 2021, Plaintiff sent a letter to BSI entitled "Notice of Error, Request for Debt Validation, Qualified Written Request for Information", **(Exhibit "C")** stating that BSI had failed to apply most of Plaintiff's payments, and that the outstanding loan balance calculation was gravely inaccurate.

18.  Several months later, Plaintiff sent BSI a another Notice of Error, Request for Debt Validation, Qualified Written Request for Information describing what she believed were Lender and Servicer errors, and demanding a complete account review and correction.

19.  Based on the likelihood of Plaintiff prevailing on the merits of her causes of action set forth in this Complaint, as well as the irreparable harm that would result to Plaintiff by losing her home, this Court should enjoin the pending foreclosure process. Once a TRO is issued, counsel for Plaintiff will have the fair opportunity to mediate with all defendants in an effort to expediently reach a resolution.

**FIRST CAUSE OF ACTION**
**GROSS NEGLIGENCE**
**(Against BSI, Wilmington, Brougham REO, Prime Asset Fund)**

20.  Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein

21.  On or about February 2017, BSI began serving Plaintiff's loan. The initial escrow balance showed that it was almost 90-days past due and showed a zero-escrow balance. Plaintiff was neither privy in the decision to change servicers, nor was she informed of the change. The fact is at the time BSI assumed the servicing rights from

-5-

Wells Fargo, the mortgage was being paid on time, there were no escrow shortages, and the mortgage was in good standing. Plaintiff was surprised to see that according to BSI, she was being reported past due, the escrow account was two months past due, and she was nearing foreclosure. How could something like this happen to a borrower who has paid her mortgage on time, as agreed?

22.  The problem with loan services is, once the borrower has been reported as past due, the system takes over and it becomes nearly impossible to get the loan data corrected as the Servicer / BSI, began pushing the loan forward to foreclosure.

23.  In June 2017, Plaintiff notified BSI that their transferred account balance was flawed, and the amount BSI claimed was due and owing was wrong and excessive.

24.  The discrepancy at that time was approximately $8,500. BSI had a moral and a legal obligation to correct their defective records. The law is clear on this matter. However, BSI blatantly and deliberately disregarded Plaintiff's repeated attempts to resolve the account balance, and the risk of foreclosure became imminent. BSI evaded negotiations with Plaintiff, although she sent two detailed Notice of Errors in 2021.

25.  As a result of BSI's negligence, Plaintiff was forced to incur the additional costs of filing for Chapter 13 protection in January 2018.

26.  The negligence and abuse did not stop there. BSI placed all payments received directly from Plaintiff during 2018, during the Chapter 13, in the amount of $1,189 each, in "unapplied funds" category.  Not one payment was showing as paid.  BSI then used those "unapplied payments" as a weapon to file for relief of the automatic stay.  To be clear, Plaintiff paid 11 payments to BSI in 2018, the payments were cashed and cleared by their bank, and BSI claimed they received nothing. The bankruptcy court granted BSI relief from the automatic stay on December 17, 2018. How is it possible that those 11

payments are not credited to Plaintiff's account to the present?  Five additional payments  in the amount of $1,190. were provided to BSI in 2019 that also have never been credited to Plaintiff's account.

27.    Defendant BSI knew their books and records were inaccurate in the onset.  BSI knew they received and cashed payments from Plaintiff in 2017, 2018, and 2019.    BSI Manager Steve Coleman knew the gravity of the situation.   BSI received two QWR inquiries, and responded with complete denial and without considering a resolution. Since April 2019, BSI has evaded communication with Plaintiff, and has directed her to their attorney, Blank Rome, who also has failed to communicate, respond, or address BSI's conduct.  BSI has developed a pattern of grossly negligent conduct with malicious intentions.    According to California Law, CACI 425, BSI's conduct constitutes gross negligence, and Plainitiff has a triable issue of fact.  *(Van Meter* v. Bent Constr. Co. (1956) 46 Cal.2d 588, 594 [297 P.2d 644], internal citation omitted.)

28.    *Gross negligence is when someone's actions or omissions deviate significantly from that of a prudent person placed in a comparable situation.   Gross negligence is when a person disregards the consequences of his or her actions on others or legal duty. Gross negligence is applied when a person adopt a behavior or conduct showing an extreme indifference or disregard for the safety or security of others or does not care for the consequences of his or her actions likely to cause harm.*

29.    *Evidence of conduct that evinces an extreme departure from an industry standard demonstrates gross negligence.    (33 California Forms of Pleading and Practice, Ch. 380, Negligence, §§ 380.10, 380.171 (Matthew Bender) NEGLIGENCE CACI No. 425 281)*

30.    In March 2021, BSI sent Plaintiff a statement with **$138,000** of non-awarded, unjustified fees to her account balance, **(Exhibit "D")**.    Where is the oversight of

servicers' records and unethical practices., such as BSI's? In November 2021, BSI sent Plaintiff a pay-off statement that included $33,000 of fees and costs added to the account during 2020, and BSI sent a new pay-off statement in January 2022, adding another $70,000 additional junk fees to the previous $33,000 **(Exhibit "E")**.   This exorbitant amount of fees and costs recently added to Plaintiff's balance, in the sum of **$120,000** equates to over 60% of the entire loan balance.   These fees have not been identified, validated, justified, authorized or awarded by any court.   These costs are separate from payments, interest, or taxes and insurance.  How can any lender or servicer justify this form of theft by extortion?   The books and records for Plaintiff's loan are fatally flawed.

31. In CFPB-2022-0003, **(Exhibit "F"),** the Consumer Financial Protection Bureau is currently investigating the gouging of borrowers by lenders and servicers with outrageous unauthorized fees.  If the CFPB is taking bold action against such conduct, the Court should also vehemently disapprove of BSI's, Wilmington's, and Brougham's deceitful actions.

32.   It is BSI's willful intention to conduct themselves in a manner that disregards the consequences of their actions and is likely to cause harm to Plaintiff. BSI, Wilmington, and Brougham are unquestionably responsible for damages to Plaintiff as a result of their grossly negligent conduct and practices.

33.   As a direct and proximate result of BSI's and Brougham's gross negligence, Plaintiff has been severely damaged. Plaintiff has suffered money damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### *SECOND CAUSE OF ACTION*

## *LIBEL*
### *(Against BSI, Wilmington)*

34.   Plaintiff re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

35.   In previous actions, BSI committed five RESPA / TILA violations against Plaintiff during 2017.  In 2019, Plaintiff attempted to hold BSI accountable. However, in September, 2020, BSI refused to accept responsibility for their RESPA violations. Instead, BSI shifted the blame from BSI to Plaintiff, accusing her with malicious intent of judicial estoppel, and using the slanderous accusation as a defense to avoid liability for BSI's  inappropriate conduct.

36.   BSI was fully knowledgeable that Plaintiff was innocent in filling out her disclosures.. She was represented by a reputable bankruptcy attorney firm, Langley & Chang.  Yet, BSI and Wilmington developed a strategy to duplicitously use judicial estoppel as their defensive tactic.   The judicial estoppel accusation was extremely damaging to Plaintiff's reputation and finances.

37.  Libel is a method of defamation expressed by print, writing, pictures, signs, effigies, or any communication embodied in physical form that is injurious to a person's reputation, exposes a person to public hatred, contempt or ridicule, or injures a person in his/her business or profession.  It is a formal written declaration or statement, as one containing the allegations used in a defense, or the grounds of a charge, anything that is defamatory or that maliciously or damagingly misrepresents.

38.  Wilmington falsely accused Plaintiff of intentionally manipulating the system and accused her of "gamesmanship".   The truth is that Plaintiff's attorney firm legitimately may have made an error, by simply not checking "yes" to the question, "does anyone owe you any money?" within the schedule of assets.  Plaintiff relied on

the expertise of Langley & Chang to perform their services with due diligence.

39.  BSI and Wilmington claimed that somehow resolution of their inaccurate accounting, and accountability for their RESPA violations, both of which never occurred,  would somehow have been considered an asset to Plaintiff's bankruptcy estate, and should have been listed in Plaintiff's schedule of assets.   Judge Albert and bankruptcy court Trustee Attorney Mr. Chein concurred with plaintiff, and granted permission to re-opened the Chapter 13 for the sole purpose of amending the schedule of assets to resolve any inaccuracy.  Plaintiff successfully completed the amendment to the schedule of assets in July, 2021, and it is on record.

40.  BSI and Wilmington were attempting to fabricate assets within the bankruptcy court that did not exist, and to the present have not come into existence. Defendants later utilized the "presumption of a potential asset " to  defame Plaintiff with  judicial estoppel.   Plaintiff was accused of gamesmanship and manipulation, techniques used repeatedly by Wilmington and BSI.   Plaintiff was humiliated  in the bankruptcy court and in front of her Judge.   Plaintiff is an innocent party, who is trying to understand how the defendants were vindicated and continue to conduct business without integrity and fairness.

41.  Appallingly, defendant Wilmington filed a motion in the bankruptcy court, pleading that Judge Albert reverse his court order.   Wilmington's intention was to preserve the judicial estoppel defense and relieve their servicer, BSI, of all RESPA claims against them.

42.  One must ask, why would Wilmington and BSI take such desperate measures to ensure a document deliberately remains inaccurate on record?  Defendants BSI and Wilmington are guilty of pre-meditatively concealing the truth and fabricating

falsity.  Defendants BSI and Wilmington have committed libel against Plaintiff verbally, in print in July 2020, in legal court documents in July and September 2020, on Zoom with other parties,  and on record.  With malicious intent, BSI and Wilmington  have been defaming Plaintiff, her reputation, and her character, and her attorney firm's character with the bankruptcy court.  Wilmington and BSI's tactics had exhausted Langley & Chang's resources, and they have damaged Plaintiff's attorney/client relationship.  BSI 's and Wilmington's misrepresentation of Plaintiff have been extremely damaging.

43.  As as direct result of defendants BSI's and Wilmington's defamation and libel, Plaintiff has suffered financial and emotional damages, in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### *(Against BSI, Wilmington)*

44.  Plaintiff re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

45.   Plaintiff argues that there is an implied duty of care in every contract. This applied duty of care extends to and is a component of assumed contracts.  Although this implied duty does not bestow new rights upon the parties, it requires contracted parties to act in a reasonable manner when performing or enforcing contractual rights. Parties are not to act in a manner that impairs or inhibits the other party's right to receive contractual benefits.

46.  To the present, Plaintiff has paid  over $40,000 to BSI since 2017.  Plaintiff's loan balance was transferred from Wells Fargo to BSI around March 2017 with an $8,500

deficiency, as all funds in Plaintiff's escrow account had been seized.

47.   In addition, BSI has added $110,000 in junk fees and costs. <u>BSI has credited Plaintiff's account for $0.00 since 2017,</u> and $0.00 toward principal, after having paid on the loan since 2004, a loan initiated with Goldenwest/World Saving in February 2004.

48.   By refusing to apply and credit Plaintiff's account for all the payments made to BSI, by obfuscating Plaintiff's loan history, and by deliberately adding illicit fees to Plaintiff's account, defendants are abusing their legal authority and they have breached the implied covenant of good faith and fair dealing. BSI is culpable of non-performance in failing to credit Plaintiff for any and all payments received, by interfering with Plaintiff's performance of her contract, and by misappropriating funds belonging to Plaintiff's account.

49.   BSI has failed to fulfill their obligation(s), whether partially or wholly, as described on the assumed contract. The terms of Plaintiff's agreement that originated with World Savings are not adjustable at BSI's discretion, to benefit Defendants' profit margins. Plaintiff is the aggrieved party here.

50.   The implied covenant of good faith and fair dealing is a general presumption that the parties to a contract will deal with each other honestly, fairly, and in good faith, so as to not destroy the right of the other party or parties to receive the benefits of the contract.

51.   *"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." ' [] The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." (Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 371-372 [6 Cal.Rptr.2d 467,826 P.2d 710],*

*internal citations omitted.)*

52. BSI has abused their authority as a servicer. They have failed to provide any valid explanation for the atrociously flawed records relating to Plaintiff's loan balance. BSI has received payments, utilized the funds, claimed these exact funds are due and owing, and added a shameful amount of fees to Plaintiff's account balance.

53. Despite Plaintiff's immense efforts to appeal to BSI and Wilmington during the entire years of 2020 and 2021, both defendants blatantly avoided a resolution. To steal funds provided from a borrower and then attempt to foreclosure on the borrower's property, is the most egregious form of theft, theft of money and theft of property.

54. As a direct and proximate result of Defendants' breach of the implied covenant or good faith and fair dealing, Plaintiff has been damaged in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA FINANCING
### FIN. CODE § 22000 ET SEQ.
**(Against BSI, Wilmington, Brougham REO Owner, LP, Prime Asset Fund III)**

55. Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

56. On February 23, 2017, Wells Fargo transferred the assignment to Plaintiff's Deed of Trust to Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized to do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity.

57. Plaintiff takes issue that Brougham Fund I Trust is an unknown entity that is not registered with the SEC as a trust. Brougham Fund I Trust is not registered with the

state of California as a corporation, trust, foreign corporation, limited partnership or as a foreign general or limited partnership.  Brougham Fund I Trust is a phantom, with no substantial existence, no tax liability, and no registration.

58.   Plaintiff also takes issue that Brougham Fund I Trust is collecting funds from Plaintiff without validity, and without regulation by the Securities and Exchange Commission.   Brougham Fund I Trust is not verifiable.   The mere fact that Wilmington Savings Fund Society is claiming trustee's rights on behalf of Brougham Fund I Trust, is a blatant misrepresentation of fact, it is without authenticity, and Wilmington's trustee rights to collect funds on behalf of Brougham Fund I Trust are void.

59.   The only Brougham in existence is Brougham REO, registered as a foreign partnership, conducting business in conjunction with with Prime Asset Fund III, a limited partnership, also not a trust, and Prime Capital Advisors, LLC..

60.  BSI, Wilmington, Brougham REO Owner, LP, Prime Asset Fund III have violated the California Financing Law (Fin. Code, § 22000 et seq.) by:  a) not acquiring and sustaining a California license,  b) not maintaining a register of all loans with books and records sufficient to document compliance with the California Finance Lenders Law., and  c) by committing misrepresentations, fraudulent and deceptive acts with respect to Plaintiff's loan and property.

61.   When over $100,000 of unauthorized charges have been added to the balance of Plaintiff's loan, precisely for junk fees and costs, between November and December 2021,  the act hereby constitutes  an intentional violation of  the  California Financing Law (Fin. Code, § 22000 et seq.).

62.   The California Financing Law (Fin. Code, § 22000 et seq.) requires the licensing and regulation of finance lenders and brokers making and brokering consumer and

commercial loans; prohibits misrepresentations, fraudulent and deceptive acts in

connection with making and brokering of loans; and provides administrative, civil

(injunction and ancillary relief) and criminal remedies for violations of the law.

63.   To protect borrowers against unfair practices by some lenders, having due

regard for the interests of legitimate and scrupulous lenders.

64.   According to The California Financing Law (Fin. Code, § 22000 et seq.), in

order to acquire and sustain a license to transact loans in California, as a foreign

corporation or as a foreign general or limited partnership,

*a)  The lender must provide the type and place of business, licensee information, bonding agent, qualification of securities, balance sheet, surety bond, and authorization of disclosure.*
*b)  The lender must maintain a register of all loans made or brokered under this license that will be updated at least monthly, and that the information maintained in the register will include the name and address of the borrower, account number, amount of loan, date of loan, terms, total of payments and the annual percentage rate, and that the register will also show the account number, name of borrower and payoff date of all loans paid in full.*
*c)  The lender agrees to maintain books and records sufficient to document compliance with the California Finance Lenders Law.*
*d)  The lender, if located outside of the State of California, must  make available to the California Corporations Commissioner or the Commissioner's representatives, at a location in this state designated by the California Corporations Commissioner, or the* Commissioner's *representatives, the books, accounts, papers, records and files within 10 calendar days of any request from the Commissioner; or to pay the reasonable expenses for travel, meals, and lodging of the California Corporations Commissioner or the Commissioner's representatives incurred during any investigation or examination made at the licensee's location outside this state.*
*e)  The lender must attest that the they (including officers, directors, general partners, persons responsible for the applicant's lending activities in California and persons owning or controlling directly or indirectly, 10% or more of the applicant) has not engaged in conduct that would be cause for denial of a license.*

65.   Wilmington obfuscation and misrepresentation of fact as trustee for Brougham

Fund I Trust, and abuse of power regarding Plaintiff's loan, deed of trust, and property,

are triable and punishable violations of California law.

66.   As a direct and proximate result of BSI's, Wilmington's, Brougham REO's, and

Prime Asset Fund III's, violations of  California Financing Law (Fin. Code, § 22000 et

seq.),  Plaintiff has suffered money damages and emotional damages in an amount in

excess of the minimum jurisdiction of this court, as will be proven at time of trial.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against Wilmington, Brougham Fund I Trust, Brougham REO Owner, LP**
**Prime Asset Fund III)**

67.    Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

68.    The assignment to Plaintiff's Deed of Trust was transferred from Wells Fargo South Central, an unknown Wells Fargo entity, on February 23, 2017 to Wilmington Savings Fund Society, FSB, whom was listed as trustee for Brougham Fund I Trust.   The assignment reads: WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized to do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST.

69.   Christiana Bank & Trust Company was acquired by WSFS Financial on December 3, 2010, and remains a separate entity.   Christiana Trust was formed as a division of WFSF in September 2017.

70.   Plaintiff's takes issue with the legal definition of the assignment to Wilmington, specifically "doing business, but not authorized to do business, as Christiana Trust", **(Exhibit "B").**

71.   On the date of the assignment of Plaintiff's Deed of Trust, February 23, 2017, Christiana Trust had not yet been formed, and as such, and according to the legal definition, was not authorized to conduct business in California.

72.    Plaintiff also takes issue that Wilmington is claiming to be the trustee on behalf of an unknown entity, Brougham Fund I Trust.   Plaintiff attests that Brougham Fund I Trust is a non-existent entity.   Brougham Fund I Trust is not a legitimate trust,

and is not registered with the Security Exchange Commission. Brougham Fund I Trust is not registered with the IRS, and is sheltering assets by posing as a trust.

73.    Therefore, Wilmington on behalf of Brougham Fund I Trust, has committed the act of fraudulent misrepresentation, has no legal right to collect funds from Plaintiff and has no legal claim to Plaintiff's property. As a direct result of Wilmington's fraudulent misrepresentation, the assignment to Plaintiff's Deed of Trust is void.

74.    To the present , WSFS has intentionally concealed from Plaintiff all substantiating data relating to her loan. WSFS has failed to keep an accurate report of its services with the SEC. There is no transparency as to certificate #', security holder's registration, address, issuance, and certificate detail. Rule 17Ad-10(a) requires a record-keeping transfer agent to accurately post transactions to the master security-holder file with details, such as the certificate number, number of shares or principal dollar amount, the security-holder's registration, the address of the registered security-holder, and the issue and cancellation dates for the security ("Certificate Detail"), about the securities issued, purchased, transferred or redeemed.

75.    WSFS is a repeat offender. On September 22, 2016, the SEC issued the following "Cease & Desist" order against "Wilmington Savings Fund Society, FSB",who was the successor to "Christiana Bank & Trust Company." (See: Wilmington Savings Fund Society – SEC Cease and Desist 2016 ). This entity has been operating as a Trustee / "Transfer Agent" on behalf of unverifiable investors. WSFS' failure to maintain "books and records," as well as its filing of records that were "inaccurate and/ or incomplete," means it is very likely that this Trustee represented no one.

76.    As a registered transfer agent, WSFS was required to, among other things: (1) keep its registration current and accurate and to file annual reports regarding its

transfer agent services; (2) make and maintain certain books and records for each issuer to which it provided transfer agent services; and (3) have written policies and procedures with respect to certain of its transfer agent services.

77.  WSFS maintained master security-holder files for several issuers to which it provided transfer agent services; however, those files contained multiple inaccuracies. For example, for certain issues, WSFS failed to maintain accurate records of the outstanding balances and registered incorrect security-holder names in the master security-holder files.

*Quoted from the SEC ruling, 'WSFS legally commenced acting as a transfer agent in 2010. From that time through 2013, however, WSFS failed to keep its registration current and accurate and failed to file an accurate annual report of its services. In addition, although WSFS maintained some records for issuers to which it provided transfer agent services, it did not maintain all of the records or create all of the reports required by the Transfer Agent Rules. Further, those records WSFS did maintain were inaccurate and/or incomplete." WSFS Filed Inaccurate Transfer Agent Registration and Annual Reporting Forms in Violation of Sections 17A(c)(1) and 17A(d)(1) and Rules 17Ac2-1 and 17Ac2-2.*

*Wilmington's consent order with the SEC, File No. 3-17566, dated September 22, 2016, states: The SEC finds that WSFS violated Sections 17 and 17A of the Securities Exchange Act of 1934 and Rules 17Ac2-1, 17Ac2-2, 17Ad-10, 17Ad-11, 17Ad-15, 17Ad-17 and 17Ad-19. Without admitting or denying the findings, WSFS agreed to cease and desist from further violations of these provisions and to pay a $375,000 penalty.*

78.  Wilmington transgressions against Plaintiff are in violation of the Cease and Desist Order No. 3-17566.   The consent order does not have an expiration date. Wilmington is still acting as a transfer agency.   For example, they are listed as registered agent for Aspen Holdings Trust, a statutory trust, in Delaware #7937266, filed April 16, 2020.

79.  Plaintiff believes that Brougham REO Owner LP, a limited partnership registered in Delaware, is the true entity behind the Brougham trust facade.  Plaintiff purports that Brougham REO Owner, LP acquires loans from large banks, assigns unconscionable servicers to use unapplied funds and illegal fees to lead borrowers into foreclosure.  Brougham REO Owner, LP uses profit-driven unscrupulous tactics to steal

-18-

properties from homeowners and sell the REO properties for a windfall.

80.    By intentional misrepresentation of the legal definition in the assignment to Plaintiff's Deed of Trust, by intentional misrepresentation of fact and legal authority, by failing to register with the SEC and abide by their requirements, and by violating SEC Cease and Desist 2016, Wilmington Savings Fund Society on behalf of Brougham Fund I Trust, Brougham REO Owner LP, and Prime Asset Fund III are guilty of fraudulent misrepresentation.  This is Fraudulent Misrepresentation at its highest level.

81.    As a direct and proximate result of BSI's, Wilmington's, Brougham REO's, and Prime Asset Fund III's fraudulent misrepresentation, Plaintiff has suffered money damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against BSI, Wilmington, Brougham REO Owner, LP)

82.    Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

83.    Wells Fargo was the servicer of Plaintiff's loan from December 2008  through December 2016.   During that period of time, Wells Fargo represented themselves to Plaintiff as the lender and the servicer.

84.    In September 2021, by a thorough investigation, Plaintiff learned that Plaintiff's loan was securitized immediately after it was initiated with World Savings in 2004, and  for her original loan #22061402,  previously with Wachovia, was insured by AIG as part of a credit default swap.  On or around  May 2008,  the lender, Wachovia, received full payoff for the loan.  Although paid off in full by AIG in the credit default swap, the loan was transferred to Wells Fargo for continuous collection once Wells

Fargo acquired Wachovia in 2008. The beneficiaries of the securitized loan received a full payoff and are continuing to collect on the same World Savings loan from 2004.

Plaintiff has been held responsible to pay a loan, that should have been disposed of, to Wells Fargo from 2008 to 2016, and and BSI from 2017 to the present.

85. The elements of a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." (Lyles v. Sangadeo-Patel (2014) 225 Cal.App.4th 759, 769.) The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." (Prakashpalan v. Engstrom, Lipscomb & Lack (2014) 223 Cal.App.4th 1105, 1132.)

86. In 2020, Wells Fargo's counsel provided the following statement to Plaintiff, verbatim and in writing : <u>"In other words, Wilmington Savings Fund Society, FSB became the legal holder of the deed of trust pursuant to the Corporate Assignment of Deed of Trust, but there is no indication that the underlying debt obligation had been transferred by Wells Fargo to a third party</u>. (Sce Robertson v. United States 26 Bank, N.A., 831 F.3d 757, 762-763 (6th Cir. 2016)."

87. Plaintiff believes that, if the underlying debt obligation had not been assigned, sold or otherwise transferred to a third party, this is an admission and a bold statement by Wells Fargo that no other party, including Wilmington Savings Fund Society, Christiana Trust, Brougham Fund I Trust, Brougham REO Owner LP, and Prime Asset Fund III, has the right to collect funds on behalf of Plaintiff's loan, has the right to foreclose on Plaintiff's property, or has the right to take possession of Plaintiff's property. <u>The debt </u>obligation has been paid in full by AIG and is void.

88. BSI Financial is unjustly enriching themselves by: a) claiming the rights to a

loan that has been paid in full by AIG in a credit default swap in 2007,  b)  collecting on

a loan they have no legal rights to, and c) by receiving and cashing Plaintiff's payments

and failing to record those payments to reduce Plaintiff's principal balance, forcing the

account on record, #1433678447,  to fall into and remain in foreclosure status.

89.    Wilmington Savings Fund Society, Brougham Fund I Trust, Brougham REO

Owner, and Prime Asset Fund III are all unjustly enriching themselves by either

purporting to be the legal owner, or pretending to be a trust. Brougham REO

LP is posing as a legitimate trust, yet they a limited partnership, they are unlicensed

with the SEC, and they are predators seeking to acquire properties from homeowners,

specifically those properties that are rich with equity.

*"One person should not be permitted unjustly to enrich himself at the expense of another,
but should be required to make restitution of or for property or benefits received, retained, or
appropriated, where it is just and equitable that such restitution be made, and where such action
involves no violation or frustration of law or opposition to public policy, either directly or
indirectly." (Melchior v. New Line Productions, Inc. (2003) 106 Cal.App.4th 779, 793.)*

90.    *Regardless of the above-mentioned circumstances, at present, BSI is exercising*

control over Plaintiff's loan and property.

91.    Plaintiff takes issue with the fact that BSI has not been providing monthly

statements, that the funds in the amount of $40,800 that Plaintiff has paid since BSI

assumed servicing of her account, are misappropriated.  In addition,  the $110,000 in

junk fees and costs added to her loan balance, with hostility, and without legal

authorization or validity is causing her irreparable harm.  Servicer BSI is dishonorably

denying communication or any remedy.   Instead, with malicious intent, BSI  is

demanding an extra $150,000 that Plaintiff does not rightfully owe, and attempting to

foreclose on her property, which has a large sum of equity at present.   BSI has a moral

and legal obligation to correct Plaintiff's loan records .

92.     As a direct and proximate result of BSI's, Wilmington's, Brougham REO's, and Prime Asset Fund III's unjust enrichment, Plaintiff has suffered money damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### SEVENTH CAUSE OF ACTION
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, F.S. 501.201 ET SEQ.
CALIFORNIA  BUSNESS AND PROFESSIONS CODE § 17500 ET SEQ
(Against BSI, Wilmington, Brougham REO Owner LP, Prime Asset Fund III)**

93.  Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

94.     *A deceptive practice is one that is "likely to mislead" consumers.  An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' "*

95.     On February 23, 2017, Wells Fargo transferred Plaintiff's assignment to the Deed of Trust to WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized to do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST.

96.     Plaintiff has verified that her purported new lender, Brought Fund I Trust, is not a trust, although they claim to be a trust under false pretenses.   Plaintiff's loan is not protected, or insured from fraud or deception as a government backed loan would be, and the alleged lender is not a regulated financial institution as Wells Fargo was. This lack of regulation can lead to trade practices that are unacceptable, and with respect to Plaintiff's loan, this is certainly the case.

97.  In the unscrupulous act of cashing payments provided by Plaintiff, and purposely failing to apply those payments to Plaintiff's account balance, BSI has

violated the Unfair and Deceptive Trade Practices Act.    The beneficiary of those

unapplied payments are also in violation of the Unfair and Deceptive Trade Practices

Act.    Defendants BSI, Wilmington Savings Fund Society, Brougham REO Owner, LP

and Prime Asset fund III are in violation of UNFAIR AND DECEPTIVE TRADE

PRACTICES ACT, F.S. 501.201 ET SEQ. , and CALIFORNIA BUSNESS AND

PROFESSIONS CODE § 17500 ET SEQ.

98.    Plaintiff takes issue that Brougham Fund I Trust, is not a trust licensed with the

SEC.  Brougham REO Owner, LP is a foreign limited partnership,  consisting of real

estate ownership (REO) of foreclosed properties.    Prime asset Fund III is an LLC and a

private lender,  consisting  of commercial investors dealing primarily with hard money

loans,  as well as real estate and rentals and leasing, and is currently unlicensed in

Florida.  These entities located at the same address at: 12425  Race Track Rd, Tampa, FL.

Prime Asset Advisors, LLC  is located at the address in Plaintiff's assignment in Odessa,

FL.  These entities  are fraudulently posing as a trust, Brougham Fund I Trust.

Not only is Brougham Fund I Trust not registered with the SEC, but the name

Brougham Fund I Trust is not registered anywhere in the United States and is not listed

with the IRS.   Prime Asset Fund III's licenses in Florida are expired and inactive.

99.    These LLC foreign entities are unregulated, are sheltered by Wilmington, and

have full reign to conducting business illegally.

100.    Defendants' Brougham REO Owner, Prime Asset Fund III, deceptive strategy

behind the acquisition of properties, such as Plaintiff's  property, is to misapply

funds received from the debtor, in this case Plaintiff, until a foreclosure can be initiated,

and then an exorbitant amount of attorney fees, junk fees, and costs are added to the

account, so that the debtor, such as Plaintiff, is prevented from recovering from the

deficit, allowing Brougham REO to add another foreclosed home to their collection.

101.    In Brougham REO and Prime Trust Fund III's home state, Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. [subsection] 501.201 et seq., provides for recovery of "actual damages" by those suffering losses as the result of violations to the UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, F.S. 501.201 ET SEQ.

102.    In California, where Plaintiff's property is located, Deceptive Trade Practices are regulated by California Business and Professions Code § 17500 et seq. Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

103.    California Business & Professions Code §17200 "is directed toward he right of the public to protection from fraud and deceit.'

" (Stoiber v. Honeychuck, (1980) 101 Cal.App.3d 903, 927.    "[A]ny unlawful, unfair or fraudulent business act or practice is deemed to be unfair competition." (Podosky v. First Healthcare Corp., (1996) 50 Cal.App.4th 632, 647).    "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. (Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., (C.D. Cal 2001) 178 F.Supp.2d 1099, 1120; People v. McKale, (1979) 25 Cal.3d 626).
"The unfair prong is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." (State Farm Fire & Casualty Co. v. Superior Court, (1996) 45 Cal.App.4th 1093, 1103).    Ultimately, "an 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" (Davis v. Ford Motor Credit Co. LLC, (2009) 179 Cal.App.4th 581, 595).

104.    Plaintiff's loan #22061402 originated with World Savings in 2004, and the account was current with Wells Fargo.    In May 2017,  when BSI identified themselves as the new servicer, and Wilmington as the new trustee for Brougham Fund I Trust, the financial nightmare started.  All of Plaintiff's payments were placed in unapplied funds.

<u>funds</u>.  They have since been removed from record entirely, and have not been applied to Plaintiff's loan.  Plaintiff's account balance reflects 0 payments having been applied to Plaintiffs account since May 2017.  As of September 2021, the total paid sum of $40,800. provided to BSI Financial has not been applied to Plaintiff's loan balance according to records obtained  from BSI.  These payments have been cashed and cleared.  Where has all this money gone if not to Plaintiff's account?

105.   In addition,  BSI and the Lender, have added another  $110,000. to Plaintiff's debt balance, as evidenced in Plaintiff's recent payoff statements dated November, 2021 and January, 2022.  <u>It would be futile to provide any further payments to BSI knowing that the funds  would also be misappropriated.</u>   BSI has extorted funds from Plaintiff with malicious intent, and has committed the most egregious violation of Unfair and Deceptive Trade Practices Act, F.S. 501.201 Et Seq.

"[O]nly two remedies are available to redress violations of the UCL: injunctive relief and restitution."
*(Feitelberg v. Credit Suisse First Boston, LLC, (2005) 134 Cal.App.4th 997, 1012).  "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (Korea Supply Co. v. Lockheed Martin Corp., (2003) 29 Cal.4th 1134, 1149).  "[R]estitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." (Madrid v. Perot Systems Corp., (2005) 130 Cal.App.4th 440, 455).  Restitution necessarily requires that "money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." (Kwikset Corp. V. Superior Court, (2011) 51 Cal.4th 310, 336).*

Injunctive relief is "intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur."

106.   As a direct and proximate result of BSI's, Wilmington's, Brougham REO Owner's and Prime Asset's violation of the Unfair and Deceptive Trade Practices Act, and  Plaintiff has suffered money damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## EIGHTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
**(Against BSI, Wilmington, Brougham REO Owner, LP, Prime Asset)**

107.   Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

108.   Plaintiff's contention is that Wilmington Savings Fund Society, as trustee for Christiana Trust, which had not yet been formed and was not allowed to conduct business in California, when they obtained the assignment to Plaintiff's Deed of Trust. Then they assigned servicing rights to BSI Financial for Plaintiff's loan on behalf of an "unknown entity" Brougham Fund I Trust.  Brougham Fund I Trust is unlicensed with the SEC, unlicensed with the IRS, and literally an untraceable entity.

109.   Defendant Wilmington Savings Fund Society is registered with the SEC, #001-35638, and has an employer ID  registered with the IRS of #22-2866913 .

110.   Plaintiff believes that Prime Asset Fund III and Brougham REO Owner are hidden beneficiaries, and that Brougham Fund I Trust does not exist.  There is no legitimate trust sold to investors and  regulated by the SEC.   There is no accountability to the Securities and Exchange Commission, no tax liability to the IRS, and no due diligence to the homeowners involved in their scheme.

111.   The loans, such as Plaintiff's, are acquired without request or acceptance of the homeowners.    The accounts targeted involve large sums of home equity, and the accounting is manipulated by unscrupulous servicers that deliver foreclosures to the unknown entity on a silver patter.    There are so many violations involved in this scheme, tax evasion, unregistered trusts, fake securities, inactive licensing, illegitimate trusts, California State law, Florida State law, Federal law, consent orders, and third party lawsuits regarding other violations.

The assignment to Plaintiff's Deed of Trust was transferred to Wilmington on behalf of Brougham Fund I Trust, a phantom entity that does not exist. Defendants blatantly concealed the true name of the new lender from Plaintiff. Concealment is one grievance, but the substitution of a falsified entity takes fraudulent concealment to an extreme.

112.   It has been identified that Wilmington Savings Fund Society habitually transfers ownership from Brougham Fund I Trust to Primestar-H Fund I TRS, Inc. at a foreclosure sale, them immediately turns over the Deed of Trust to Brougham REO Owner, LP to sell the property. The transfers identified have been foreclosed by Brougham Fund I Trust, but the transactions have been legally performed by another entity, Primestar-H Fund I Trust, registered as a Foreign Corporation, #03695521, currently inactive in California, and registered as a Foreign Corporation in Texas, #802440928, also not legally a trust.

113.  All $40,800 Plaintiff has paid to servicer BSI between April 2017 to the present have been deleted from record.   An un-awarded and unjustified additional $120,000 in fees and costs have been added to Plaintiff's account. Defendants BSI and their beneficiaries have remained obstinate, unwilling to mediate or correct their fatal inaccuracies.   Defendants are attempting to steal over $700,000 in Plaintiff's equity. This is theft by fraudulent concealment.

114.  BSI's misconduct has been  misappropriation of Plaintiff's loan payments, and fraudulently concealing the recipient of those payments.  Wilmington has also fraudulently concealed the true facts, that Brougham is not a legitimate trust, and that they are not the trustee for Brougham Fund I Trust.  Prime Asset Fund III, Prime Capital Advisors, LLC,  Primestar-H Fund I Trust, LLC, and Brougham REO Owner, LP

are fraudulently concealing their involvement in Plaintiff's loan.

115.   Plaintiff has been harmed by the fraudulent concealment, by having having to fight an ethics battle and a legal battle, which is costing thousands of dollars, the cost of investigations, the cost of suit,  loss of work, and it is causing serious physical and emotional damages.      As a direct and proximate result of BSI's, Wilmington's, Brougham REO's, and Prime Asset Fund III's fraudulent concealment,  Plaintiff has suffered money damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## NINTH CAUSE OF ACTION
## VOID ASSIGNMENT TO THE DEED OF TRUST
### (Against Wilmington, Brougham, Prime Asset)

116. Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

117. Plaintiff's only assignments to the Deed of Trust for her property were conducted in a  disreputable manner.

118.   On February   23, 2017,  Wells Fargo assigned Plaintiff's assignment to the Deed of Trust directly from deceased World Savings, bypassing entirely an assignment transfer to and from Wachovia.

119.   The first transfer was assigned to Wells Fargo South Central, an unidentified entity, with an illegible and invalid signature by Kristoff Michael Pumarlo.  Wells Fargo South Central is identified as a Wells Fargo banking branch location in Texas, not a lending institution.  On the same date, February 23, 2017, at the same minute, Wells Fargo South Central transferred Plaintiff's assignment to the Deed of Trust from Wells Fargo South Central to Wilmington. The second assignment reads: *"Wilmington Savings*

*Fund Society, FSB, a Delaware corporation, doing business, but not authorized to do business,*
*as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an*
*unknown entity."*

120.   The second assignment transfer was conducted with a faulty affidavit by an
illegible and signature by Kristen Michael Pumarlo.  Kristoff Michael Pumarlo worked
at Wells Fargo for ten years.  However, in 2016, during his tenure with Wells Fargo,  he
was identified as a manager at HSBC Mortgage in the same exact time-frame.

121.   A person with an illegible signature is unlikely to possess a transparent
nature.  A faulty affidavit was provided, as the signature was robo-signed on the legal
document, rendering the assignment void.

122.   Wilmington Savings Fund Society created their Christiana Trust division in
September of 2017.    Plaintiff's assignment, which states verbatim "doing business, as,
Christiana Trust", was created in February 2017.  It is impossible for  Wilmington be
*conducting business legally as Christiana Trust in January 2017, when the entity had not*
yet been formed as of the date of the assignment.  The title of the assignment clearly
states "not authorized to do business as Christiana Trust in California." Plaintiff's
property is in California.   This bold admission must render the assignment to Plaintiff's
Deed of Trust void.

123.  The Supreme Court of California held that a borrower on a home loan
secured by a deed of trust has standing to base an action for wrongful foreclosure on
allegations that defects in the purported assignment of the note and deed of trust
renders the assignment void. *Yvanova v. New Century Mortgage Corp., No. S218973 (Cal.*
*Feb. 18, 2016).*

124.   BROUGHAM FUND I TRUST is the beneficiary listed in Plaintiff's Deed of

Trust.Extensive research has revealed that Brougham Fund I Trust is not a legitimate

trust.  They are not registered with the SEC, and therefore their conduct is not regulated,

and they are not registered with the IRS.  Wilmington Savings Fund Society is sheltering

a limited partnership, identified as Brougham REO Owner, LP, from government

regulations and tax liability on their profits from unscrupulous sales of homeowner's

properties.  Both Brougham REO Owner LP and Wilmington Saving Fund Society are

funneling funds and properties through a facade, a nonexistent trust named Brougham

Fund I Trust, for pure profit.   This is Wilmington's fraudulent practice, and this exact

conduct is prohibited by law.

125.  Plaintiff has identified that Brougham Fund I Trust is actually a limited

partnership, Brougham REO Owner, LP, an entity that is guilty of targeting properties

that have a substantial amount of equity, acquiring the debt from the large banks, such

as Wells Fargo, and hiring an unscrupulous servicer to strategically mis-apply enough

funds, in order to invoke the foreclosure process and become the Real Estate

Owner  and take over ownership of the subject property.

126.  Plaintiffs loan was transferred from Wells Fargo to BSI Financial for servicing

in 2017, a company that has a nefarious reputation. and atrocious accounting. BSI has

extorted all payments provided to them from Plaintiff, amounting to the sum of

$40,800.  Many payments were temporarily placed in unapplied funds, and to the

present all unapplied funds have been wiped from record and have not been credited

to Plaintiff's loan balance.  As a result of BSI's calculated accounting manipulation, and

Wilmington and Brougham's ill-gotten assignment, Plaintiff is a victim of conspiracy

and grand theft.

127.   Brougham REO Owner, LP, is affiliated with Prime Asset Fund III, LLC, a

limited liability corporation that purports to be part of the Offices of Real Estate Agents

and Brokers Industry, specializing in real estate and rental and leasing.  They share an

address at 12425 Race Track Rd., Tampa, FL.  Prime Asset Fund III, LLC is also not

registered with the Securities and Exchange Commission, and they have two inactive

Foreign Limited Liability licenses in Florida, M10000003306 filed July 26, 2010, and

M15000005928 filed July 20, 2015.  There is no valid active license in Florida for Prime

Asset Funding III.  They are listed as mortgage lenders. Neither REO Real Estate Owner,

LP nor Prime Asset Fund III, LLC are a legitimate trust registered with the Securities

and Exchange Commission.

128.  Plaintiff takes issue with all of the defendants' transgressions.

1)  The two assignments were signed with illegible, falsified affidavits

2)  The beneficiary, Brougham Fund I Trust, is not registered with the SEC, and is

not a legitimate trust or a licensed business entity.

3)  Wilmington conducts business as a transfer agent, and is posing as trustee of an

illegitimate trust.

4)  The required assignment from Wachovia Mortgage to Wells Fargo was omitted

from recording in the county where the property resides.

129.   For all the reasons set forth above, the assignment of Plaintiff's Deed of Trust

to Defendant Wilmington Savings Fund Society, FSB, a Delaware corporation, doing

business, but not authorized to do business, as CHRISTIANA TRUST, in California, as

Trustee, for BROUGHAM FUND I TRUST, an unknown entity, is VOID.

130.  As a direct and proximate result of defendants Wilmington, Brougham Fund I

Trust, Brougham REO Owner, LP, and Prime Asset Fund III's transgressions, Plaintiff

has been harmed financially, physically and emotionally,  Plaintiff has suffered money

damages and emotional damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## QUIET TITLE
**(Against All Defendants)**

131.  Plaintiff re-alleges and incorporates by reference each and every allegation above as though fully set forth herein.

132.  Defendants named herein claim an interest and estate in the property adverse to Plaintiff in that defendants assert ownership of the note secured by the Deed of Trust to the property, the subject of the suit.  All defendants named herein claim an interest and estate in the Real Property adverse to Plaintiff in that defendants assert to be the owner of Tangible Note secured by the Deed of Trust to the Real Property, the subject of the suit.

133.  The claims of all defendants are without any legal right whatsoever, and defendants have no estate, title, lien or interest in or to the Real Property. The claims of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these constitute a cloud on Plaintiff's title to the Real Property.

134.  Plaintiff therefore alleges upon information and belief that none of the defendants in this case hold a perfected and secured claim in the Real Property, and that all defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's Real Property.

135.  Plaintiff requests the decree permanently enjoin defendants, and each of them, and ll persons claiming under them, from asserting any adverse claim to Plaintiff's title

to the property, and Plaintiff requests the Court award Plaintiff's costs of this action, and such other relief as the Court may deem proper.

## PRAYER FOR RELIEF

**WHEREFORE**, in addition to the damages and relief alleged above in each cause of action, Plaintiff prays for the entry of Judgment against Defendants:

## TEMPORARY RESTRAINING ORDER ON ALL CAUSES OF ACTION

1.  Pursuant to Code Civ. Proc., Section 527(c), Plaintiff requests that this court issue a Temporary Restraining Order following *ex parte* notice in order to preserve the *status quo* that prevents Defendants from proceeding with any foreclosure sale, and protecting Plaintiff from suffering irreparable injury pending a Preliminary Injunction.

2. In light of Defendants' **statutory violations, negligence and unfair** *competition, actual controversies now exist concerning the interpretation, validity,* **and effectiveness of the Assignment of Plaintiff's Deed of Trust, the loan balance, the application of payments, the Notice of Trustee's Sale, and the entire Trustee's foreclosure sale process.** Therefore, Plaintiff seeks a judgment declaring that Defendants have violated Plaintiff's rights, and that Defendants are not entitled, to foreclose upon Plaintiff' Property, whereas Defendants dispute this.

3.  For recovery of the costs of suit; reimbursement of attorneys' fees incurred, interest on all damages at the maximum legal rate; and such other and further relief as the Court may deem just and proper.

February 10, 2022

_____

Rilla Huml
Plaintiff, Pro Se

1
2
3
4
5
6
7
8

# **VERIFICATION**

9
10    I, Rilla Huml, an individual, am a Plaintiff in the above-entitled action.  I have read the
11    foregoing, *Verified Complaint against Brougham REO Owner, LP, et al.*, and I know the
      contents therein.

12    The same is true of my own knowledge, except as to those matters which are therein
13    alleged on information and belief, and as to those matters, I believe them to be true.

14    I declare under penalty of perjury under the laws of the state of California that the
      foregoing is true and correct.

15    The verification was executed at Aliso Viejo, California on February 10, 2022.

16
17
18
19
20
21
22
23
24
25
26
27
28

Rilla Huml

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am a resident of Aliso Viejo, State of California. I am over the age of 18 and not a party to the within action.  My address is: 44 Titian, Aliso Viejo, CA 92656

On February 10, 2022, I caused to be served the foregoing document(s): **Verified Complaint** on the interested parties in this action addressed and sent as follows by service and mail:

Brougham REO Owner, LP, and
Prime Asset Fund III, LLC
12425 Race Track Rd.
Tampa, Florida 33626

Prime Capital Advisors, LLC
13266 Byrd St #447
Odessa, Florida  33556

Servis One, D/B/A BSI Financial, INC
1425 Greenway Dr Ste 400
Irving, TX 75038

Wilmington Savings Fund Society
1100 N Market St., Ste 1300
Wilmington, Delaware  19801

◆  STATE: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 10, 2022, at Aliso Viejo, California

By   Amir Oreyzei

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE
## PICK-A-PAYMENT LOAN

### CERTIFICATES OF DEPOSIT INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER:  **0022061402**          DATE:  **MARCH 24, 2004**

BORROWER(S):  **RILLA HUML, AN UNMARRIED WOMAN**

sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS:  **25 MEDICI**
**ALISO VIEJO, CA  92656**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$200,000.00 " " " " "**, called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK " " " " " " " " " " " " " " "** ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

### 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **4.282% " " " "**. The interest rate I will pay may change as described in this Section 2. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Change Dates**

The interest rate I will pay may change on the **15TH** day of **MAY, 2004 " " " "** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C) Interest Rate Limit**

My lifetime maximum interest rate limit is **11.950%, "** called "Lifetime Rate Cap."

ORIGINAL

0022061402

**(D) . Index**

· Beginning with the first Interest Change Date, my interest rate will be based on an "Index". The Index is the average of· the last twelve calendar months' most recently published monthly yields on 3-month certificates of deposit (secondary market) as published by the Federal Reserve Board. Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve. Lender will round the result of this division to the nearest one-thousandth of one percentage point (0.001%) by using the following convention: if the value of the 10,000th place is five or greater, the value of the 1,000th place will round up; if the value of the 10,000th place is less than five, the 1,000th place will not change. The most recent Index figure available on each Interest Change Date is called the "Current Index". For purposes of determining the Index, "published" means first made available to the public by the Federal Reserve Board.

**(E)   Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding 3.150 * percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

3 . PAYMENTS

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the 15TH day of each month beginning on MAY 15, 2004. " " " I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on APRIL 15, 2034 " " , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612 " " " " " " " " " " " " " or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $734.25 . " " " This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the 15TH " " day of MAY, 2005 " " " and on that day every 12TH month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will peform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)  Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125% * *** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)  Payment Cap Limitation; Exceptions**

Beginning with the **10TH** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.  FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT".  WHEN I MAKE A PREPAYMENT, I WILL TELL THE LENDER IN WRITING THAT I AM DOING SO.  I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE.  IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNTS OF MY PAYMENTS UNLESS THE LENDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY PAYMENTS AFTER THE FIRST PAYMENT CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. * * * * * * * * * * * *

**6.  MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5% *** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

0022061402

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii),I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was *materially false or misleading or if any statement in my* application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at 25 MEDICI, ALISO VIEJO, CA   92656, * * * * * * * * * * * * * * * * * * * * or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that diferent address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26 :

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

0022061402

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)   the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

0022061402

**SIGNATURE PAGE**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____  (Seal)
RILLA HAML

_____  (Seal)

_____  (Seal)

_____  (Seal)

_____  (Seal)

_____  (Seal)

-42-

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER
WITH WELLS FARGO BANK SOUTHWEST, N.A. F/K/A
WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS
BANK, FSB
BY

GEORGIANA M. SIELENI
VICE PRESIDENT LOAN DOCUMENTATION

PAY TO THE ORDER OF
THE BANK OF NEW YORK

WORLD SAVINGS BANK
A FEDERAL SAVINGS BANK

BY:

NAME: CRAIG SWONSON
TITLE: CUSTODIAN OF RECORDS

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A., successor by merger to
Wachovia Mortgage, FSB, formerly known as
World Savings Bank, FSB

By:
Sandra K. Parman
Vice President

1
2
3
4
5
6
7          **EXHIBIT "B"**
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

* 1 R 0 0 0 9 0 8 2 3 * 2 1 *
2017000076246 8:51 am 02/23/17
65 401 A32 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9269-018
EAGAN, MN  55121-4400

CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
"HUML"

**RECORD 2nd**

PREPARED BY: WELLS FARGO BANK, N A

For Value Received, WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION hereby grants, assigns
and transfers to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE BROUGHAM FUND I TRUST at 13266 BYRD
STREET, #447, ODESSA, FL  33556 all its interest under that certain Deed of Trust dated 03/24/2004 , in the
amount of $200,000.00, executed by RILLA HUML, AN UNMARRIED WOMAN to WORLD SAVINGS BANK, FSB
and Recorded:  03/29/2004  as Instrument No.: 2004000254970 in the County of Orange, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION
On  2-21-17

Kristoffer Pumarlo
Authorized Individual

STATE OF  Minnesota
COUNTY OF  Dakota

On  2|21|2017 , before me,  Jennifer Rae Anderson ,
Minnesota , personally appeared  Kristoffer Pumarlo , a Notary Public in the State of
Authorized Individual,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Jennifer Rae Anderson
Notary Expires: 1/31/2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

(This area for notarial seal)

*CMK*CMKWFEM*C2/15/2017 09:54:00 AM* WFFM32W6 EMA0000000000000015483G8* CAORANG* CASTATE_TRUST_ASSIGN_ASSN *KP6WFEM*

Non-Order Search
Doc: OR:2017 00076246

Page 1 of 1

Requested By: b.alihaji, Printed: 4/3/2019 12:49 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

# DEMAND LETTER - QUALIFIED WRITTEN REQUEST

Servis One, Inc., D//B/A
BSI Financial, Inc.
1425 Greenway Drive, Suite 400
Irving, Texas 75038

**Copied QWR to:**

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

Office of RESPA and Interstate Land Sales
Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC 20410

Government National Mortgage Association
451 Seventh Street, SW
Washington DC 20410

**According to RESPA 12 USC Section 2605(e) your lender has 20 day to acknowledge receipt of your Qualified Written Request and 60 Days to provide you with answers to your question.**

Borrower's Name:      Rilla Huml
Borrower's Address:      25 Medici, Aliso Viejo, CA 92656
Lender:     Wilmington Savings Fund Society, Brougham Trust, Christiana Trust
Lender's Address:    500 Delaware Avenue, Wilmington, Delaware 19801

## RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 (e) and Regulation X 24 C.F.R. 3500, and The Gramm Leach Bliley Act.

REF: Alleged Account # 0483678447
Property Address: 25 Medici, Aliso Viejo, CA 92656

Dear Madam or Sir:

Please be advised of your legal obligation to answer this Qualified Written Request and
to obtain all records and documents pertaining to the above-mentioned Loan No. This
request is made pursuant to the Real Estate Settlement and Procedures Act (RESPA).
We have reason to believe that certain disclosures and documentation have been
withheld in violation of the Truth in Lending Act (TILA) and that various Real Settlement
Procedures Act (RESPA) loan servicing errors may have occurred.

To ensure that any legal claims are brought against the appropriate parties we are
requesting evidence to support or exclude Wilmington Trust Fund Society and to
satisfactorily provide us a good clear and clean hands understanding and clarification
from you, of various sale, transfer, funding source, legal and beneficial ownership,
charges, credits, debits, transactions, reversals, actions, payments, analyses and
records related to the servicing of this account from its origination to the present date.
Your due diligence and lawful compliance in the production of documentation to refute
the fact that Wilmington Trust Fund Society has been erroneously holding an alleged
right, title, or interest in the alleged account or alleged property/note is vital.

To date, the documents and information we have received from Servis One, D/B/A BSI
Financial, Wells Fargo Bank, N.A., and our escrow files, including subsequent records,
do not answer many questions. Any refusal to answer our request will be considered a
predatory servicing or lending and servicing schemes. As a consumer, I am extremely
disturbed by the complete disregard for the law pertaining to this mortgage transaction
by Wilmington Savings and Servis One, D/B/ABSI Financial, and/or anyone who may
have any interest in this matter.

Needless to say, I am most concerned that fraudulent and deceptive practice by
unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights;
deceptive and fraudulent servicing practices to enhance balance sheets; deceptive,
abusive and fraudulent accounting tricks and practices may have also negatively
affected any credit rating, mortgage account and /or the debt or payments that I am
currently, or may be legally obligated to.

I hereby demand absolute first hand evidence from you of the original un-certificated or
certificated security regarding account number: 0483678447.   In the event you do not
supply me with the very security it will be a positive confirmation on your part that you
never really created and owned one. We also hereby demand that a chain of transfer
from you to wherever the security is now be promptly sent to me as well. Absent the
actual evidence of the security I have no choice but to dispute the validity of your
lawful ownership, funding, entitlement right, and the current debt you allege I owe. By
debt I am referring to the principal balance you claim I owe; the calculated monthly
payment, calculated escrow payment and any fees claimed to be owed by you or any
trust or entity you may service or sub-service for.

This letter is a Qualified Written Request under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). This request is made on the above referenced account. Specifically, I am requesting the following information:

1. A complete and itemized statement of the loan history from the date of the loan to the date of this letter.  This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this account.

2. A complete and itemized statement of all receipts, identified by way of payment and all charges to the loan in whatever form.

3. A complete and itemized statement of all funds received placed in unapplied funds.

4. A complete and itemized statement of all advances or charges against this loan for any purpose that are not reflected on the loan history transaction statement provided in answer to question #1.

5. A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.

6. A complete and itemized statement of all payments received during a chapter-13 bankruptcy.

7. A complete and itemized statement from the date of the loan to the date of this letter of any cashier's checks received from me as payments for this loan.

8. A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

9. A complete and itemized statement from the date of the loan to the date of this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

10. Identify the provision under the Deed of Trust and/or note that authorizes charging each and every such fee against the loan.

11. Please attach copies of all property inspection reports and appraisals.

12. A complete and itemized statement of any and all post-petition arrears including each month in which the default occurred, and the amount of each monthly default.

13. A complete and itemized statement from the date of the loan to the date of this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment due under the terms of the loan.

14. The current amount needed to pay-off the loan in full.

15. A full and complete comprehensible definitional dictionary of all transaction codes and other similar terms used in the statements requested above.

16. A complete and itemized statement of any funds deposited in any post-petition suspension account(s) or corporate advance account(s), including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts.

17. A complete and itemized statement from the date of this loan to the date of this letter of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this mortgage.

18. A complete and itemized statement of the amount, payment date, purpose and recipient of all fees for the preparation and filing of the original proof of claim, any amended proofs of claim, or any supplemental proofs of claim related to this mortgage.

19. The full name, address and phone number of the current holder of this debt including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f) (2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

20. The name, address and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for the underlying mortgage debt.

21. A copy of any mortgage Pooling and Servicing Agreement and all Disclosure Statements provided to any Investors with respect to any mortgage-backed security trust or other special purpose vehicle related to the said Agreement and any and all Amendments and Supplements thereto.

22. If a copy of the Pooling and Servicing Agreement has been filed with the SEC, provide a copy of SEC Form 8k and the Prospectus Supplement, SEC Form 424b5.

23. The name, address and phone number of any Trustee under any pooling or servicing agreement related to this loan.

24. A copy of the Prospectus offered to investors in the trust.

25. Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to this account.

26. All written loss-mitigation rules and work-out procedures related to any defaults regarding this loan and similar loans.

27. The procedural manual used with respect to the servicing or sub-servicing of this loan.

28. A summary of all fixed or standard legal fees approved for any form of legal services rendered in connection with this account.

29. Is this loan subject to any Electronic Tracking Agreement? If the answer is yes, then state the full name and address of the Electronic Agent and the full name and address of the Mortgage Electronic Registration System.

30. Is the servicing of this loan provided pursuant to any type of mortgage electronic registration system? If the answer is yes, then attach a copy of the mortgage electronic registration system procedures manual.

31. A copy of the Loan Servicing and Management System (LSAMS) Transaction History Report for the mortgage loan account, with a detailed description of all fee codes.

32. Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic agent and the type of mortgage electronic system used by the agent.

33. Is this mortgage part of a Mortgage Warehouse Loan? If so, then state the full name and address of the Lender and attach a copy of the Warehouse Loan Agreement.

34. Upon any default or notice of default, state whether or not the Mortgage Warehouse Lender has the right to override any servicers or sub-servicers and provide instructions directly to the Electronic Agent? If the answer is yes, then specifically identify the legal basis for such authority.

35. Is this mortgage part of a Whole Loan Sale Agreement? If the answer is yes, then state the name and address of the Purchaser, the Custodian, the Trustee, the Electronic Agent and any Servicer or Sub-Servicers.

You should be advised that you must acknowledge receipt of this qualified written request within 20 business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).

You should also be advised that I will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein.

I also reserve the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code.

*Also note that mortgage servicers are required to fully answer all these questions within 60 days from the date they receive this letter in addition to acknowledging receipt of your request in the first 20 days. During that time they are forbidden to report late-pays to the bureaus as well.

Sincerely,

Rilla Huml                                              · Date:   February 24, 2021



### NOTARY

I, ‾Timothy  Rock‾‾‾‾‾‾‾‾‾‾‾; a notary public residing in  Orange County,

California

Do say that on the date of  Feb  24 , 2021 that a person known to me as

Rilla Huml   did appear before me in their true character and did attach their autograph to the above document.

NOTARY                                              2-24-21
                                                      Date

```
              TIMOTHY ROCK
         Notary Public - California
             Orange County
          Commission # 2338339
       My Comm. Expires Nov 23, 2024
```

Seal_____

6 of 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "D"

**BSI Financial Services**

BSI Financial Services
314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

March 10, 2021

RILLA HUML
25 MEDICI
ALISO VIEJO      CA 92656

**RE: PAYOFF STATEMENT**
**MORTGAGE LOAN #:** 1433678447
**PROPERTY ADDRESS:** 25 MEDICI
ALISO VIEJO      CA 92656

Thank you for your inquiry regarding a payoff for this mortgage loan.

The total amount required to pay the loan in full is broken down for you in the payoff calculation below and is good up to but not including 04/03/21.  Please call us if you have any questions.

If your loan is in default, foreclosure activity, including any sale of the property, will continue until the loan is paid in full.

| | |
|---|---:|
| UNMODIFIED UNPAID PRINCIPAL BALANCE | $207,203.25 |
| DEFERRED AMOUNT, IF APPLICABLE | $ 0.00 |
| ESCROW BALANCE (TAXES AND INSURANCE)* | $6,174.71 |
| PRIVATE MORTGAGE INSURANCE (PMI)** | $ 0.00 |
| INTEREST UP TO BUT NOT INCLUDING **04/03/21** | $30,674.66 |
| PREPAYMENT PENALTY | $ 0.00 |
| UNPAID LATE CHARGE | $ 322.28 |
| UNAPPLIED FUNDS (CREDIT): | $ 0.00 |
| | |
| UNPAID FEES | $138,968.35 |
| *Includes Pending fees and costs $82,944.95* | |
| LIEN RELEASE PREPARATION FEE (PASS-THROUGH BY A THIRD PARTY) | $ 45.00 |
| LIEN RELEASE RECORDING FEE (PAID TO RECORDING OFFICE) | $ 170.00 |
| PAYOFF STATEMENT | $ 0.00 |
| **TOTAL AMOUNT TO PAY LOAN IN FULL AS OF 04/03/21** | **$383,558.25** |

*Please note, the Payoff Total may change between the date of this quote and the date funds are received. If when funds are received, it's determined they are short, the appropriate people (Borrower/Authorized Third Parties) will be notified of the shortage. Funds will not be applied until the shortage is sent to satisfy the total debt of the loan. .*

**These figures may not total correctly if the loan has PMI.  If this loan has a positive escrow balance and PMI is due prior to the expiration date of this payoff quote, the PMI amount is listed for your reference and PMI payment will be made using the positive escrow funds available.  This PMI amount will not be factored into the total amount due to payoff this loan.  The PMI amount will only be factored into the total amount due to payoff this loan if there are insufficient funds in the escrow account to pay the PMI installment.  The Total Amount to Pay the Loan in Full is the payoff amount listed through the date provided.*
**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



**BSI Financial Services**

**BSI Financial Services**
314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

The amount owed may change between the date of this letter and the date that the loan is paid off. The next payment on this loan is due **October 1, 2017**. The scheduled payment is **$1198.36**, which includes a Principal and Interest Payment of **$920.89** and an Escrow Payment of **$277.47**. Additionally, payoff figures will be adjusted if any check or money order previously received is rejected by the institution upon which it is drawn. ACH cancellations must be processed at least three (3) business days in advance of a scheduled draw. If payoff funds are received fewer than three (3) business days prior to a scheduled draw, the ACH payment will be drafted, but all amounts in excess of a complete payoff will be refunded upon processing of the payoff funds.

Please submit your payoff via **certified funds or wire transfers** to **BSI FINANCIAL SERVICES. CERTIFIED FUNDS OR WIRE TRANSFERS MUST BE RECEIVED BY OUR OFFICE BY 3:30 P.M. (ET) ON A NORMAL BUSINESS DAY (MONDAY THROUGH FRIDAY) TO BE CREDITED THAT DAY.** Funds received after 3:30 P.M. (ET) on **04/03/21** will require additional interest of **$23.7420 and additional default interest $0.00 per day**. If you are intending to pay off before the "TOTAL AMOUNT TO PAY LOAN IN FULL" Date, please contact BSI as default interest may not apply. Mail Certified Funds to:

> **BSI FINANCIAL SERVICES**
> 314 S. FRANKLIN STREET/P.O. BOX 517
> TITUSVILLE, PA 16354
> **ATTN: CASHIERING**

Wire instructions are as follows:

> Bank: Texas Capital Bank
> Beneficiary: BSI Payment in Process Clearing Account
> 2000 McKinney Ave, Suite 700
> Dallas, TX  75201
> ABA: **111017979**
> Account Number: **2111020455**
> Final Credit To: **Payments/Cashiering**
> Reference Information: Loan Number, Borrower Name and Property address

Failure to include the above information on the wire advice may cause a delay in posting the funds. BSI will not be responsible for any additional interest or fees that may be assessed as a result of incomplete or incorrect wire information. Wire transactions that are received and cannot be identified will be returned to the ABA and account number from which they were received. If you have any questions regarding the wire instructions listed here, **contact our office at 1-800-327-7861**.

- *ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND YOUR CONTRACTUAL REQUIREMENT TO MAKE THE MORTGAGE PAYMENTS WHEN THEY ARE DUE. A LATE CHARGE OF $.00 WILL BE ADDED TO THE PAYOFF TOTAL IF RECEIVED AFTER THE EXPIRATION OF YOUR GRACE PERIOD.* Please note that this statement may already include the referenced late charge, which has not been incurred at this time, if the good-through date listed on this statement falls after the expiration of your grace period for your next monthly payment due. If either a full contractual monthly payment or a full payoff of the loan is made prior to the expiration of your grace period, the late charge will not be assessed and need not be paid. If

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "E"

January 11, 2022

RILLA HUML
25 MEDICI
ALISO VIEJO      CA 92656

**RE: PAYOFF STATEMENT**
**MORTGAGE LOAN #:** 1433678447
**PROPERTY ADDRESS:** 25 MEDICI
ALISO VIEJO      CA 92656

Thank you for your inquiry regarding a payoff for this mortgage loan.

The total amount required to pay the loan in full is broken down for you in the payoff calculation on page 2 and is good up to, but not including, **02/16/22**. The total amount to pay your loan in full as of **02/16/22** is **$330,126.65.**

Below are loan level details, along with wiring instructions, for paying off your loan.

| | |
|---|---|
| Current Due Date | 10/01/17 |
| Maturity Date | 10/2053 |
| Regular Interest Per Diem If Paid After 3:30 on **02/16/22** | $ 23.74 |
| Default Interest Per Diem If Paid After 3:30 on **02/16/22** | 0.00 |

The total amount required to pay the loan in full is broken down for you in the payoff calculation below and is good through **02/16/22**. Please call us if you have any questions.

The amount owed may change between the date of this letter and the date that the loan is paid off. The next payment on this loan is due **October 1, 2017**. The scheduled payment is **$1198.36**, which includes a Principal and Interest Payment of **$920.89** and an Escrow Payment of **$277.47**. Additionally, payoff figures will be adjusted if any check or money order previously received is rejected by the institution upon which it is drawn. ACH cancellations must be processed at least three (3) business days in advance of a scheduled draw. If payoff funds are received fewer than three (3) business days prior to a scheduled draw, the ACH payment will be drafted, but all amounts in excess of a complete payoff will be refunded upon processing of the payoff funds.

Please submit your payoff via **certified funds or wire transfers (found on page 2)** to **BSI FINANCIAL SERVICES. CERTIFIED FUNDS OR WIRE TRANSFERS MUST BE RECEIVED BY OUR OFFICE BY 3:30 P.M. (ET) ON A NORMAL BUSINESS DAY (MONDAY THROUGH FRIDAY) TO BE CREDITED THAT DAY.**



Wire instructions are as follows:

    Bank: Texas Capital Bank
    Beneficiary: BSI Payment in Process Clearing Account
    2000 McKinney Ave, Suite 700
    Dallas, TX 75201
    ABA: **111017979**
    Account Number: **2111020455**
    Final Credit To: **Payments/Cashiering**
    Reference Information: Loan Number, Borrower Name and Property address

Mail Certified Funds to:

    **BSI FINANCIAL SERVICES**
    **314 S. FRANKLIN STREET/P.O. BOX 517**
    **TITUSVILLE, PA 16354**
    **ATTN: CASHIERING**

Failure to include the above information on the wire advice may cause a delay in posting the funds. BSI will not be responsible for any additional interest or fees that may be assessed as a result of incomplete or incorrect wire information. Wire transactions that are received and cannot be identified will be returned to the ABA and account number from which they were received. If you have any questions regarding the wire instructions listed here, **contact our office at 1-800-327-7861**.

If your loan is in default, foreclosure activity, including any sale of the property, will continue until the loan is paid in full.

| | |
|---|---|
| UNMODIFIED UNPAID PRINCIPAL BALANCE | $207,203.25 |
| DEFERRED AMOUNT, IF APPLICABLE | $ 0.00 |
| ESCROW BALANCE (TAXES AND INSURANCE)* | $9,547.33 |
| PRIVATE MORTGAGE INSURANCE (PMI)** | $ 0.00 |
| **INTEREST TO 02/16/22** | $38,105.91 |
| PREPAYMENT PENALTY | $ 0.00 |
| UNPAID LATE CHARGE | $ 322.28 |
| UNAPPLIED FUNDS<br>UNAPPLIED FUNDS<br>UNAPPLIED FUNDS<br>UNAPPLIED FUNDS | $ 0.00<br>$ 0.00<br>$ 0.00<br>$ 0.00 |
| UNPAID FEES | $74,947.88 |
| *Pending Fees/costs-$781.25* | |
| LIEN RELEASE PREPARATION FEE (PASS-THROUGH BY A THIRD PARTY) | $ 0.00 |
| *LIEN RELEASE RECORDING FEE (PAID TO RECORDING OFFICE)* | $ 0.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "F"

NOTICE

**Request for Information: Fees Imposed by Providers of Consumer Financial Products or Services**

**Posted by the Consumer Financial Protection Bureau on Feb 1, 2022**

I. Background

Consumers can only realize the benefits of competition if companies transparently advertise the true price of their products or services, and the full price is subject to the competitive process. Both empirical studies and theoretical models suggest that when companies use hidden back-end fees—which are mandatory or quasi-mandatory fees added at some point in the transaction after a consumer has chosen the product or service based on a front-end price —it can lure consumers into making purchasing decisions based on a perceived lower price. (1) In addition, when a company charges for individual activities that are typical attributes of a product or service, it can give the company the power to substantially overcharge for those activities because consumers are not choosing a provider at the time they choose to engage in the activity. Well-known examples of such "junk fees" include resort fees added to hotel bills and service fees added to concert ticket prices. Government agencies and economists have raised concerns about the ways in which America's growing "fee economy" undermines competition. (2)

The Consumer Financial Protection Act (CFPA) directs the CFPB to enforce Federal consumer law for the purpose of ensuring consumer financial markets are fair, transparent, and competitive. (3) The CFPB has grown increasingly concerned that consumer finance has become part of this "fee economy." Exploitative junk fees charged by banks and non-bank financial institutions have become widespread, with the potential effect of shielding substantial portions of the true price of consumer financial products and services from competition. The CFPB is concerned about fees that far exceed the marginal cost of the service they purport to cover, implying that companies are not just shifting costs to consumers, but rather, taking advantage of a captive relationship with the consumer to drive excess profits. Excessive and exploitative fees, whether predictable and transparent to the customer or not, can add up and pose significant costs to people, especially those with low wealth and income.

Many Americans have experienced inflated or surprise fees that, however nominally voluntary, are not meaningfully avoidable or negotiable in the moment. These fees in consumer finance can take many forms: Penalty fees such as late fees, overdraft fees, non- sufficient funds (NSF) fees, convenience fees for processing payments, minimum balance fees, return item fees, stop payment fees, check image fees, fees for paper statements, fees to replace a card, fees for out-of-network ATMs, foreign transaction fees, ACH transfer fees, wire transfer fees, account closure fees, inactivity fees, fees to investigate fraudulent activity, ancillary fees in the mortgage closing process, and more. These fees have become the norm among financial services that Americans rely on every day, and a substantial amount of the revenue earned by financial services companies comes from these fees. The following are a few examples from select products and markets:

Deposit Accounts. The price of a deposit account is made up of, among other fees, account maintenance fees, minimum balance fees, savings transfer fees, NSF fees, overdraft fees, and

ATM fees. Overdraft and NSF fees are back-end fees that make up the majority of total revenue banks derive from deposit accounts. Overdraft and NSF fees exceeded $15.4 billion in 2019. (4) By comparison, banks make only about $1 billion annually in account maintenance fees. Since the back-end fees are the bulk of the price, there is effectively no price competition amongst the major banks for deposit accounts. Only recently have companies started to substantially vary their overdraft practices. This is of course a positive development, but these changes will not reverse the trend of pricing deposit accounts primarily through back-end fees. Credit Cards. Fees represent about 20% of the total cost of credit cards. Card issuers charged $23.6 billion in fees in 2019 alone and nearly $14 billion of those fees were late fees not subject to competitive pricing pressure. (5) Nearly every bank charges the same for late fees—the maximum allowed by law of $30 for the first late payment and $41 for subsequent late payments—and the average late fee has increased to $31, nearing the average of $33 before the Credit Card Accountability Responsibility and Disclosure (CARD) Act of 2009. (6) Remittances and Payments. Financial institutions charge "convenience" fees on payment transfers, return item fees, stop payment fees, check image fees, online or telephone bill pay fees, ACH transfer fees, and wire transfer fees. International transfers are subject to a significant number of fees as well. In 2017, after observing many abuses, the CFPB issued a Compliance Bulletin on unfair, deceptive, and abusive acts or practices relating to fees for making payments over the telephone, and potential violations of the Fair Debt Collection Practices Act (FDCPA). (7) These kinds of convenience fees are still common.
Prepaid Accounts. Prepaid cards represent a way for many unbanked consumers and individuals with limited resources to have access to basic financial services—yet many accounts carry fee structures that make it challenging for consumers to pick the right product based on their needs. Consumers frequently select a product based on a monthly rate only to find out that the "add-on" fees for regular activities such as transaction fees, cash reload fees, balance-inquiry fees, inactivity fees, monthly service fees, and card cancellation fees, among others, overshadow the quoted monthly charge.

Mortgages. Mortgages facilitate homeownership for millions of people, and, through homeownership, allow millions of families to build and maintain intergenerational wealth. But priced into most mortgages are thousands of dollars in application fees and closing costs, which few people are well-positioned to shop on. These fees can act as a barrier to homeownership, strip wealth from homeowners accessing their equity through refinancing or home sales, and deter some homeowners from refinancing when doing so would lower total housing costs and be financially advantageous. Advocates and reporters have noted that many closing costs, like title insurance, (8) may not always be subject to standard or appropriate competitive forces. Even aside from inflated and padded fees rolled into the mortgage at closing, homeowners can find themselves forced to pay fees for making payments over the phone or online or even for the servicer's bill pay service. Borrowers who face financial hardship and struggle to make mortgage payments can find themselves unable to catch up due to the snowballing of a plethora of fees related to the mortgage delinquency. Monthly property inspection fees, new title fees, legal fees, appraisals and valuations, broker price opinions, force-placed insurance, foreclosure fees, and miscellaneous, unspecified "corporate advances" can all price a homeowner out of a home.

The CFPB is interested in other loan origination and loan servicing fees, including for student loans, auto loans, installment loans, payday loans, and other types of loans. For example, some servicers charge fees to reschedule payment dates or make online or phone payments. Loan originators often charge application fees and some even charge to receive loan proceeds in an expedited manner.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr>
<td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BROUGHAM REO OWNER, LP, a foreign limited partnership based in NEW YORK county in DELAWARE; doing business as Prime Asset Fund III, an unknown entity; SEE ATTACHMENT

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Rilla Huml, Pro Se

</td>
<td>

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 10 2022

DAVID H. YAMASAKI, Clerk of the Court

BY:_____A. THAU_____,DEPUTY

</td>
</tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

    You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

    There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

    *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

    *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

    *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr>
<td>

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, Central Justice Center, County of Orange, 700 Civic Center Drive, Santa Ana, CA 92701

</td>
<td>

CASE NUMBER: *(Número del Caso):*
0 1 2 4 4 8 8 2

**JUDGE MARTHA GOODING**

</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Rilla Huml, 25 Medici, Aliso Viejo, CA 92656

A. THAU

<table>
<tr>
<td>DATE:    2/10/22<br>*(Fecha)*</td>
<td>DAVID H. YAMASAKI</td>
<td>Clerk, by<br>*(Secretario)*</td>
<td>, Deputy<br>*(Adjunto)*</td>
</tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

<table>
<tr>
<td>Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]</td>
<td>**SUMMONS**</td>
<td>Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov*</td>
</tr>
</table>

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

30-2022

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Huml vs. Brougham REO Owner LP | 0 1 2 4 4 8 8 2 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Prime Capital
Advisors, LLC, an unknown entity;
SERVIS ONE, INC., a Delaware
corporation, authorized to do business
in California, doing business as BSI
FINANCIAL SERVICES;
WILMINGTON SAVINGS FUND
SOCIETY, FSB, a Delaware
corporation, doing business, but not
authorized to do business, as
CHRISTIANA TRUST, in California,
as Trustee, for BROUGHAM FUND I
TRUST, an unknown entity;
and Does 1 through 10,

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Rilla Huml
25 Medici, Aliso Viejo, CA 92656

TELEPHONE NO.: (949) 933-7075          FAX NO. (Optional):
E-MAIL ADDRESS: dreamlife7@att.net
ATTORNEY FOR (Name): Pro Se

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 10 2022

DAVID H. YAMASAKI, Clerk of the Court

BY:_____A. THAU_____,DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Huml v. Brougham REO Owner, LP

**30-2022**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✱] Unlimited  [ ] Limited | [ ] Counter  [ ] Joinder | **0 1 2 4 4 8 8 2** |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE **JUDGE MARTHA GOODING** DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✱] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [✱] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✱] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✱] punitive
4. Number of causes of action (specify): 10
5. This case [ ] is  [✱] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: 2/10/22

Rilla Huml
_____          ▶          _____
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California          **CIVIL CASE COVER SHEET**          Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | **FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE* |
| PLAINTIFF: Rilla Huml | |
| DEFENDANT: Brougham REO Owner LP | **Feb 10, 2022** |
| Short Title: HUML VS. BROUGHAM REO OWNER LP | Clerk of the Superior Court<br>By: **Adam Thau**, Deputy |

| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2022-01244882-CU-OR-CJC |
|---|---|

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>07/18/2022</u> at <u>09:00:00 AM</u> in Department <u>C31</u> of this court, located at <u>Central Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: _____, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** HUML VS. BROUGHAM REO OWNER LP

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>**30-2022-01244882-CU-OR-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 02/10/2022. Following standard court practice the mailing will occur at Sacramento, California on 02/14/2022.

Clerk of the Court, by: _____ , Deputy

RILLA HUML
25 MEDICI
ALISO VIEJO, CA 92656

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 2

V3 1013a (June 2004)

Code of Civil Procedure , § CCP1013(a)

Rilla Huml
25 Medici
Aliso Viejo, CA 92656
Plaintiff, Pro Se
(949) 933-7075

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 14 2022

DAVID H. YAMASAKI, Clerk of the Court

BY:_____A. THAU_____,DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## ORANGE COUNTY, CENTRAL JUSTICE CENTER

RILLA HUML, an individual,

        Plaintiff,

vs.

BROUGHAM REO OWNER LP, a
foreign limited partnership based in
NEW YORK county in DELAWARE;
doing business as Prime Asset Fund
III, an unknown entity;  SERVIS ONE,
INC., a Delaware corporation,
authorized to do business in
California, doing business as BSI
FINANCIAL SERVICES;
WILMINGTON SAVINGS FUND
SOCIETY, FSB, a Delaware
corporation, doing business, but not
authorized to do business, as
CHRISTIANA TRUST, in California,
as Trustee, for BROUGHAM FUND I
TRUST, an unknown entity;
and Does 1 through 10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.  30-2022-01244882-CU-OR-
CJC

**(1) PLAINTIFF'S EX PARTE
APPLICATION FOR A
TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW
CAUSE RE: PRELIMINARY
INJUNCTION**
**(2) MEMORANDUM OF POINTS AND
AUTHORITIES**
**(3) DECLARATION OF PLAINTIFF
RILLA HUML RE: LOAN ERRORS**
**(4) PROPOSED TEMPORARY
RESTRAINING ORDER
ENJOINING FORECLOSURE SALE**

DATE:  February 15, 2022
TIME:   8:45 AM
DEPT:   31

**Assigned to: Judge Martha Gooding**

<u>Foreclosure Sale: February 16, 2022</u>

## TO: DEFENDANTS AND THEIR ATTORNEYS:

THIS CONFIRMS *EX PARTE* NOTICE PREVIOUSLY GIVEN to Nicole Metral,

Esq. of Blank Rome, counsel to Defendants Servis One, Inc. a Delaware Corporation,

authorized to do business in California, and doing business as BSI Financial Services,.

-1-
<u>VERIFIED COMPLAINT (Huml v. Brougham REO</u>

Inc. ("BSI") ZBS LAW, LLP (the "Trustee"), and Lauren Ross at Prime Asset Fund III, LP, that on February 15, 2022, at 8:45 AM, or as soon thereafter as Plaintiff Rilla Huml's ("Huml" or "Plaintiff") Ex Parte Application may be heard, in Department C31 of the above-mentioned court, located at 700 Civic Center Drive West, Santa Ana, CA 92701, California, Plaintiff will apply to the Court for a Temporary Restraining Order ("TRO") enjoining Defendants BSI, Brougham REO Owner , LP, and Prime Asset Fund III, the Trustee, and their agents, from proceeding to conduct a Trustee's Foreclosure Sale currently scheduled for February 16, 2022, with respect to Plaintiff's family home, located at 25 Medici, Aliso Viejo, 92656, A.P.N. 394-502-79 ("Plaintiff's Home" or the "Property").

Additionally, Plaintiff requests that the Court schedule an OSC hearing requiring Defendants to Show Cause why a Preliminary Injunction should not issue, enjoining all foreclosure proceedings until an Accounting of the accurate balance on the $200,000 Loan transferred to BSI can be determined, or a Trial.

Plaintiff's Ex Parte Application is made pursuant to CCP, Section 525 et. seq., and California Rules of Court ("CRC"), Rules 3.1150, on grounds that Defendants are wrongfully, illegally, and in bad faith, pursuing a foreclosure against Plaintiff's Home.

As set forth in Plaintiff's Verified Complaint, attached hereto as **Exhibit "1" and the Declaration of Plaintiff Rilla Huml:**

**(1)** On February 23, 2017, the Loan accounting problems started when (a) Wells Fargo Bank, N.A. sold the Loan to Wells Fargo Bank South Central, N.A., and the same day, (b) Wells Fargo Bank South Central, N.A. "flipped the loan" to Wilmington Savings Fund Society, FSB, dba Christiana Trust, as trustee, for Brougham Fund I Trust (the "Lender"), without notifying Plaintiff in violation of 12 CFR § 1026.39 ;

**(2)** Initially, the balance transferred from Wells Fargo was inaccurate, over-charging Huml by $8,500, and BSI's accounting began with a 2-month past-due balance.

**(3)** Defendant Servis One, Inc., dba BSI Financial Services ("BSI") negligently failed to rectify accounting errors on mortgage statements and the account balance.

**(4)** Defendant Servis One, Inc., dba BSI Financial Services ("BSI") **BSI has negligently failed to apply any payments received from Huml to her account since 2017, and has now over-charge Huml by about $149,000** despite her repeated efforts pointing out payments received and cleared by BSI, gross miscalculations, and excessive fees and costs.

**(5)** BSI consistently engaged in unfair business practices.

**(6)** Throughout 2020 and 2021, during the covid-19 pandemic, while the entire country experienced shut-downs, closures, delayed processes, illness, and unparalleled difficulties, BSI became more hostile and uncooperative.

Furthermore, good cause exists pursuant to CCP sections 1005 and CRC 3.1200 et. seq., in that if the Trustee's Foreclosure Sale actually occurs, then irreparable harm will result to Plaintiff in that Plaintiff will be divested of title interest in her Home, and she will lose possession of her Property.

On February 14, 2022, Plaintiff provided Defendants BSI and the Trustee with verbal and written notice of Plaintiff's Ex Parte Application for Temporary Restraining Order. (See Exhibits "1").

This Ex Parte Application is based on the Verified Complaint, this Memorandum of Points and Authorities, the Declaration of Plaintiff Rilla Huml, and such further oral and documentary evidence as may be presented at the time of the hearing on Plaintiff's

Ex Parte Application.

Dated:  February  14, 2022

_____

Rilla Huml
Plaintiff, Pro Se

# TABLE OF CONTENTS

Page

I.  **BACKGROUND FACTS**

    A.  The Loan Secured Against Rilla Huml's Home …………….…………5

    B.  Plaintiff's Attempts to Reconcile BSI's Mortgage Statement Errors…….6

    C.  Status of the Foreclosure Process …………………..…………………………7

II.  **LEGAL ARGUMENT**

    A.  The Court Has Authority to Issue a Temporary Restraining Order ……7
        Enjoining the February 16, 2022, Foreclosure Sale

    B.  Plaintiff's Irreparable Harm in Losing Her Home, Outweighs BSI's..…8
        Harm in Enjoining the Foreclosure Sale Pending a Preliminary
        Injunction Hearing, Mediation, or a Settlement Conference

    C.  It Is Reasonably Probable that Plaintiff Will Succeed on the Merits……9
        of Her Cause of Action for Lender / Servicer Gross Negligence

    D.  It Is Reasonably Probable that Plaintiff Will Succeed on the Merits……10
        of Her Causes of Action for Violation of the California Financing
        *Law (Fin. Code, § 22000 et seq.)*

III.  **CONCLUSION: THE COURT SHOULD ISSUE A TEMPORARY
      RESTRAINING ORDER, AND AN OSC RE: PRELIMINARY INJUNCTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND FACTS

**A. The Loan Secured Against Rilla Huml's Property.** In 1989, Plaintiff purchased the Property. In March 2004, Plaintiff refinanced the Property with a $200,000 Loan (the "Loan") from World Savings Bank, FSB secured by a Deed of Trust, recorded in priority position against the Property, **Exhibit "A"**.

In 2006, Wachovia Corporation acquired World Savings Bank, FSB.   In 2008, Wells Fargo Bank, N.A. acquired Wachovia Corporation.

On or about January 30, 2014, Plaintiff, having qualified for a HAMP Loan Modification, received a streamlined refinance from Wells Fargo Bank, N.A., which restructured the original loan by adding $275,000 additional interest to her loan.

On February 23, 2017, Wells Fargo Bank, N.A., sold and transferred the Loan to *Wells Fargo Bank South Central, N.A.*

That same day on February 23, 2017, - when the problems started – Wells Fargo Bank South Central, N.A. sold and transferred the Loan to Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, the current "Lender". See the Corporate Assignment of Deed of Trust hereto as **Exhibit  "B"** to the Complaint.

**B. Plaintiff's Attempts to Reconcile BSI's Mortgage Statement Errors.**

Throughout 2017, 2018, 2019, and 2020, Plaintiff attempted to communicate with representatives at BSI to obtain clarification regarding the accurate amount owed on the Loan. Plaintiff has sent four "Notice of Error, Request for Debt Validation, Qualified

Written Request for Information" to BSI since 2019.

1. On January 17, 2019, Plaintiff sent a letter to BSI entitled "Notice of Error, Request for Debt Validation, Qualified Written Request for Information" stating that BSI should not proceed with a foreclosure until the Loan inaccuracies were corrected.

2. On March 26, 2019, Plaintiff sent BSI a Second Notice of Error, Request for Debt Validation, Qualified Written Request for Information describing what she believed were Lender and Servicer errors, and she demanded that the foreclosure process not proceed until the financial inaccuracies were fixed.

3. On February 24, 2021, Plaintiff sent BSI a Third Notice of Error, Request for Debt Validation, Qualified Written Request for Information. See the Notice of Error, Request for Debt Validation, Qualified Written Request for Information hereto as **Exhibit "C"** to the Complaint.

4. On April 9, 2021, BSI responded by providing Plaintiff with 100 pages of *appraisal photos and comparable sale information, and an illegible 2-page accounting spreadsheet.*

5. In July 2021, Plaintiff sent BSI a Fourth Notice of Error, Request for Debt Validation, Qualified Written Request for Information.

6. Four weeks later, BSI sent Plaintiff a letter stating that they already responded to the Third QWR/NOE request earlier in the year, and that Plaintiff should refer to the response to the Third QWR/NOE.

7. On March 10, 2021, BSI added an additional $138,000 to Plaintiff's pay-off statement, for an original $200,000 loan, a sum that is unjustified, is not for principal and interest, is not for taxes and insurance and not awarded by any Court. See the payoff statement from BSI hereto as **Exhibit " D"** to the Complaint.

**C.** **Status of the Foreclosure Process**.  BSI directed the Trustee to schedule a sale date for Plaintiff's property for **February 16, 2022.**

## II. LEGAL ARGUMENT

### A.  The Court has Authority to Issue a Temporary Restraining Order

Code of Civil Procedure, Section 527 authorizes the Court to issue a preliminary injunction when sufficient grounds exist.

> A preliminary junction may be granted at any time before judgment upon ... affidavits if the ... affidavits show satisfactorily that sufficient grounds exist therefore.  No preliminary injunction shall issue without notice to the opposing party.  C.C.P. section 527(a).

"The grant of [an] injunction does not determine any of the merits of the controversy." *Baypoint Mortgage Corp. v. Crest Premium Real Estate, etc. Trust 168 Ca.App.3d 818, 823-24 (1985) (citing Continental Baking Co. v. Katz 60 Cal.2d 512, 528 (1968).* Nor does it require a finding that the party seeking the injunction will necessarily prevail on the merits.

Trial courts in California apply a two-part test in ruling on a preliminary injunction: (1) are the Plaintiff likely to suffer greater injury from the denial of the injunction than the defendants are likely to suffer from its grant, and (2) is there a reasonable probability that Plaintiff will prevail on the merits ..."  *Id.* at 824, quoting *Robbins v. Superior Court. 38 Cal.3d 199, 206, 207 (1985).*

### B.  Plaintiff's Irreparable Harm in Losing Her Home, Outweighs BSI's Harm in Enjoining the Foreclosure Sale Pending a Preliminary Injunction Hearing

Plaintiff's irreparable harm in losing her Home, far outweighs the minimal monetary harm which might result to Defendant BSI if the Trustee's Sale is stayed pending a hearing on a preliminary injunction in 21 days.

*Here, Plaintiff stands to lose her Home after BSI was grossly negligent and violated the*

-8-

*Financing Law (Fin. Code, § 22000 et seq., legislature enacted to protect homeowners from financial abuse and wrongful foreclosures, and which this Court has consistently utilized as a shield to protect innocent homeowners.*

Losing your personal home in an impending trustee's sale has been found to demonstrate the likelihood of suffering irreparable harm to support the issuance of a preliminary injunction. *Sundance Land Corp. v. Community first Federal Sav.& Loan Assoc., 840 F.2d 653, 661 (9th Cir. 1988)* (plaintiff met the requirement of showing irreparable harm by showing it would lose unique property if a preliminary injunction did not stop a pending foreclosure); *Sharma v. Provident Funding Associates, LP, No. C 09-5968 VRW, 2010 U.S. Dist. LEXIS 1407 at \*3 (N.D. Cal. January 10, 2010)* (impending foreclosure demonstrates the likelihood suffering irreparable harm).

Since BSI did not, and has not, complied with the California Financing Law (Fin. Code, § 22000 et seq), BSI should not be heard to say that it will suffer hardship by a *temporary restraining order enjoining the foreclosure sale. Indeed, the Temporary* Restraining Order will fairly prompt BSI to prepare a better Accounting, and enable Plaintiff to remain living in her Home.

### C. It Is Reasonably Probable that Plaintiff Will Succeed on the Merits of Her Cause of Action for Lender / Servicer Gross Negligence

As alleged in the Verified Complaint, in the process of transferring and purchasing the Loan from Wells Fargo Bank, N.A.'s, and Wells Fargo Bank South Central, N.A. to Lender and BSI, for servicing, Lender and BSI had duties of reasonable care to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance.      However, BSI and Lender breached these duties by: (a) failing to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance, (b) by sending monthly mortgage statements to Plaintiff that were

incorrect, and requesting that Plaintiff pay amounts that were not due and owing, and (c) by adding over a hundred thousands dollars of unauthorized and illegal fees and costs to the balance of her loan and the payoff statements.

As a direct and proximate result of BSI and Lender gross negligence, Plaintiff has been damaged in that she is being charge for sums of money that she has already paid and additional sums of money that she does not owe; Plaintiff has remained in the foreclosure process, which is costing her excessive interest rate charges, fees, penalties, and other foreclosure costs; and Plaintiff is now involved in this litigation which is causing her to incur certain attorneys' fees and costs, all to Plaintiff's damage and injury.

### D. It Is Reasonably Probable that Plaintiff Will Succeed on the Merits of Her Causes of Action for Violations of FINANCING LAW (FIN. CODE, § 22000 ET SEQ.

The California Financing Law (Fin. Code, § 22000 et seq.) requires the licensing and regulation of finance lenders and brokers making and brokering consumer and commercial loans; prohibits misrepresentations, fraudulent and deceptive acts in connection with making and brokering of loans; and provides administrative, civil (injunction and ancillary relief) and criminal remedies for violations of the law.

The California Financing Law (Fin. Code, § 22000 et seq.) protects borrowers against unfair practices by some lenders, having due regard for the interests of legitimate and scrupulous lenders.

As a direct and proximate result of BSI and Lender gross negligence, and violation of the California Financing Law (Fin. Code, § 22000 et seq.),  Plaintiff has been damaged in that she is being charged for payments she has already made, all efforts to correct the erroneous records have been blatantly ignored, and she is being illegally charged over

$100,000 in additional fees, all to Plaintiff's damage and injury.

## III.  CONCLUSION: THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER, AND AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Despite Plaintiff's meritorious claims, BSI, as Servicer, and the Trustee, are proceeding with the foreclosure process, with the clock ticking on a foreclosure sale now scheduled for **February 16, 2022.**

Since the irreparable harm which would result to Plaintiff if the Trustee's Sale is allowed to occur, far outweighs the harm to Defendants if the sale is stayed, Plaintiff requests that the Court grant Plaintiff's instant Ex Parte Application for a TRO. There is no other remedy at law which exists that would adequately protect Plaintiff from the immediate and irreparable harm of the Trustee's Sale.

Also, Plaintiff has satisfied the second prong of the pertinent injunction test – she has demonstrated a reasonable likelihood of prevailing on the merits of her causes of action.

Therefore, the Court should issue a TRO, and set an OSC hearing on Plaintiff's Motion for Preliminary Injunction.

Dated:  February 14, 2022

Rilla Huml
Plaintiff, Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DECLARATION OF PLAINTIFF RILLA HUML
### RE: LOAN ERRORS

I, Rilla Huml declare as follows:

1. I am the Plaintiff the above-entitled action.  I have personal knowledge of the facts set forth in this Declaration, and I would and could competently testify hereto.

2. I have signed and filed a Verification to my Complaint in this action.

3. My description of my efforts to rectify the errors of Defendant Servis One, Inc. D/B/A BSI Financial Services ("BSI") and Defendant Christiana Trust, as Trustee, for Brougham Fund I Trust ("Lender") on the subject $200,000 Loan secured against my home where I live at 25 Medici, Aliso Viejo, CA  92656, is set forth in ¶s 19 – 27, and Exhibits "D" – "G", of my Verified Complaint are accurate.

4. I sent BSI 4 Notice of Errors, Requests for Debt Validation, Qualified Written Requests for Information, on January 17, 2019, on March 26, 2019, on February 24, 2021, and in July 2021.  I have attempted to communicate with and sought a resolution with Steve Coleman, Eric Nguyen, Amy Vogus, Michael Bugbee, Kenya Smith, Jesse McCarthy, and Kimberly Bowers at BSI, as well as Nicole Metral, Cheryl Coleman, Jessica McElroy, Hannah No, and Erica Schulz at esq. at Blank Rome, and Brad Klein and Ruby Chavez at ZBS Law, LLP, formerly known as Zieve, Brodnax, and Steele.

5. Unfortunately, as of the date of this Declaration, not one of the above-mentioned parties have responded to any of my requests for explanation or correction. of their errors.  Thus, more time is needed to allow the Court to intervene, and for

1  Mediation or Trial.

2      I declare under penalty of perjury under the laws of the State of California that the

3  foregoing is true and correct. Executed this February 14, 2022, at Aliso Viejo, California.

4

5

6

7

8                                                    Rilla Huml
                                                     Plaintiff, Pro Se
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am a resident of Aliso Viejo, State of California. I am over the age of 18 and not a party to the within action.  My address is: 44 Titian, Aliso Viejo, CA 92656

On February 14, 2022, I caused to be served the foregoing document(s): **EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC RE: PRELIMINARY INJUNCTION** on the interested parties in this action addressed and sent as follows by service and mail:


Brougham REO Owner, LP, and
Prime Asset Fund III, LLC
12425 Race Track Rd.
Tampa, Florida 33626

Prime Capital Advisors, LLC
13266 Byrd St #447
Odessa, Florida  33556

Servis One, D/B/A BSI Financial, INC
1425 Greenway Dr Ste 400
Irving, TX 75038

Wilmington Savings Fund Society
1100 N Market St., Ste 1300
Wilmington, Delaware  19801


✦   STATE: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 14, 2022, at Aliso Viejo, California


_____

By    Amir Oreyzei

ORANGE COUNTY SUPERIOR COURT
**RECEIVED**
BUT NOT FILED

FEB 1 4 2022

DAVID H. YAMASAKI, Clerk of the Court
BY _____ DEPUTY

Rilla Huml
25 Medici
Aliso Viejo, CA 92656
Plaintiff, Pro Se
(949) 933-7075
dreamlife7@att.net

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**ORANGE COUNTY, CENTRAL JUSTICE CENTER**

| | |
|---|---|
| RILLA HUML, an individual,<br><br>        **Plaintiff,**<br><br>vs.<br><br>BROUGHAM REO OWNER LP, a foreign limited partnership based in NEW YORK county in DELAWARE; doing business as Prime Asset Fund III, an unknown entity; SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized to do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity; and Does 1 through 10,<br><br>        **Defendants.** | CASE NO. 30-2022-01244882-CU-OR-CJC<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>DATE:  February 15, 2022<br>TIME:   8:45 AM<br>DEPT:   31<br><br>**Assigned to: Judge Martha Gooding**<br><br>**Foreclosure Sale: February 16, 2022** |

On February 15, 2022, at 8:45 AM, Plaintiffs' Ex Parte Application for Temporary Restraining Order to enjoin foreclosure sale, came on as a properly noticed ex parte hearing.

     Plaintiff was represented Pro Se.  Defendants Brougham REO and Prime Asset Fund were represented by _____, and  Servis One, Inc. dba BSI Financial

-1-
Order Granting Plaintiff's Ex Parte App. for TRO Enjoining Foreclosure Sale
(Huml v. Brougham REO Owner, LP, et al.)

Services ("BSI") was represented by _____, Esq.

The Court, have considering all filed paperwork both in support and in opposition to Plaintiffs' Ex Parte Application, and having heard counsels' oral arguments, and finding good cause therefore:

IT IS HEREBY ORDERED that Defendants are hereby enjoined from taking any further actions in connection with the foreclosure proceeding pending against the property located at 25 Medici, Aliso Viejo, CA 92656, (the "Property"), including, specifically, from conducting a Trustee's Sale at the foreclosure sale scheduled for February 16, 2022.

IT IS FURTHER ORDERED that on _____, 2022, at _____, in Dept. _____, an Order to Show Cause hearing will be held on Plaintiffs' Motion for Preliminary Injunction to enjoin any foreclosure proceeding and any Trustee's Sale from occurring with respect to the Property, pending a further Court order.

*Plaintiffs' Ex Parte papers are deemed Plaintiff's moving papers for purposes of Plaintiffs' Motion for Preliminary Injunction and the OSC re: Preliminary Injunction.* Defendants' opposition shall be filed and served by _____, 2022, and Plaintiff's reply shall be filed and served by _____, 2022.   A copy of this Temporary Restraining Order shall be served upon Defendants within 48 hours.

**IT IS SO ORDERED.**

February 15, 2022          _____

**The Honorable Martha Gooding**

**Judge of the Superior Court**

Electronically Filed by Superior Court of California, County of Orange, 03/14/2022 11:53:00 PM.
30-2022-01244882-CU-OR-CJC - ROA # 12 - DAVID H. YAMASAKI, Clerk of the Court By ellinguser, Deputy Clerk.
Case 8:22-cv-00878-JLS-DFM Document 1-2 Filed 04/26/22 Page 84 of 277 Page
ID #:94

1    BLANK ROME LLP
      Cheryl S. Chang (SBN 237098)
2    Chang@BlankRome.com
      Nicole M. Metral (SBN 340796)
3    Nicole.Metral@BlankRome.com
      2029 Century Park East, 6th Floor
4    Los Angeles, CA  90067
      Telephone:    424.239.3400
5    Facsimile:    424.239.3434

6

7    Attorneys for Defendants
      SERVIS ONE INC. dba BSI FINANCIAL SERVICES;
8    WILMINGTON SAVINGS FUND SOCIETY, FSB d/b/a CHRISTIANA TRUST, NOT IN ITS
      INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTES FOR BROUGHAM FUND I TRUST

9

10               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11               **ORANGE COUNTY, CENTRAL JUSTICE CENTER**

12

| | |
|---|---|
| 13 RILLA HUML, an individual, | Case No.: 30-2022-01244882-CU-OR-CJC |
| 14          Plaintiff, | *[Assigned to Hon. Martha Gooding, Dept. 31]* |
| 15    vs. | **DEFENDANTS SERVIS ONE, INC. dba BSI FINANCIAL SERVICES, WILMINGTON** |
| 16 | **SAVINGS FUND SOCIETY, FSB, AND d/b/a** |
|          Defendants. | **CHRISTIANA TRUST, NOT IN ITS** |
| 17 | **INDIVIDUAL CAPACITY BUT SOLELY AS** |
| 18 SERVIS ONE INC. dba BSI FINANCIAL SERVICES; | **TRUSTES FOR BROUGHAM FUND I** |
| 19 WILMINGTON SAVINGS FUND | **TRUST'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION** |
| SOCIETY, FSB d/b/a CHRISTIANA | |
| 20 TRUST, NOT IN ITS INDIVIDUAL | *[Declaration and Request for Judicial Notice filed* |
| CAPACITY BUT SOLELY AS TRUSTES | *concurrently herewith]* |
| 21 FOR BROUGHAM FUND I TRUST; et al. | |
| 22 | Date:      February 15, 2022 |
| | Time:      8:45 a.m. |
| 23 | Dept:      31 |
| 24 | Complaint filed:    February 14, 2022 |
| 25 | Trial Date:      None Set |

26

27

28

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

1
2

# **TABLE OF CONTENTS**

3
I.      INTRODUCTION 1

4
II.     STATEMENT OF FACTS 1

A.      Plaintiff's Loan History 1

5
B.      Procedural History of the Litigation and the Ex Parte Application 2

6
III.    LEGAL STANDARD 2

7
IV.     ARGUMENT 3

A.      The Application is Barred by Res Judicata and Collateral Estoppel 3

8
B.      Plaintiff's Application must be denied as Plaintiff failed to give notice to
all parties as required by California Rules of Court 3.1203(a). 4

9

C.      Defendants' Harm Outweighs Plaintiff's Harm 5

10
D.      The Entire Complaint Fails as a Matter of Law 5

11
    1.      Plaintiff Failed to Provide An Affirmative Factual Showing As
Required Under California Rules of Court, Rule 3.1202(c) 5

12
    2.      The Harm BSI Will Suffer if a Stay is Issued Far Outweighs Any
Harm that Plaintiff Might Suffer 5

13

    3.      Plaintiff Will Not Prevail on the Merits of the Action 6

14
        a.      Plaintiff Fails to State Her First Cause of Action for Gross
Negligence 6

15

16
        b.      Plaintiff Fails to State Her Second Cause of Action for Libel
6

17
        c.      Plaintiff Fails to State Her Third Cause of Action for Breach
of the Implied Covenant of Good Faith and Fair Dealing 7

18
        d.      Plaintiff Fails to State Her Fourth Cause of Action for
Violation of the California Finance Code 7

19
        e.      Plaintiff Fails to State Her Fifth and Eight Causes of Action
for Fraudulent Misrepresentation and Fraudulent

20
            Concealment 8

21
        f.      Plaintiff Fails to State Her Sixth Cause of Action for Unjust
Enrichment 9

22
        g.      Plaintiff Fails to State Her Seventh Cause of Action for
Unfair and Deceptive Trade Practices Act 9

23

24
        h.      Plaintiff Fails to State Her Ninth Cause of Action for Void
Assignment to the Deed of Trust 10

25
        iv.     Plaintiff Fails to State her Tenth Cause of Action for Quiet
Title. 10

26
E.      If the Court Entertains a TRO, the Court Must Require Plaintiff to Post a
Bond 10

27
V.      CONCLUSION 11

28

## TABLE OF AUTHORITIES

Page No.

**Cases**

(*Vess v. Ciba-Geigy Corp. USA*
  (9th Cir. 2003) 317 F.3d 1097....................................................................... 9

*Biasca v. Superior Court* \
  (1924) 194 Cal. 366 ............................................................................ 3, 10

*Common Cause v. Board of Supervisors* (1989)
  49 Cal. 3d 432 ............................................................................................. 3

*Di Giorgio Fruit Corp. v. AFL–CIO*
  (1963) 215 Cal.App.2d 560.......................................................................... 7

***Erlich v. Menezes* (1999) 21 Cal. 4th 543, 551** ......................................... 6

*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 918, 69 Cal.Rptr. 612, 442 P.2d 692 ...................... 10

*Gottlieb v. Kest*
  (2006) 141 Cal. App. 4th 110 ...................................................................... 3

*Guz v. Bechtel National, Inc.*
  (2000) 24 Cal.4th ......................................................................................... 7

*Hellar v. Bianco*
  (1952) 111 Cal.App.2d 424.......................................................................... 7

*Hill v. Roll Int'l Corp* (2011) 195 Cal. App. 4th 1295, 1306 .......................... 9

*Hines v. Hubble* (1956) 144 Cal.App.2d 830, 837, 301 P.2d 592 .................... 10

*In re Daley,*
  776 F.2d 834 (9th Cir. 1985 ........................................................................ 3

*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 521 ............ 10

*Landmark Holding Group, Inc. v. Superior Court,*
  193 Cal. App.3d 525 (1987).......................................................................... 2

*Lazar v. Superior Court,*
  12 Cal. 4th 631 ............................................................................................ 8

*Low v. Low*
  (1956) 143 Cal. App.2d 650 ........................................................................ 3

*Melchior v. New Line Productions, Inc.* (2003) 106 Cal. App. 4th 779, 793 ................ 9

***Nymark v. Heart Fed. Sav. & Loan Ass'n***
  **(1991) 231 Cal. App. 3d 1089** ................................................................ 6

*People v. Carter*
  (2005) 36 Cal.4th 1215 ................................................................................ 4

*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326, 42 Cal.Rptr.3d 792 ................... 10

*Rodgers v. Sargent Controls & Aerospace*
  (2006) 136 Cal.App.4th 82 .......................................................................... 4

*Swartz v. KPMG LLP* (9th Cir. 2007) 476 F.3d 756, 764-65 ........................... 9


Other Authorities

*7978 Corp. v. Pitches*
  (1974) 41 Cal. App.3d 42.............................................................................. 2

California Business & Professions Code Section 17200 .................................... 9

CCP § 527(c)(1) ............................................................................................... 2

Real Estate Settlement Procedures Act of 1974................................................. 2

Rules

California Rule of Court, Rule 3.1203(a)......................................................... 4

**OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION**

California Rules of Court, Rule 3.1202(c) .............................................................................. 5

**OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Servis One, Inc. d/b/a BSI Financial Services ("BSI"); Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its Individual Capacity but Solely as Trustee for Brougham Fund I Trust ("Christiana Trust") (collectively, BSI and Christiana Trust are referred to as the "Defendants") hereby submit this opposition ("Opposition") to the *ex parte* Application for Temporary Restraining Order ("Application") filed by plaintiff Rilla Huml ("Plaintiff").

## I.   INTRODUCTION

Plaintiff's Application is an improper last ditch attempt to bar Defendants from proceeding with a Trustee's foreclosure sale scheduled for February 16, 2022.  As discussed herein, the Application should be denied by this Court for a multitude of reason.  First, as a procedural matter, the Application should be denied where Plaintiff failed to give the appropriate notice to all of the named defendants as required by California Rule of Court, Rule 3.1203(a). Second, even if Plaintiff had given the correct notice, the Application should be denied on the basis of *res judicata*, and/or collateral estoppel because it is simply a repackaged version of the very same claims that Plaintiff previously filed in this Court (Case No. 30-2019-10162402-CU-OR-CJC), which Defendants removed to the U.S. District Court for the Central District of California (Case No. 8:20-cv-00489-DOC-KES) (the "Prior Action"), and obtained a dismissal with prejudice. (*See* Request for Judicial Notice ("RJN"), ¶¶ 1-4, Exs. A-E.). Third, all of the claims raised in the Plaintiff's Complaint lack merit and should be dismissed as a matter of law. For all these reasons, as discussed below, the Court should deny the Application, and allow Defendants' foreclosure sale to proceed as scheduled.

## II.   STATEMENT OF FACTS

### A.   **Plaintiff's Loan History**

Plaintiff purchased the real property located at 25 Medici, Aliso Viejo, CA 92656 ("Property") in 1989. (Compl. ¶ 11.) In 2005, Plaintiff refinanced the Property with a $100,000 loan (the "Loan"), secured by a deed of trust ("DOT"). (*Ibid.* at ¶ 12.)

On or about February 23, 2017, the Loan was service transferred to BSI. (*Ibid.* at ¶ 16.)

**B.**    **Procedural History of the Litigation and the Ex Parte Application**

On February 14, 2022, Plaintiff filed her Application and accompanying Complaint.  At 12:06 p.m., Plaintiff gave deficient *ex parte* notice of the Application via email to BSI's counsel, only, and failed to provide notice to the other named Defendants.  *See* Metral Decl. at ¶ 2.

In her Application, Plaintiff asserts that  the foreclosure sale scheduled for the Property on February 16, 2022 should be enjoined because Defendants failed to properly account for her Loan.  Plaintiff cites to various letters that she sent to BSI, purporting to notices of error and/or qualified written requests for information under the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601 *et seq.*) ("RESPA").  However, each of those letters all claimed that her Loan accounting was inaccurate, and demanding an appropriate accounting before a foreclosure could proceed.  However, Plaintiff has been making these same exact purported mis-accounting claims since April 8, 2019, when she filed the Previous Action in this Court. (RJN, ¶ 1, Ex. A.)

In fact, the same claims at issue here were first adjudicated in the Minute Order for the preliminary injunction, in which the Court rejected Plaintiff's accounting claims because BSI's "evidence shows that it provided Plaintiff with the accounting she seeks." (RJN, ¶ 2, Ex. B.)

The matter was subsequently removed to federal court where the Plaintiff's Third Amended Complaint was dismissed by the Federal District Court in its entirety with prejudice. (RJN, ¶ 5, Ex. E.)

## III.    LEGAL STANDARD

A temporary restraining order ("TRO") is meant to preserve the status quo pending an evidentiary hearing on whether to issue a preliminary injunction.  *Landmark Holding Group, Inc. v. Superior Court*, 193 Cal. App.3d 525, 528 (1987).  An *ex parte* application must include "an affirmative factual showing . . . of irreparable harm, immediate danger or any other statutory basis for granting relief ex parte."  Cal. Rule of Court 3.1202(c).  The Court may only enter a TRO *ex parte* if it appears from specific facts on personal knowledge, shown by affidavit or declaration, or by a verified complaint, that great or irreparable injury will result to the applicant before the matter can be heard on notice.  (CCP § 527(c)(1), 2015.5; s*ee also 7978 Corp. v. Pitches* (1974) 41 Cal. App.3d 42 [it is the movant's burden of proof to show an irreparable injury].)  A

1   restraining order may not be granted on a declaration supported only on information and belief.

2   (*Low v. Low* (1956) 143 Cal. App.2d 650, 654**Error! Bookmark not defined.**.)  The Court has

3   authority to require an undertaking in connection with the issuance of a TRO.  (*Biasca v. Superior*

4   *Court* (1924) 194 Cal. 366, 367.)

5       In exercising its discretion to provide injunctive relief, the trial court must consider two

6   interrelated factors: (i) the harm to be suffered by the plaintiff if the injunction does not issue as

7   compared to the harm the defendant will suffer if issued; and (ii) the likelihood that the plaintiff

8   will prevail on the merits of the case at trial.  (*See Common Cause v. Board of Supervisors* (1989)

9   49 Cal. 3d 432, 441-42.)

10  **IV.   ARGUMENT**

11      **A.   <u>The Application is Barred by Res Judicata and Collateral Estoppel</u>**

12          This Application is barred by *res judicata* and collateral estoppel as this matter was

13  previously ***<u>Res Judicata</u>***

14          Plaintiff's attempt to circumvent the previous dismissal with prejudice fails as a matter of

15  law. This Court has already dismissed the Third Amended Complaint, asserting identical claims

16  to the instant Application, in the Prior Action based on judicial estoppel because claims were

17  based on conduct that allegedly occurred prior to, and while, her separate bankruptcy action was

18  pending. (RJN, ¶ 5, Ex. E).  Therefore, her claims remained the property of the bankruptcy

19  estate, which included the same accounting claims as the ones at bar.  Plaintiff's attempt to

20  relitigate the same claims which were previously dismissed fails as a matter of law. (*See In re*

21  *Daley*, 776 F.2d 834, 838 (9th Cir. 1985), citing the Restatement (Second) of Judgments ["When

22  an issue of fact or law is actually litigated and determined by a valid and final judgment, and the

23  determination is essential to the judgment, the determination is conclusive in a subsequent action

24  between the parties, whether on the same or different claim."].)

25          Further, to the extent the Petition raises any new claim that is based on the same issues

26  that were actually litigated in the Prior Action, those claims are also barred by the doctrine of

27  collateral estoppel. (*See Gottlieb v. Kest* (2006) 141 Cal. App. 4th 110, 147–48, 46 Cal. Rptr. 3d

28  7, 33 ["Where res judicata operates to prevent relitigation of a cause of action once adjudicated,

1  collateral estoppel operates . . . to obviate the need to relitigate issues already adjudicated in the

2  first action."].) Thus, to the extent Plaintiff includes in her Complaint references to new

3  correspondence that was not included in the previously adjudicated matter, she fails to allege new

4  facts because the letters concern the same issue as the other letters – *i.e.* concerns over the balance

5  of her mortgage loan account.

6        Collateral estoppel has been found to bar re-litigation of an issue decided at a previous

7  proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one

8  which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the

9  merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with

10  a party at the prior [proceeding]." (*Gottlieb*, 141 Cal. App. 4th at  148, 46 Cal. Rptr. 3d at 33.) It

11  is implicit in this three-prong test that only issues actually litigated in the initial action may be

12  precluded from the second proceeding under the collateral estoppel doctrine. An issue is actually

13  litigated "[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for

14  determination, and is determined . . . ." (*People v. Carter* (2005) 36 Cal.4th 1215, 1240, 32

15  Cal.Rptr.3d 838, 117 P.3d 544, italics omitted.) Courts also consider whether the party to be

16  estopped had a "full and fair opportunity" to litigate the issue. (*Rodgers v. Sargent Controls &*

17  *Aerospace* (2006) 136 Cal.App.4th 82, 90, 38 Cal.Rptr.3d 528 (*Rodgers*).)

18        Here, the *Third* Amended Complaint was dismissed with prejudice following motions for

19  judgment on the pleadings by multiple parties. (RJN, ¶ __, Ex. __.) Therefore, the identical issues

20  were actually litigated prior to the final judgment on the merits.

21      **B.**    **Plaintiff's Application must be denied as Plaintiff failed to give notice to all**

22         **parties as required by California Rules of Court 3.1203(a).**

23        Pursuant to California Rule of Court, Rule 3.1203(a), "[a] party seeking an ex parte order

24  must notify **all parties** no later than 10:00 a.m. the court day before the ex parte appearance,

25  absent a showing of exceptional circumstances that justify a shorter time for notice." (Emphasis

26  added.)

27        There are three defendants in this case, and Plaintiff gave *late* notice to only two of them –

28  BSI and Christiana Trust – but failed to give notice, or even attempt to give notice, to the

1   Brougham REO Owner LP. (*See* Application p. 3 ["        ."].) Further, Plaintiff failed to give

2   notice of the Application in a timely manner to BSI and Christiana Trust, only emailing counsel at

3   12:03 p.m. the court day before the ex parte appearance – hours after the deadline imposed by this

4   Court's Rules and the Rules of Court.  (*See* Metral Decl. at ¶ 2.)

5          Accordingly, and because a violation of Rule 3.1203(a) is cause for immediate denial of

6   an *ex parte* application, Plaintiff's Application is defective and must be denied.

7          **C.     Defendants' Harm Outweighs Plaintiff's Harm**

8          The harm Defendants will suffer if a temporary restraining order ("TRO") is issued far

9   outweighs any harm Plaintiff will suffer.  Should the Court stay the foreclosure, BSI – which has

10  already suffered the legal fees as well as the delayed return on its Loan resulting from Plaintiff's

11  continued stall tactics – will be further delayed in any efforts to recoup the money owed to it on

12  the unpaid loan secured by the property at issue.  Plaintiff has been on notice of the foreclosure

13  sale date for months, even years, but she waited until the last possible moment before the sale to

14  present the appearance of urgency.  Such conduct should not be countenanced.

15         **D.     The Entire Complaint Fails as a Matter of Law**

16                **1.     Plaintiff Failed to Provide An Affirmative Factual Showing As**

17                       **Required Under California Rules of Court, Rule 3.1202(c)**

18         In order to obtain *ex parte* relief, "an applicant must make an affirmative factual showing

19  in a declaration containing competent testimony based on personal knowledge of irreparable

20  harm, immediate danger, or any other statutory basis for granting relief ex parte."  California

21  Rules of Court, Rule 3.1202(c).  Plaintiff has failed to make this affirmative factual showing as

22  her supporting declaration only identify letters she sent to BSI making assertions about the

23  inaccuracies of the accounting on her Loan. Nowhere in the Application does she actually identify

24  an inaccuracy in the accounting.  Accordingly, she has not demonstrated any likelihood that she

25  will prevail on the merits on the causes of action in her underlying Complaint.  The Application

26  must therefore be denied.

27                **2.     The Harm BSI Will Suffer if a Stay is Issued Far Outweighs Any**

28                       **Harm that Plaintiff Might Suffer**

1    Plaintiff will likely claim she will be irreparably harmed if extraordinary relief is not

2    granted here.  However, Plaintiff fails to establish that good cause exists to grant the requested

3    relief on an *ex parte* basis.  Plaintiff has continuously sought to delay the foreclosure sale since

4    that time, including successfully postponing the sale twice in addition to this third attempt.

5    Allowing the foreclosure to proceed will simply result in Plaintiff's eventual eviction from the

6    Property that she has been living in for free for years.  That is not a "harm."

7    On the other hand, should the Court stay the foreclosure, BSI – which has already suffered

8    the legal fees as well as the delayed return on its Loan resulting from Plaintiff's continued stall

9    tactics – will be further delayed in any efforts to recoup the money owed to it on the unpaid Loan

10    secured by the Property.  Not only do the equities weigh against issuing a TRO or Order to Show

11    Cause, but the exigency here is self-imposed by Plaintiff.  Plaintiff has been on notice of the

12    foreclosure sale date for weeks, but she waited until the last possible moment before the sale to

13    present the appearance of urgency.  Such conduct should not be countenanced.

14

15    ### 3.    Plaintiff Will Not Prevail on the Merits of the Action

16    ### a.    Plaintiff Fails to State Her First Cause of Action for Gross

17    ### Negligence

18    Plaintiff argues that the Defendants owed a duty of care in managing her loan—e.g.,

19    obligations to accurately record payments and determine annual rate adjustments. Under

20    California law, "conduct amounting to a breach of contract becomes tortious only when it also

21    violates a duty independent of the contract arising from principles of tort law." (*Erlich v. Menezes*

22    (1999) 21 Cal. 4th 543, 551. Plaintiff's Complaint does not identify any behavior on the part of

23    the Defendants that would "exceed the scope of [the] conventional role as a mere lender of

24    money," and thereby incur tort liability. (*See Nymark v. Heart Fed. Sav. & Loan Ass'n* (1991) 231

25    Cal. App. 3d 1089, 1096. Therefore, as the allegations do not go beyond contractual violations,

26    they do not justify tort liability, and the cause of action fails as a matter of law.

27    ### b.    Plaintiff Fails to State Her Second Cause of Action for Libel

28

"Libel is a false and unprivileged publication by writing, . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ.Code, § 45.) An entity other than a natural person may be libeled. (*Di Giorgio Fruit Corp. v. AFL–CIO* (1963) 215 Cal.App.2d 560, 570–571, 30 Cal.Rptr. 350.)

However, a libelous statement is not actionable until it has been published to a third person. (Prosser on Torts (5th ed. 1984) Defamation, § 113, pp. 797–799.) A plaintiff cannot manufacture a defamation cause of action by publishing the statements to third persons; the publication must be done by the defendant. (*Shoemaker v. Friedberg* (1947) 80 Cal.App.2d 911, 916, 183 P.2d 318 [plaintiff repeated statement, no publication]. Cf. *Hellar v. Bianco* (1952) 111 Cal.App.2d 424, 244 P.2d 757 [defendant allowed statement to remain on the men's room wall, publication].)

Here, the cause of action is unintelligible. It appears Plaintiff is alleging that unspecified prior violations constitute libel, yet all of Plaintiff's claims were dismissed with prejudice. As such, this claim fails as a matter of law.

     **c.**     **Plaintiff Fails to State Her Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing**

A breach of the covenant of good faith and fair dealing does not give rise to a cause of action separate from a cause of action for breach of the contract containing the covenant. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 327, 100 Cal.Rptr.2d 352, 8 P.3d 1089.) Therefore, this cause of action fails as a matter of law.

     **d.**     **Plaintiff Fails to State Her Fourth Cause of Action for Violation of the California Finance Code**

Plaintiff fails to specify which section of the Finance Code this cause of action is brought under. Regardless, there are no allegations that Plaintiff's loan was a "covered loan" under the Financial Code.

"Division 1.6 contains numerous prohibitions and limitations with respect to covered loans. For example, a person who originates covered loans shall not (1) 'make a covered loan

that finances points and fees in excess of' the higher of $1,000 or 6 percent of the original principal balance, exclusive of points and fees (§ 4979.6); (2) 'make or arrange a covered loan unless at the time the loan is consummated, the person reasonably believes the consumer ... will be able to make the scheduled payments to repay the obligation based' on specified factors (§ 4973, subd. (f)(1))." (*American Financial*, *supra*, 34 Cal.4th at p. 1246.) In addition, a covered loan shall not: (1) provide a payment schedule at origination, if the loan term is five years or less, "with regular periodic payments that when aggregated do not fully amortize the principal balance as of the maturity date of the loan" (§ 4973, subd. (b)(1)); (2) "contain a provision for negative amortization such that the payment schedule for regular monthly payments causes the principal balance to increase, unless the covered loan is a first mortgage and the person who originates the loan" makes an appropriate disclosure (*id.* at subd. (c)); (3) "contain a provision that increases the interest rate as a result of a default" except under certain circumstances (*id.* at subd. (e)); and (4) be made without seven paragraphs of disclosures specified in section 4973, subdivision (k)(1).

In this case, the allegations do not show that the loan meets the definition of a "covered loan" under section 4970. Therefore, as Plaintiff did not establish that she received a "covered loan" within the meaning of section 4970, this claim fails as a matter of law.

> **e.**    **Plaintiff Fails to State Her Fifth and Eight Causes of Action for Fraudulent Misrepresentation and Fraudulent Concealment**

Under California law, fraud consists in the following five elements: (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (citing, inter alia, Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable [for fraudulent deceit] for any damage which he thereby suffers.")). Federal Rule of Civil Procedure 9(b) governs pleading the special matters of fraud, mistake, and conditions of mind. The circumstances of fraud and mistake must be pleaded "with particularity." (Fed. R. Civ. P. 9(b).) This standard applies to claims arising under state law, and requires a claimant to set forth "the who, what, when, where, and how" of the alleged fraud, including "what is false or misleading about a statement, and why it is false." (*Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003)

1  317 F.3d 1097, 1103, 1107.) When fraud is alleged against multiple defendants, the claimant may

2  not "merely lump multiple defendants together," but must instead describe the separate role of

3  each defendant in the alleged fraud," such that each defendant can adequately prepare a defense

4  to the accusation of fraud. (*Swartz v. KPMG LLP* (9th Cir. 2007) 476 F.3d 756, 764-65.)

5       Simply put, the Complaint does not plead a claim for fraud with the necessary

6  particularity, as many details of the "who, what, when, where, and how" of the alleged fraud are

7  absent. Therefore, the Fifth and Eight Causes of Action fail as a matter of law.

8          **f.**    **Plaintiff Fails to State Her Sixth Cause of Action for Unjust**

9                **Enrichment**

10       California does not recognize an independent cause of action for unjust enrichment;

11  rather, it is a restitution remedy that must be connected to some underlying wrong.  (*Hill v. Roll*

12  *Int'l Corp* (2011) 195 Cal. App. 4th 1295, 1306; *Melchior v. New Line Productions, Inc.* (2003)

13  106 Cal. App. 4th 779, 793.)  The elements of unjust enrichment as a remedy are receipt of a

14  benefit and unjust retention of the benefit at another's expense.  (*Hirsch v. Bank of America*

15  (2003) 107 Cal.App.4th 708, 717.)

16       Plaintiff's cause of action fails from the outset because it is not an independent cause of

17  action.

18          **g.**    **Plaintiff Fails to State Her Seventh Cause of Action for Unfair**

19                **and Deceptive Trade Practices Act**

20       California Business & Professions Code Section 17200 ("Section 17200 or UCL")

21  requires that a plaintiff has lost money or property to have standing to bring a claim.  (*Kwikset*

22  *Corp. v. Sup. Ct.* (2011) 51 Cal.4th 301, 322-23.) A plaintiff suffers injury-in-fact when he or she:

23  "(1) surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise

24  would have; (2) ha[s] a present or further property interest diminished; (3) [is] deprived of money

25  or property to which he or she has a cognizable claim; or (4) [is] required to enter into a

26  transaction, costing money or property, that would otherwise have been unnecessary." (*Ibid.* at

27  322.)  Here, Plaintiff does not allege any facts to show she lost any money or property to

28  Defendants and therefore lacks standing to bring a UCL claim.  (*See generally*, Compl.)

9

1    Additionally, a plaintiff does not have standing to bring a UCL claim when he admits to

2    being in default on his loan.  (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th

3    497, 521, disapproved on other grounds by *Yvanova v. New Century Mortg. Corp.* (2016) 62

4    Cal.4th 919.)  Because Plaintiff defaulted the Loan, any and all injury alleged by Plaintiff was

5    caused by her own default.  Accordingly, Plaintiff lacks standing to bring a UCL claim.

6                   **h.       Plaintiff Fails to State Her Ninth Cause of Action for Void**

7                            **Assignment to the Deed of Trust**

8    As Plaintiff does not bring this claim under any law and as this cause of action is not

9    independently recognized, this cause of action must fail as a matter of law.

10                   **iv.    Plaintiff Fails to State her Tenth Cause of Action for Quiet Title.**

11    To obtain a judgment quieting title, a plaintiff not only must prove an interest in the

12    property (*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326, 42 Cal.Rptr.3d 792), but also

13    "must prove a title in himself [or herself] superior to that of defendant" (*Gerhard v.*

14    *Stephens* (1968) 68 Cal.2d 864, 918, 69 Cal.Rptr. 612, 442 P.2d 692; *Hines v. Hubble* (1956) 144

15    Cal.App.2d 830, 837, 301 P.2d 592). Before entering judgment in any quiet title action, the court

16    must "examine into and determine the plaintiff's title against the claims of all the defendants." (§

17    764.010.)

18    Here, Defendants have a recorded secured interest in the Property (*see* Exhibits A and B

19    of the Complaint). Nothing in Plaintiff's Complaint rebuts the interest of Defendants. Allegations

20    regarding an incorrect loan balance is insufficient to rebut Defendants' interest in the Property.

21    Therefore, Plaintiff's quiet title claim must fail as a matter of law.

22           **E.     If the Court Entertains a TRO, the Court Must Require Plaintiff to Post a**

23                   **Bond**

24    Should the Court determine that a TRO is warranted by the evidence set forth in the

25    Application, the Court should require the Plaintiff to post a bond in no less than the full amount of

26    the loan or the estimated unpaid balance of the loan as of February 14, 2022.  (*See Satinover v.*

27    *Dean* (1988) 202 Cal. App. 3d 1298 [court has discretion to require a bond as a condition of

28    issuance of a TRO]; *Biasca v. Superior Court* (1924) 194 Cal. 366, 367 [a trial court has the

inherent equitable power to require an undertaking during the period of effectiveness of a TRO].)
Here, an undertaking is necessary because Plaintiff has been in default on the Loan for years, and
this an attempt to delay the foreclosure sale *after this matter was disposed of with prejudice on
September 10, 2021*, thus barred by both res judicata and collateral estoppel.  Absent a bond,
there is nothing to protect Defendants from Plaintiff's continued delay tactics.  Should a TRO
issue, though Defendants maintain that one is entirely improper, a bond must be required of
Plaintiff.

V.      **CONCLUSION**

Based upon the foregoing, Defendants respectfully request that the Court deny Plaintiff's
Application.


DATED:  February 14, 2022              BLANK ROME LLP



                                       By: _____
                                            Cheryl S. Chang
                                            Nicole M. Metral
                                       Attorneys for Defendants

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On February 14, 2022, I caused to be served the foregoing document(s):

**DEFENDANTS OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

on the interested parties in this action addressed and sent as follows:

☒  **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☐  **BY FEDEX:** I deposited such envelope(s) in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒  **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) listed above to be transmitted to the person(s) at the e-mail address(es) as indicated.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

☒  **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on February 14, 2022, at Los Angeles, California.

                          /s/

Electronically Filed by Superior Court of California, County of Orange, 02/14/2022 11:53:00 PM.
Case 30-2022-01244882-CU-OR-CJC - ROA # 14 - DAVID H. YAMASAKI, Clerk of the Court By ehilinguser, Deputy Clerk.
Page 100 of 277
ID #:110

BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
Alice M. Hodsden (SBN 340796)
Alice.Hodsden@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

Attorneys for Defendants
SERVIS ONE INC. dba BSI FINANCIAL SERVICES;
WILMINGTON SAVINGS FUND SOCIETY, FSB;
AND CHRISTIANA TRUST

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## ORANGE COUNTY, CENTRAL JUSTICE CENTER

| | |
|---|---|
| RILLA HUML, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SERVIS ONE INC. dba BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND SOCIETY, FSB; AND CHRISTIANA TRUST, et al.<br><br>Defendants. | Case No.: 30-2022-01244882-CU-OR-CJC<br>*[Assigned to Hon. Martha Gooding, Dept. 31]*<br><br>**DECLARATION OF NICOLE B. METRAL IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Date: February 15, 2022<br>Time: 8:45 a.m.<br>Dept: 31<br><br>Complaint filed: February 14, 2022<br>Trial Date: None Set |

DECLARATION OF NICOLE B. METRAL

**DECLARATION OF NICOLE B. METRAL**

I, Nicole B. Metral, do declare as follows:

1.    I am a member of the Bar of the State of California and an associate in the firm Blank Rome LLP, counsel for defendants Servis One, Inc. d/b/a BSI Financial Services ("BSI"); Wilmington Savings Fund Society, FSB; and Christiana Trust (collectively, the "Defendants") in the above-captioned action.  I have been one of the attorneys at Blank Rome LLP responsible for handling this action on behalf of Defendants.  I make this declaration of my personal knowledge and my review of the litigation file kept in the ordinary course of business, and could and would testify competently hereto.  I submit this declaration in support of Defendants' opposition to plaintiff Rilla Huml's ("Plaintiff") *ex parte* application for a temporary restraining order ("Application").

2.    On February 14, 2022, at 12:03 p.m., I received an email providing notice of the hearing on the Application set for February 15, 2022.  I was not contacted or notified of the Application before 10:00 a.m. on February 14, 2022 in violation of California Rules of Court, rule 3.1203.  A true and correct copy of the notice is attached hereto as Exhibit 1.

3.    I confirmed with Defendants that no one from their offices received notice of the hearing on the Application before 10:00 a.m. on February 14, 2022, or at any point in time thereafter.  Defendants also confirmed that they had not been notified by the trustee of any notice of the hearing on the Application.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 14th day of February, 2022, at Los Angeles, California.

1
DECLARATION OF NICOLE B. METRAL

1    DATED:  February 14, 2022          BLANK ROME LLP

2

3                                       By:

4

5

6

7                                       _____

8                                       Nicole B. Metral

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

Exhibit 1

**Hodsden, Alice M.**

**Subject:**        FW: HUML: 30-2022-01244882-CU-OR-CJC
**Attachments:**    Complaint -Huml v. Brougham REO .pdf; TRO App- Huml v Brougham REO et al PDF.pdf

-----Original Message-----
From: Rilla Christina <dreamlife7@att.net>
Sent: Monday, February 14, 2022 12:03 PM
To: Metral, Nicole <nicole.metral@blankrome.com>
Subject: Notice

Ms Metral,

Please be advised that Servis One, D/B/A BSI Financial, has been served a Complaint in Superior Court, case #01244882. Also an Ex Parte motion for a Temporary Restraining Order has been filed, to be heard February 15, 2022.  Please advise if you intend to represent BSI, and if so, if you oppose.

Thank you.

Rilla Huml
949-933-7075
dreamlife7@att.net

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On February 14, 2022, I caused to be served the foregoing document(s):

## DECLARATION OF NICOLE B. METRAL

on the interested parties in this action addressed and sent as follows:

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☐ **BY FEDEX:** I deposited such envelope(s) in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) listed above to be transmitted to the person(s) at the e-mail address(es) as indicated.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

☒ **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on February 14, 2022, at Los Angeles, California.

                                        /s/ AJ Cruickshank

1

Electronically Filed by Superior Court of California, County of Orange, 02/14/2022 11:54:00 PM.
30-2022-01244882-CU-OR-CJC - ROA # 16 - DAVID H. YAMASAKI, Clerk of the Court By ehiriguser, Deputy Clerk.
Case 8:22-cv-00983-CJC-KES   Document 1   Filed 05/06/22   Page 106 of 277   Page
ID #:116

BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
Alice M. Hodsden (SBN 340796)
Alice.Hodsden@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
Telephone:    424.239.3400
Facsimile:     424.239.3434

Attorneys for Defendants
SERVIS ONE INC. dba BSI FINANCIAL SERVICES;
WILMINGTON SAVINGS FUND SOCIETY, FSB;
AND CHRISTIANA TRUST

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## ORANGE COUNTY, CENTRAL JUSTICE CENTER

| | |
|---|---|
| RILLA HUML, an individual,<br><br>    Plaintiff,<br><br> vs.<br><br>SERVIS ONE INC. dba BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND SOCIETY, FSB; AND CHRISTIANA TRUST<br><br>    Defendants. | Case No.: 30-2022-01244882-CU-OR-CJC<br>*[Assigned to Hon. Martha Gooding, Dept. 31]*<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Date:  February 15, 2022<br>Time:  8:45 a.m.<br>Dept:  C20<br><br>Complaint filed: February 14, 2022<br>Trial Date:  None Set |

146035.01269/128201675V.1

**REQUEST FOR JUDICIAL NOTICE**

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Pursuant to California Code of Civil Procedure § 430.30(a), California Evidence Code §§ 452 and 453 and Rule 3.1306 of the California Rules of Court, Servis One, Inc. d/b/a BSI Financial Services ("BSI"); Wilmington Savings Fund Society, FSB; and Christiana Trust (collectively, the "Defendants") hereby requests the Court to take judicial notice of the following documents, which are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy:

1.      The April 8, 2019 Complaint in Case No. 30-2019-10162402-CU-OR-CJC. A true and correct copy of the April 8, 2019 Complaint is attached hereto as **Exhibit A**.

2.      The June 29, 2019 Minute Order regarding the Preliminary Injunction in Case No. Case No. 30-2019-10162402-CU-OR-CJC. A true and correct copy of the June 29, 2019 Minute Order is attached hereto as **Exhibit B**.

3.      The Notice of Removal in Case No. 8:20-cv-00489-DOC-KES in the U.S. District Court for the Central District of California. A true and correct copy of the Notice of Removal is attached hereto as **Exhibit C**.

4.      The Third Amended Complaint in Case No. Case No. 8:20-cv-00489-DOC-KES. A true and correct copy of the Third Amended Complaint is attached hereto as **Exhibit D**.

5.      The Final Judgment in Case No. Case No. 8:20-cv-00489-DOC-KES dismissing the Third Amended Complaint with prejudice. A true and correct copu of the Final Judgment is attached hereto as **Exhibit E**.

6.      This request for judicial notice ("Request") is made on the grounds that the Court may take judicial notice of information that cannot reasonably be controverted, even if it negates an express allegation of the pleading.  (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 468-69.)  Accordingly, judicially noticeable facts may supersede any inconsistent factual allegations contained in a complaint.  (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

1

**REQUEST FOR JUDICIAL NOTICE**

It is well settled that a court cancan take judicial notice of the contents of orders, findings of fact, conclusions of law, and judgments. (*Sosinsky v, Grant* (1992) 6 Cal.App.4th 1548, 1564, 8 Cal.Rptr.2d 552 [citing 11 cases for this proposition].)

DATED:  February 14, 2022          BLANK ROME LLP

By: _____
           Cheryl S. Chang
           Alice M. Hodsden
      Attorneys for Defendants

Exhibit A

1
2
3

Brian P. Ballo, Esq. #134892
**Law Office of Brian Ballo**
120 Vantis, Suite 300
Aliso Viejo, CA 92656
p: (949) 690-4100  f: (949) 315-3100
brian@ballo.law

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/08/2019** at 04:58:28 PM
Clerk of the Superior Court
By Mark Gutierrez,Deputy Clerk

4

Attorney for Plaintiff

5
6
7

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**ORANGE COUNTY, CENTRAL JUSTICE CENTER**

8

**RILLA HUML, an individual,**

9

**Plaintiff,**

10

**vs.**

11
12
13
14
15
16
17
18
19
20

**SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized do business, as CHRISTINA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity; ZIEVE, BRODNAX & STEELE, LLP, a California Limited Liability Partnership; WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB; WELLS FARGO BANK SOUTH CENTRAL, N.A., and, Does 1 through 10,**

21

**Defendants.**

22
23

Judge Charles Margines

**CASE NO.**

30-2019-01062402-CU-OR-CJC

**VERIFIED COMPLAINT FOR:**

1. **VIOLATION OF 12 CFR § 1026.39; LENDER FAILURE TO PROVIDE PROPER MORTGAGE TRANSFER DISCLOSURES**
2. **LENDER / SERVICER NEGLIGENCE**
3. **ACCOUNTING OF LOAN AMOUNTS**
4. **VIOLATION OF CIVIL CODE § 2923.5**
5. **VIOLATION OF CIVIL CODE § 2923.7**
6. **VIOLATION OF CIVIL CODE § 2924.11**
7. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
8. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUS. AND PROF. CODE, § 17200**

<u>**Scheduled foreclosure sale: April 15, 2019**</u>

24

<u>**THE PARTIES AND VENUE**</u>

25
26
27
28

Plaintiff Rilla Huml ("Plaintiff" or "Huml") respectfully alleges and submits this Complaint for Damages, Injunctive and Declaratory Relief, and Demand for Jury Trial as follows:

-1-

1. Plaintiff RILLA HUML ("Plaintiff" or "Huml") is an individual, who is, and at all times relevant to this action is the sole Borrower of the subject Loan, in the original principal amount of $200,000 (the "Loan"), secured by a Deed of Trust recorded against a her residential house and parcel of real property, commonly known as 25 Medici, Aliso Viejo, CA 92656 A.P.N. hereinafter, the "Property"), and a resident of the Property.

2. Plaintiff is informed and believes, and based thereon, allege that Defendant SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES ("BSI"), is now the "Servicer" of the Loan.

3. Plaintiff is informed and believes, and based thereon, allege that Defendant WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized do business, as CHRISTINA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity, is the "Lender" of the Loan, and the current Beneficiary under the Deed of Trust securing the Loan, and is ultimately entitled to receive Loan payments, being collected by BSI from Plaintiff.

4. Plaintiff is informed and believes, and based thereon, alleges that Defendant ZIEVE, BRODNAX & STEELE, LLP, a California Limited Liability Partnership, is the current "Trustee" under the Deed of Trust securing the Loan, and, the express agent of Defendants BSU and the Lender in processing a foreclosure against the Property.

5. Plaintiff is informed and believes, and based thereon, alleges that Defendant WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB, was the previous lender and owner of the Loan, during the period from approximately 2008, to February 23, 2017.

6. Plaintiff is informed and believes, and based thereon, alleges that Defendant

VERIFIED COMPLAINT (Huml v. BSI Financial Services, et. al.)

WELLS FARGO BANK SOUTH CENTRAL, N.A. was the owner of the Loan for a brief moment on February 23, 2017.

7.   The true names and capacities of Does 1-10, inclusive, whether individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff allege on information and belief that each fictitiously named Defendant is responsible in some manner for the events described herein and is liable to Plaintiff for the damages they have incurred. Plaintiff will amend this Complaint to show the true names and capacities of the Doe Defendants when they have been ascertained.

8. Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants. Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, brokers and/or representatives while they were acting within the actual or ostensible scope of their authority. The exact terms and conditions of the agency, representation, or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert appropriate allegations.

9. At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent or the assignee or the substitute of other Defendants, and all of Defendants acted within the scope of their agency if acting as an agent, the assignee or the substitute of another.  At all relevant times,

each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

10. At all relevant times, Defendants have engaged in conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continues to the present.

11. Venue is proper in this Court, as the subject Property is located within its' jurisdiction. The violations of law alleged in this Complaint occurred in Orange County, California, and elsewhere in Orange County, California.

## THE LOAN HISTORY / PRIOR LOAN MODIFICATION

12. In 1990, Plaintiff purchased the Property. In March 2004, Plaintiff refinanced the Property with a $200,000 Loan (the "Loan") from World Savings Bank, FSB secured by a Deed of Trust, recorded in priority position against the Property.

13. In August 2005, Plaintiff borrowed an additional $100,000 from World Savings Bank, FSB, in the form of a Home Equity Line of Credit, secured by a Deed of Trust, recorded in subordinate position against the Property.

14. In or about 2006, Wachovia Corporation acquired World Savings Bank, FSB.

15. In or about 2008, Wells Fargo Bank, N.A. acquired Wachovia Corporation.

16. On or about _____, Plaintiff obtained a Loan Modification from

-4-

Wells Fargo Bank, N.A., which restructured the original variable interest rate loan from World Savings Bank, FSB, into a fixed interest rate loan. The Loan Modification Agreement is attached hereto as **Exhibit "A"**, and incorporated herein by this reference.

17. On February 23, 2017, - *when the problems started* – Wells Fargo Bank, N.A., sold and transferred the Loan to Wells Fargo Bank South Central, N.A. <u>See</u> the Corporate Assignment of Deed of Trust attached hereto as **Exhibit "B"**, which is incorporated herein by this reference.

18. Also, <u>that same day on February 23, 2017</u>, Wells Fargo Bank South Central, N.A. sold and transferred the Loan to Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, the current Lender. <u>See</u> the Corporate Assignment of Deed of Trust attached hereto as **Exhibit "C"**, which is incorporated herein by this reference.

**<u>PLAINTIFF'S EFFORTS TO RECITIFY THE SERVICER AND LENDER ERRORS</u>**

19. As alleged in the First Cause of Action, below, neither Wells Fargo Bank, N.A., nor Wells Fargo Bank South Central, N.A, gave Plaintiff proper notice that the Loan had been sold, Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, an unknown entity. When BSI identified itself to Plaintiff as the new Servicer, Plaintiff believed that Wells Fargo Bank, N.A. was still the Lender.

20. In about July 2017, Plaintiff first noticed errors on the monthly mortgage statement she received from Defendant BSI. In particular, despite having made timely payments on the Loan when it was owned by Wells Fargo Bank, N.A., the Loan balance

had increased to over $209,000.

21.   Throughout 2017 and 2018, Plaintiff attempted to communicate with representatives at BSI to obtain clarification regarding the accurate amount owed on the Loan, however, (a) as alleged in Fourth Cause of Action, BSI did not properly assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, and (b) as alleged in Fifth Cause of Action, BSI did not assign a single point of contact, therefore, Plaintiff was forced to repeat her requests for a Loan reconciliation.

22.   In November 2018, Plaintiff contacted BSI regarding the possibility of submitting an Application for a Loan Modification.   A BSI representative told her that she needed to make a payment of $12,000 – before BSI would consider her Application for a Loan Modification.   Plaintiff questioned the requirement of making such a pre-Application payment, particularly, in the amount of $12,000, when Plaintiff believed that there were errors causing the outstanding Loan balance to be improperly high.

23.   In December 2018, Plaintiff submitted an Application for a Loan Modification without making any prior payment.

24.   On January 17, 2019, Plaintiff sent a letter to BSI entitled "Notice of Error, Request for Debt Validation, Qualified Written Request for Information" stating that BSI should not proceed with a foreclosure until the Loan inaccuracies were corrected.   A true and correct copy of Plaintiff's January 17, 2019, letter, is attached hereto as **Exhibit "D"**, and incorporated herein by this reference.

25. On January 29, 2019, BSI wrote Plaintiff informing her that her Application for a Loan Modification was denied for the nonsensical reason that "*Your Loan to Value ratio of 33.76% exceeds acceptable limits. Your loan with remain denied due to Loan to Value.*" See

BSI's January 29, 2019, letter, attached hereto as **Exhibit "E"**, which is incorporated herein by this reference.

26.   On March 26, 2019, Plaintiff sent BSI a <u>Second Notice of Error, Request for Debt Validation, Qualified Written Request for Information</u> describing what she believed were Lender and Servicer errors, and demanding that the foreclosure process not proceed until the financial inaccuracies were fixed.  A true and correct copy of Plaintiff's March 26, 2019, letter, is attached hereto as **Exhibit "F"**, and incorporated herein by this reference.

27. Also, on March 26, 2019, Plaintiff sent Steven Coleman, a BSI representative, a letter, further detailing what she believed were Lender and Servicer errors, and demanding that the foreclosure process not proceed until the financial inaccuracies were fixed. A true and correct copy of Plaintiff's March 26, 2019, letter, is attached hereto as **Exhibit "G"**, and incorporated herein by this reference.

**<u>FORECLOSURE STATUS</u>**

28.   On October 26, 2017, BSI directed the Trustee to record a "<u>Notice of Default</u>" with the Orange County Recorder's Office. A true and correct copy of the Notice of Default is attached hereto as **Exhibit "H"**, and incorporated herein by this reference.

29.   On January 3, 2019, *while Plaintiff's Application for a Loan Modification was pending,* BSI directed the Trustee to record a "Notice of Trustee's Sale", which scheduled a foreclosure sale for February 4, 2019.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "I"**, and incorporated herein by this reference.

30.   On March 12, 2019, BSI directed the Trustee to record a "<u>Notice of Trustee's Sale</u>", which <u>scheduled a foreclosure sale for **April 15, 2019**</u>.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "J"**, and incorporated herein by this

reference.

## A T.R.O. ENJOINING THE FORECLOSURE SALE, WILL ALLOW TIME FOR LOAN RECONCILIATION AND REINSTATEMENT

31. Based on the likelihood of Plaintiff prevailing on the merits of her causes of action set forth in this Complaint, as well as the irreparable harm that would result to Plaintiff by losing her home, this Court should enjoin the pending foreclosure process. Once a TRO is issued, counsel for Plaintiff will have the fair opportunity to communicate with BSI, and, hopefully, complete a Loan reconciliation, followed by Plaintiff's payment of a proper reinstatement amount. Then, this action will likely be dismissed.

## FIRST CAUSE OF ACTION
### VIOLATION OF 12 CFR § 1026.39; LENDER FAILURE TO PROVIDE PROPER MORTGAGE TRANSFER DISCLOSURES
(Against Wells Fargo Bank, N.A., and Wells Fargo Bank South Central, N.A.)

32. Plaintiff realleges and incorporates by reference the above paragraphs as set forth fully herein.

33. 12 CFR § 1026.39, governing mortgage transfer disclosures, provides that:

*"(b) Disclosure required. Except as provided in paragraph (c) of this section, each covered person [i.e. a Loan owner] is subject to the requirements of this section and shall mail or deliver the disclosures required by this section to the consumer on or before the 30th calendar day following the date of transfer.*
*(1) Form of disclosures. The disclosures required by this section shall be provided clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures required by this section may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E-Sign Act) (15 U.S.C. 7001et seq.).*
*(2) The date of transfer. For purposes of this section, the date of transfer to the covered person may, at the covered person's option, be either the date of acquisition recognized in the books and records of the acquiring party, or the date of transfer recognized in the books and records of the transferring party.*
*(3) Multiple consumers. If more than one consumer is liable on the obligation, a covered person may mail or deliver the disclosures to anyconsumer who is primarily liable.*
*(4) Multiple transfers. If a mortgage loan is acquired by a covered person and*

-8-

*subsequently sold, assigned, or otherwise transferred to another covered person, a single disclosure may be provided on behalf of both covered persons if the disclosure satisfies the timing and content requirements applicable to each covered person.*

*(5) Multiple covered persons. If an acquisition involves multiple covered persons who jointly acquire the loan, a single disclosure must be provided on behalf of all covered persons.*

\*\*\*

*(d) Content of required disclosures. The disclosures required by this section shall identify the mortgage loan that was sold, assigned or otherwise transferred, and state the following, except that the information required by paragraph (d)(5) of this section shall be stated only for a mortgage loan that is a closed-end consumer credit transaction secured by a dwelling or real property other than a reverse mortgage transaction subject to § 1026.33 of this part:*

*(1) The name, address, and telephone number of the covered person. (i) If a single disclosure is provided on behalf of more than one covered person, the information required by this paragraph shall be provided for each of them unless paragraph (d)(1)(ii) of this section applies.*

*(ii) If a single disclosure is provided on behalf of more than one covered person and one of them has been authorized in accordance with paragraph (d)(3) of this section to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan, the information required by paragraph (d)(1) of this section may be provided only for that covered person.*

*(2) The date of transfer.*

*(3) The name, address and telephone number of an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. However, no information is required to be provided under this paragraph if the consumer can use the information provided under paragraph (d)(1) of this section for these purposes.*

*(4) Where transfer of ownership of the debt to the covered person is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided."*

34.   Neither Wells Fargo Bank, N.A., nor Wells Fargo Bank South Central, N.A, gave Plaintiff the notice required by 12 CFR § 1026.39, that the Loan had been sold, Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, an unknown entity.  When BSI identified itself to Plaintiff as the new Servicer, Plaintiff believed that Wells Fargo Bank, N.A. was still the Lender.

35.   As a direct and proximate result of Wells Fargo Bank, N.A.'s, and Wells Fargo

Bank South Central, N.A.'s failure to provide the required notice, Plaintiff is entitled to statutory damages as provided under Regulation Z.

### SECOND CAUSE OF ACTION
### LENDER / SERVICER NEGLIGENCE
### (Against BSI and Lender)

36. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

37. In the process of transferring and purchasing the Loan from Wells Fargo Bank, N.A.'s, and Wells Fargo Bank South Central, N.A. to Lender and BSI, for servicing, Lender and BSI had duties of reasonable care to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance.

38. BSI and Lender breached these duties by: (a) failing to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance, (b) by sending monthly mortgage statements to Plaintiff that were incorrect, and requesting that Plaintiff pay amounts that were not due and owing, and (c) by not properly calculating Plaintiff's income and expense figures when considering her for a Loan Modification.

39. According to the Court of Appeals in *Alvarez v. BAC Home Loan Servicing, L.P.* (2014), the six factors set forth *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650-651, should be evaluated when determining if a loan servicer has breached a duty of care to a borrower:

(a) **the extent to which the party intended the transaction to affect the Plaintiff** – here, the review and decision on Plaintiff's Application will impact whether or not she can keep her home;

(b) **the foreseeability of harm to Plaintiff** – here, the potential harm to Plaintiff from mishandling her Application processing was readily foreseeable: the potential loss of an opportunity to keep her home, notwithstanding there was no guarantee that modification would be granted;

(c)  **the degree of certainty that Plaintiff suffered injury** – here, injury to Plaintiff is certain, in that if Defendants do not correctly determine the accurate amounts due on the Loan, then, they cannot properly evaluate her Application, and she will lose the opportunity of obtaining a loan modification and her home will be sold;

(d)  **the closeness of connection between defendant's conduct and injury suffered** – here, there is a close connection, because as set forth at length in Plaintiff's Application, she is eligible for, and qualifies for, a Modification; however, Defendants' focus on conducting the sale, is preventing them from properly reviewing the Application; and,

(e)  **the moral blame attached to defendant's conduct** – here, Plaintiff's ability to protect her property interests through the loan modification process is completely subject to dealing with BSI, which as alleged in this Complaint, has her very concerned!  BSI's superior position, coupled with BSI's negligence, all point to assigning significant moral blame. BSI's actions have resulted in a Notice of Trustee's Sale being recorded, and have allowed the foreclosure process to take precedence over BSI properly focusing on making a decision on Plaintiff's well-qualified Application.[1]

(f)  **the policy of preventing future harm** – here, this is evidenced by the California legislature passing the Homeowner's Bill of Rights, which is designed to establish fair procedures by which lenders and servicers must review Applications, in an attempt to afford borrowers the opportunity to keep their homes.

---

[1]  "A borrowers' 'ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." [citing *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 900]….."Traditional mortgage lending involved a bank evaluating a borrower and her security, and issuing a loan with terms reflecting the perceived risk that the borrower would default. The same bank would then (i) retain the loan, making its profit on the interest the borrower paid; and (ii) service the loan, meaning that it would be in contact with the borrower directly, collecting the borrower's payments and negotiating any changes in loan terms….. These tasks have been dispersed among different actors in the modern mortgage servicing context, however, changing the relationships between the borrower, the loan originator, the ultimate holder of the loan, and the servicer of the loan. <u>First, borrowers are captive, with no choice of servicer, little information, and virtually no bargaining power. Servicing rights are bought and sold without input or approval by the borrower. Borrowers cannot pick their servicers or fire them for poor performance. The power to hire and fire is an important constraint on opportunism and shoddy work in most business relationships. But in the absence of this constraint, servicers may actually have positive incentives to misinform and under-inform borrowers. Providing limited and low-quality information not only allows servicers to save money on customer service, but increases the chances they will be able to collect late fees and other penalties from confused borrowers."</u> *Alvarez v. BAC Home Loan Servicing, L.P.* (2014) 228 Cal. App. 4th 941, 949.

40.  As a direct and proximate result of BSI and Lender negligence, Plaintiff has been damaged in that she has been denied a fair review of her Application for a Loan Modification; Plaintiff has remained in the foreclosure process, which is costing her excessive interest rate charges, late fees, penalties and other foreclosure costs; and, Plaintiff is now involved in this litigation which is causing her to incur certain attorneys' fees and costs, all to Plaintiff's damage and injury.

41. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### THIRD CAUSE OF ACTION
### ACCOUNTING OF LOAN AMOUNTS
### (Against BSI and Lender)

42.  Plaintiff realleges and incorporates by reference the above paragraphs as set forth fully herein.

43.  A special lender-borrower relationship exists between Lender and Plaintiff.  A special servicer-borrower relationship exists between BSI and Plaintiff.

44.  The balance due on the Loan from Plaintiff to Lender can only be ascertained by an accounting.

45. Accordingly, Plaintiff requests that the Court order Defendants BSI and Lender to provide a full accounting of all amounts due on the Loan from Plaintiff to Lender.

### FOURTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE, SECTION 2923.5
### (Against BSI and Lender)

46.  Plaintiff realleges and incorporates by reference the above paragraphs as set forth fully herein.

-12-

47.  Civil Code, Section 2923.5, provides that:

*"(a)(1)  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:*

*(A)  Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).*

*(B)  The mortgage servicer complies with subdivision (a) of Section 2924.11 , if the borrower has provided a complete application as defined in subdivision (f) of Section 2924.11.*

*(2)  A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.   During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.   The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.   In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.   Any meeting may occur telephonically.*

*(b)  A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5."*

48.  Here, while the Notice of Default contains a boilerplate statement that BSI contacted the borrower, and purportedly assessed her financial condition, this is not true. In fact, BSI demanded a payment of $12,000 – before it would even consider Plaintiff for a Loan Modification.

49.  As a direct and proximate result of Defendants' statutory violations, Plaintiff has suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE, SECTION 2923.7
### (Against BSI and Lender)

-13-

VERIFIED COMPLAINT (Huml v. BSI Financial Services, et. al.)

50.   Plaintiff realleges and incorporates by reference the above paragraphs as set forth fully herein.

51. Civil Code Section 2923.7, contained in the Homeowner's Bill of Rights, provides that:

*(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.*
*(b) The single point of contact shall be responsible for doing all of the following:*
*(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.*
*(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.*
*(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.*
*(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.*
*(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.*
*(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.*
*(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.*
*(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.*

52.   Here, Plaintiff spoke with Jamie Taylor a BSI representative, however, she did not confirm herself as the official Single Point of Contact at BSI. Indeed, Ms. Taylor rudely hung-up on Plaintiff.  The other BSI representatives with whom Plaintiff spoke, did not seem knowledgeable about the status of Plaintiff's Application. None of these representatives said that they were working as a team on Plaintiff's Application, and their

-14-

inconsistent statements and actions demonstrated that they were not working as a coordinated team. These facts establish a violation of Section 2923.7(e).

53.   As a direct and proximate result of Defendants' statutory violation, Plaintiff have suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## SIXTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE, SECTION 2924.11
#### (Against BSI, Lender and Trustee)

54.   Plaintiff realleges and incorporates by reference the above paragraphs as set forth fully herein.

55.   Civil Code, Section 2924.11, provides in pertinent part that:

*(a)  If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgage, beneficiary, or authorized agent <u>shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.</u>*

56.   Here, while Plaintiff's December 2018, Application for Loan Modification was pending, on January 3, 2019, BSI directed the Trustee to record a Notice of Trustee's Sale. After BSI denied the Application on January 29, 2019, BSI re-recorded a second Notice of Trustee's Sale on March 12, 2019, setting the April 15, 2019, foreclosure sale date.

57.   Civil Code, Section 2924.11, also provides in pertinent part that:

*(b)  Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower <u>identifying with specificity the reasons for the denial</u> and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer.*

58.   Here, BSI's January 29, 2019, letter, denying Plaintiff's Application, makes

absolutely no sense! If the Loan is only one-third of the Property value, then, this should be a good reason to grant a loan modification.

59. As a direct and proximate result of Defendants' statutory violation, Plaintiff have suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

## SEVENTH CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### (Against BSI and Lender)

60. Plaintiff reallege and incorporate by reference each and every allegation above as though fully set forth herein.

61. When Plaintiff followed-up with BSI regarding her January 17, 2019, and March 26, 2019, letters pointing out the errors in the Loan balance, a BSI representative told her "*We will review your letters carefully, and a specialist is performing a reconciliation. If there are errors, then, it should be no problem in postponing the foreclosure sale.*"

62. Given the borrower-servicer and borrower-lender relationship which existed between Plaintiff and Defendants, the parties had duties to act in good faith and deal fairly with each other in performing their respective duties, such that the parties could reasonably attain the mutual benefits of their bargain.

63. Unfortunately, as detailed above, Defendants have acted in bad faith, in that despite being in receipt of Plaintiff's letter, and promising to perform a Loan reconciliation, Defendants are continuing to take steps towards a foreclosure sale scheduled for April 15, 2019.

64. Plaintiff has performed each and every obligation required to be performed by her under the oral agreement, except as excused by Defendants.

65. As a direct and proximate result of Defendants' breach of the implied covenant or good faith and fair dealing, Plaintiff has been damaged in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### EIGHTH CAUSE OF ACTION
### UNFAIR COMPETITION UNDER BUS. AND PROF. CODE, SEC. 17200 AND 17500 ET SEQ.
### (Against BSI and Lender)

66. Plaintiff realleges and incorporate by reference each and every allegation above, as though set forth fully herein.

67. California Business and Professions Code, Section 17200, provides that:

*"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."*

68. California Business and Professions Code, Section 17500, provides that:

*"It is unlawful for any person, firm, corporation or association, or any employee thereof <u>with intent directly or indirectly</u> to dispose of real or personal property or <u>to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto,</u> to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, <u>which is untrue or misleading,</u> and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or <u>disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.</u> Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."*

69. As alleged above, Defendants BSI and Lender engaged in "unfair" acts, and

an incompetent course of action, involving: (a) failing to designate a Single Point of Contact who was knowledgeable about the status of Plaintiff's Application, (b) failing to promptly postpone the foreclosure sale date upon confirming that Plaintiff's Application was complete, in compliance with the Homeowner's Bill of Rights, irrespective of when BSI would make a decision to approve or deny Plaintiff's Application, and (c) failing to properly process Plaintiff's Application under legitimate Loan Modification Guidelines.

70.   Under the three-pronged "section 5 test"[2] defining an "unfair" act, Plaintiff alleges:

(a)   **a substantial consumer injury** – here, despite Plaintiff's well-qualified Application, and the identified Loan errors, Plaintiff is facing an April 15, 2019, foreclosure sale;

(b) **that the injury outweighs any countervailing benefits to consumers or competition –** here, BSI's practices and procedures create no benefits to other consumers or free competition, which outweigh the harm being caused to Plaintiff; and

(c) **that the injury could not reasonably have been avoided** – here, Plaintiff is essentially forced to dealing with BSI.

71.   BSI has engaged in "unfair" business practices by (a) offending the public policies of a fair review of a borrower's complete Application, without the imminent pressure of a foreclosure sale, as established by the Homeowner's Bill of Rights, and by (b) engaging in unethical, oppressive, and unscrupulous conduct that is substantially injurious to Plaintiff and other consumers. These factual allegations constitute a sufficient allegation of an "unfair" business practice under an alternative test applied by California courts. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.* (1999) 72 Cal. App. 4th 861.

---

[2]  This "Section 5" test is derived from the definition of "unfair" in Section 5 of the Federal Trade Commission Act. See 15 U.S.C. § 45, subd.(n). *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

72. Defendant BSI's unfair acts have resulted in substantial damages and injuries to Plaintiff in that she has not received an affordable loan modification;s he has wasted time in attempting to process his Loan Modification Application; she has remained in the foreclosure process, which is costing her excessive interest rate charges, late fees, penalties and other foreclosure costs; and, she is now involved in this litigation, which is causing her to incur attorneys' fees and costs in order to protect her Property, all resulting in monetary damages.

73. The damages and injuries suffered by Plaintiff outweigh any countervailing benefits to other consumers or free competition resulting from BSI's conduct.  Plaintiff has been required to comply with the procedures dictated by Wells Fargo for processing an Application for a Loan Modification, therefore, Plaintiff injuries could not reasonably have been avoided.

74. By their unfair actions, Defendants have engaged in unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, and, as a result, Plaintiff has suffered and will continue to suffer damages.

75. As a direct and proximate result of Defendants' unfair, willful and intentional actions, Plaintiff have suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## **PRAYER FOR RELIEF**

**WHEREFORE,** in addition to the damages and relief alleged above in each cause of action, Plaintiff prays for the entry of Judgment against Defendants:

## ON ALL CAUSES OF ACTION

1.  Pursuant to Code Civ. Proc., Section 527(c), Plaintiff requests that this court issue a Temporary Restraining Order following *ex parte* notice in order to preserve the *status quo* that prevents Defendants from proceeding with any foreclosure sale, and protecting Plaintiff from suffering irreparable injury pending a Preliminary Injunction.

2. In light of Defendants' statutory violations, negligence and unfair competition, actual controversies now exist concerning the interpretation and effectiveness of the Notice of Default, the Notice of Trustee's Sale, and the entire Trustee's foreclosure sale process. Therefore, Plaintiff seeks a judgment declaring that Defendants have violated Plaintiff's rights, and that Defendants are not entitled, to foreclose upon Plaintiff' Property, whereas Defendants dispute this.

3.  For recovery of the costs of suit; reimbursement of attorneys' fees incurred, interest on all damages at the maximum legal rate; and such other and further relief as the Court may deem just and proper.

**Law Office of Brian Ballo**

Dated: April 8, 2019

Brian P. Ballo, Esq.
Attorney for Plaintiff
Rilla Huml

-20-
VERIFIED COMPLAINT (Huml v. BSI Financial Services, et. al.)

## VERIFICATION

I, Rilla Huml, an individual, am a Plaintiff in the above-entitled action.  I have read the foregoing Verified Complaint against Servis One, et. al., and I know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

This Verification was executed at Aliso Viejo, California on April 8, 2019.

Rilla Huml

-21-

**EXHIBIT "A"**

Mail Workflow

FEB 1 0 2014

# HOME AFFORDABLE MODIFICATION AGREEMENT

THIS LOAN IS PAYABLE IN FULL AT MATURITY  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE  LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER

Borrower ("I")¹:                    **RILLA HUML**

Lender ("Lender"):              **Wells Fargo Home Mortgage,**
                                         **a division of Wells Fargo Bank, N.A.**

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **03/24/2004**
Loan Number:                              **0022061402**
Property Address ("Property")·        **25 MEDICI**
                                                   **ALISO VIEJO, CA 92656**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents"  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied

1      **My Representations**  I certify, represent to Lender, covenant and agree·

   A   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future,

   B   I live in the property as my principal residence, and the Property has not been condemned, or

      If I was displaced, but the property qualifies as "owner occupied" then I certify that (i) I lived in the Property as a principal residence immediately prior to my displacement, (ii) I intend to re-occupy the Property as a principal residence in the future, (iii) I do not own any single-family real estate other than the Property, and (iv) the Property has not been condemned, or

      If the Property is a rental property that does not qualify as "owner-occupied" then this representation applies  The certification I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned,

   C   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage,

   D   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program")),

Page 1 of 6

Loan Number 0022061402

    E  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct,

    F  If Lender requires me to obtain credit counseling in connection with the Program, I will do so, and

    G.  I have made or will make all payments required under a trial period plan

    H  If I received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, then this representation applies  I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents     Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement

2    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that

    A  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents, and

    B  I understand that the Loan Documents will not be modified unless and until (i) I receive from the lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

    C.  If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure

3    **The Modification** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived  I understand that if I have failed to make any payments as a precondition to this modification under trial period plan, this modification will not take effect  The first modified payment will be due on 11/01/2013

    A  The new Maturity Date will be: 10/01/2053

    B  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan, less amounts forgiven or waived for NSF fees and outstanding, uncapitalized interest. The new principal balance of my Note will be $216,301 34 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement  I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement

    C  Interest at the rate of 4 125% will begin to accrue on the Interest Bearing Principal Balance as of 10/01/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 11/01/2013  My payment schedule for the modified Loan is as follows

Loan Number 0022061402

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4 125% | 10/01/2013 | $920 89 | $336 76 May adjust periodically | $1,257 65 May adjust periodically | 11/01/2013 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly

The above terms in this Section 3 C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance

D   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement

E   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements**   I agree to the following

A   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing

B   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or workout plan that I previously entered into with Lender

C   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan

D   **Funds for Escrow Items.**   I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under the Loan Documents, (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents, and (e) any community association dues, fees, and assessments that Lender requires to be escrowed These items are called "Escrow Items " I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event

Page 3 of 6

Loan Number 0022061402

of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds Lender and I can agree in writing, however, that interest shall be paid on the Funds Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed

F That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect, nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents, and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents

G That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer If Lender exercises this option, Lender shall

Loan Number 0022061402

give me notice of acceleration   The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage   If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me

H   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St  Germain Act, 12 U S C  Section 1701j-3   A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property

I   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void

J   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void

K   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement: or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program

L.  Mortgage Electronic Registration Systems, Inc  ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, (888) 679-MERS   In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan

M  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Modification Agreement by Lender to (i) the U S  Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan, (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program, and (v) any HUD certified housing counselor

N   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary  If the original promissory Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note  All documents the Lender requests

Page 5 of 6

Loan Number 0022061402

- of me under this Section 4 N shall be referred to as "Documents " I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement

- O That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance

- P If your mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled You need to complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting

- Q If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit This means that I cannot obtain additional advances and must make payments according to this Agreement (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit and if so, I confirm and acknowledge that no additional advances may be obtained )

In Witness Whereof, the Lender and I have executed this Agreement

Wells Fargo Bank, N A
Lender

_____ (Seal)
RILLA HUML          Date

By. _____

**Bao Kee Yang**
Vice President Loan Documentation

2·27·14
Date

# THIS SPACE LEFT BLANK INTENTIONALLY

EXHIBIT "B"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

| | |
|---|---|
| | 9.00 |

* $ R 0 0 0 9 0 8 2 3 1 1 $ *

**2017000076245 8:51 am 02/23/17**

65 401 A32 F13   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
"HUML"

PREPARED BY: WELLS FARGO BANK, N.A.

# RECORD 1ST

For Value Received, WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to WELLS FARGO BANK SOUTH CENTRAL, N.A. at 2005 TAYLOR ST, HOUSTON, TX  77077 all its interest under that certain Deed of Trust dated 03/24/2004 , in the amount of $200,000.00, executed by RILLA HUML, AN UNMARRIED WOMAN to WORLD SAVINGS BANK, FSB and Recorded:  03/29/2004  as Instrument No.: 2004000254970 in the County of Orange, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB
On _2-21-17_

_____,
Kristoffer Michael Pumarlo
Vice President Loan Documentation

STATE OF _Minnesota_
COUNTY OF _Dakota_

On _2/21/2017_, before me, _____Jennifer Rae Anderson_____, a Notary Public in the State of _Minnesota_, personally appeared _____Kristoffer Michael Pumarlo_____, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jennifer Rae Anderson
Notary Expires: 1-31-2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

(This area for notarial seal)

*CMK*CMKWFEM*02/15/2017 06:54:03 AM* WFEM02WFEMA0000000000000001548195* CAORANG* CASTATE_TRUST_ASSIGN_ASSN **KP6WFEM*

EXHIBIT "C"



Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$R00009083123$*   9.00

**2017000076246 8:51 am 02/23/17**

65 401 A32 F13   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
"HUML"

PREPARED BY: WELLS FARGO BANK, N.A.

# RECORD 2nd

For Value Received, WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION hereby grants, assigns and transfers to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE BROUGHAM FUND I TRUST at 13266 BYRD STREET, #447, ODESSA, FL 33556 all its interest under that certain Deed of Trust dated 03/24/2004 , in the amount of $200,000.00, executed by RILLA HUML, AN UNMARRIED WOMAN to WORLD SAVINGS BANK, FSB and Recorded: 03/29/2004 as Instrument No.: 2004000254970 in the County of Orange, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION
On 2-21-17

_____
Kristoffer Pumarlo
Authorized Individual

STATE OF Minnesota
COUNTY OF Dakota

On 2/21/2017 , before me, Jennifer Rae Anderson , a Notary Public in the State of Minnesota , personally appeared Kristoffer Pumarlo , Authorized Individual, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jennifer Rae Anderson
Notary Expires: 1/31/2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

(This area for notarial seal)

*CMK*CMKWFEM*02/15/2017 06:54:00 AM* WFEM02WFEMA00000000000000001548368* CAORANG* CASTATE_TRUST_ASSIGN_ASSN **KP6WFEM*

**EXHIBIT "D"**

January 17, 2019

BSI Financial Services
Attn: Qualified Written Requests
P.O. Box 517
314 S. Franklin Street Titusville, PA 16354

Notice Re: Loan #0483678447
Rilla Huml
25 Medici
Aliso Viejo, CA 92656

## NOTICE OF ERROR, REQUEST FOR DEBT VALIDATION, QUALIFIED WRITTEN REQUEST FOR INFORMATION

Pursuant to FDCPA, Fair Debt Collection Practices Act  and FCRA, Fair Credit Reporting Act, and RESPA, the following claims apply:

. Failure to apply accepted payments to principal, interest, or escrow under the terms of the mortgage loan and applicable law.

. Failure to credit payments to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

. Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

. Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

Dear Sir or Madam:

BSI Financial, is the servicer of a mortgage loan at the above address. I dispute the
amount that you claim is owed according to the monthly billing statement and recorded
in a Notice of Sale. I request that you send information about the fees, costs, and
escrow accounting on my loan since you became the servicer in 2016. Please treat this
as a "Request for Information" and "Notice of Error" pursuant to the Real Estate
Settlement and Procedures Act (section 2605(e)).

Specifically I am requesting the following information:

1. Validation that BSI Financial has the servicing rights, assignment,
   original agreement that bears signature of debtor, and original promissory
   note with original creditor.

2. A payment history or schedule that can be easily understood
   listing the dates and amounts of all payments and transactions
   credited or debited to my account, including any escrow
   account and any suspense account, and showing how they
   have been applied or credited, or, if not applied, showing how
   they have been treated;

3. A breakdown of the amount of claimed arrears or
   delinquencies on my account, including an itemization of all
   fees and charges you claim are currently due;

4. An explanation of how the amount of post-petition payments,
   made directly to BSI Financial during bankruptcy, were
   calculated, and why the Monthly Billing Statement dated
   12/2018 reflects post-petition payments of 0, and an
   explanation of why this amount does not reflect $11,200
   in bankruptcy payments made directly to the court; An explanation
   of why the most recent statement reflects $14,000 of unpaid post-
   petition payments, and an explanation of why the amount
   recorded in the Notice of Sale dated January 2, 2019, has
   been increased by $14,000.

5. The exact sum and breakdown of disbursement of funds received
   from KeepYour Home California, Cal/HFA on behalf of homeowner
   Rilla Huml, and an explanation as to why a KYHC loan to Wells
   Fargo Mortgage in the amount of 31,000 reflects an equity cash-out
   to BSI Financial in the amount of 54,000, as a lien on title and in
   public records.

6. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to my account or have been advanced on my behalf since the date BSI Financial took over servicing.

7. The payment dates, purpose of payment, and recipient of all escrow items charged to my account since the date BSI Financial took over the servicing;

8. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last twenty-four months;

9. A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, that were sent to me within the last three years;

10. Any notes created by your personnel reflecting communications with me about my mortgage account;

BSI Financial has an obligation to address and correct the items listed in the Notice of Error, and does not have authority to proceeding with the foreclosure process while financial inaccuracies are pending resolution, which would in fact significantly alter the status of the loan.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement and Procedures Act (section 2605(e)).

Very truly yours,

Rilla Huml

EXHIBIT "E"



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

January 29, 2019

[Sent Via First Class Mail/FedEx/Fax/Etc.]

RILLA HUML
25 MEDICI
ALISO VIEJO, CA 92656

Re: Result Following Review of Loss Mitigation Application
Property Address - 25 MEDICI
ALISO VIEJO, CA 92656
Loan #: 1433678447

Dear RILLA HUML:

Thank you for contacting us about your mortgage. Our review of your financial and other information indicates that although you may have a hardship, you do not qualify for a loan modification. Please contact our Customer Service Department for reinstatement or payoff figures.

If you have questions about your mortgage payment, please contact us at 1-800-327-7861. If you have concerns about the evaluation of your mortgage for foreclosure alternatives, then please contact JAMIE TAYLOR at 1-866-581-4514 Ext. 154.

The following details the specific reason(s) for this:
- Your Loan to Value ratio of 33.67% exceeds acceptable limits. Your loan will remain denied due to Loan to Value.

The following foreclosure prevention alternatives may be available to you:
- Payoff
- Reinstatement
- Deed in Lieu (Subject to Clear Title)

**Right to Appeal**

You have the right to appeal our determination not to offer you the loan modification option(s) listed above. If you would like to appeal, you must contact us in writing at the address provided below, no later than **February 28, 2019**, and state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You may also specify the reasons for your appeal, and provide any supporting documentation. Your right to appeal expires **February 28, 2019.** Any appeal requests or documentation received after **February 28, 2019** may not be considered.

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final, and not subject to further appeal.

If you elect to appeal, you do not have to make the full mortgage payment amount until resolution of the appeal. If we determine on appeal that you are eligible for a loan modification option, we will send you an offer for that option. In that case, you may choose to make the full mortgage payment amount (including any delinquent amounts and late charges that have accrued during the appeal process) or accept the new loan modification offer by contacting us at 1-800-327-7861 or in writing at BSI Financial Services, 314 S. Franklin St. 2nd Floor, PO Box 517, Titusville PA 16354 no later than 14 calendar days from the date of the appeal decision.

If you wait to make the payment amount described above until after receiving our appeal decision, your loan will become more delinquent. Any unpaid interest, and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal, and will be added to the total amount due to bring your loan current.

Sincerely,

BSI Financial Services
Jamie Taylor
Loss Mitigation Specialist
NMLS # 38078; # 842052

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

**If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number**.

T07_T43-11282017_CA11222017

**Licensed as Servis One, Inc. dba BSI Financial Services**.

BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

EXHIBIT "F"

BSI Financial Services
Attn: Qualified Written Requests
314 S. Franklin Street
Titusville, PA 16354

Second Notice Re: Loan #0483678447

Rilla Huml
25 Medici
Aliso Viejo, CA 92656

March 26, 2019

SECOND NOTICE OF ERROR, REQUEST FOR DEBT VALIDATION, QUALIFIED WRITTEN
REQUEST FOR INFORMATION

Pursuant to FDCPA, Fair Debt Collection Practices Act and FCRA, Fair Credit Reporting Act,
and RESPA, the following claims apply:

. Failure to apply accepted payments to principal, interest, or escrow
  under the terms of the mortgage loan and applicable law.

. Failure to credit payments to a borrower's mortgage loan account
  as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

. Imposition of a fee or charge that the servicer lacks a reasonable
  basis to impose upon the borrower.

. Failure to provide an accurate payoff balance amount upon a
  borrower's request in violation of section 12 CFR 1026.36(c)(3).

. Failure to provide accurate information to a borrower regarding loss
  mitigation options and foreclosure, as required by § 1024.39.

. Moving for foreclosure judgment or order of sale, or conducting a
  foreclosure sale in violation of § 1024.41(g) or (j).

Dear Sir or Madam:

On January 17, 2019, notice was provided to BSI Financial, the servicer of a mortgage loan at
the above address, that there are significant errors in the balance transferred from Wells Fargo
in March of 2017, and subsequently numerous accounting errors between March 2017 and
March 2019.

As previously stated, I dispute the amount that you claim is owed according to the monthly billing statement and recorded in a Notice of Sale. I request that you pause any sale activity until the amount claimed due is properly investigated and either appropriately corrected or validated in full detail. Please treat this as a "Request for Information" and "Notice of Error" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)).

Specifically I am requesting the following information:

1. Validation that BSI Financial has the servicing rights, assignment, original agreement that bears signature of debtor, and original promissory note with original creditor.

2. The exact account balance transferred to BSI Financial on March 21, 2017, including a detailed summary of all amounts, including payments applied, outstanding balance, escrow, fees, and unapplied payments, and credits. and, if not applied, showing how they have been treated;

3. Previously requested with inadequate response: A detailed breakdown of the amount of claimed arrears or delinquencies on my account, including a full detailed itemization and explanation of all fees and charges you claim are currently due;

4. Previously requested with inadequate response: An explanation of how the amount of post-petition payments, made directly to BSI Financial during bankruptcy, were calculated, and why the Monthly Billing Statement dated 12/2018 reflects post-petition payments of 0, and an explanation of why this amount does not reflect $11,200 in bankruptcy payments made directly to the lender; An explanation of why the most recent statement reflects $14,000 of unpaid post-petition payments, and an explanation of why the amount recorded in the Notice of Sale dated January 2, 2019, has been increased by $16,000.

5. Previously requested and denied a response. This information is available from the prior servicer and is a critical factor in the transfer of the loan. It has an impact on the entire accounting and value of the loan: Second request for the exact sum and breakdown of disbursement of funds that the prior servicer Wells Fargo received from KeepYour Home California, Cal/HFA on behalf of homeowner Rilla Huml, and an explanation as to why a KYHC loan to Wells Fargo Mortgage in the amount of $31,000 reflects an equity cash-out to BSI Financial in the amount of $54,000, as a lien on title and in public records.

6. Previously requested and insufficient explanation was received. The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to my account or have been advanced on my behalf since the date BSI Financial took over servicing.

7. Second request for information that has not been provided: A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, that were sent to me within the last three years;

8. Second request for information which had not been provided: Any notes created by your personnel reflecting communications with me about my

mortgage account;

9. Explanation as to why BSI Financial has provided me a copy of a confidential loan document as a prior response, Heloc account #0030037147, that is not a loan that BSI is servicing, or has ever serviced, and is in violation of security.

10. It is imperative that I be assigned a new One Point of Contact to assist with communication relating to this matter, as the existing OPOC has failed to perform or cooperate, and has displayed unprofessionalism.

BSI Financial has an obligation to address and correct the items listed in the Notice of Error, and does not have authority to proceeding with the foreclosure process while financial inaccuracies are pending resolution, which would in fact significantly alter the status of the loan and invalidate the need for any foreclosure proceedings.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement and Procedures Act (section 2605(e)).

Very truly yours,

Rilla Huml

EXHIBIT "G"

Mr. Steven Coleman
BSI Financial Services

*March 26, 2019*

Dear Mr. Coleman,

I am reaching out to you in an effort to initiate a resolution of critical financial errors in the accounting of loan #1433678447. The loan was sold, and servicing was transferred from Wells Fargo to BSI Financial on 2/21/2017. I provided a Notice of Error to BSI Financial on January 18, 2019. I received a response to the Notice of Error recently, on March 15, 2019. A recent payoff statement identified some of the discrepancies in the accounting, and other calculations provided are vague and ambiguous, categorized simply as fees or unapplied funds. The answers I was seeking were not provided in the response to my Notice of Error.

I am not sure if the appropriate action is to initiate another new Notice of Error, or to designate an individual at BSI, that is qualified and cooperative with me, to investigate the specific discrepancies and correct any errors identified. I have been told that my one point of contact is remains Jamie Taylor. My request to Jamie for assistance regarding the financial discrepancies on March 19th was met with a disrespectful, uncooperative attitude. She told me to file a new NOE. She stated that if she thought my information was relevant, she would forward it to someone. The conversation ended with Jamie telling me she would note the file that I would be getting an attorney, and then she hung up on me. Due to the importance and urgency of the matter, It is imperative that I be assigned someone at a higher level that handles such matters with respect.

The modification request submitted by Coast Realty to Jamie Taylor was inappropriately handled and therefore must be considered void. Here are the violations:

> 1) Although they had all the records and initiated the modification request, Coast Realty was told to cease communication with BSI and directed all correspondence to me.
> 2) The review was completed within 2 business days, insufficient time-frame to provide to the lender and make an informed decision.
> 3) Jamie asked me to pay $12,000 to the lender for a modification prior to submission.
> 4) The appeal was denied the same day the appeal was received in the mail. I sent a copy to Jamie by email. The lender would not have had time to receive and sort the mail by the time the denial was sent.

In response to the NOE, I was provided a copy of the original loan documents for a loan that BSI does not service, and due to confidentiality should not have in its

possession, loan #0030037147 by World Savings. I believe this is a breach of confidentiality.

The account #1433678447 has an inadvertent outstanding balance on paper of approximately $16,400. There is a sale date scheduled for 4/15/2019. It is unlawful to attempt to sell a property and collect a sum of money that is inaccurate and excessive. It is unlawful to add fees and attorney fees for a sum of money that is inaccurately calculated and inadvertently billed. When all accounting errors have been identified and corrected, there would be NO OUTSTANDING DEBT to dispute, collect on, or threaten a sale for. This is not the first request to address and make these corrections. Here are the financial errors that have not been corrected:

The identified financial errors are as follows:

- Wells Fargo Payment, October 2016 actual 36,000 vs credited  $31,000  = $5,000 credit deficit
- Wells Fargo's transferred balance: actual $204,890 vs transferred $208,846  = $3,956 credit deficit
- Taxes are included in the total monthly payment, ($256) and are identified as being billed separately in addition to the monthly payment.
- Several payments paid directly to BSI during bankruptcy in 2018 in the amounts of $1,190, and $958., are listed as "Miscellaneous Receipt" instead of payment.
- There are unapplied funds in the amount of $3,540.
- There are charges for fees in the amount of of $3,900. A very small portion of that amount has accounted for in BSI's explanations.
- The calculations provided to me (a chart showing payments received) in response to the NOE, have inaccurate totals and inaccurate dates, and are listed as "Arrears Credits"., but are not reducing the balance.

The outstanding debt is noted in the reinstatement quote are: $ 16,400
Outstanding financial errors/credits estimation:                    $ 15,846

I am seeking an amicable resolution. Once the accounting is 100% accurate and all errors are corrected or satisfied, I intend to reinstate the loan and pay any legitimate outstanding balance I owe. The research may need to include applicable records from the prior servicer from October 2016 until the transfer on 2/21/17. It is imperative that the sale date of April 15, 2019 be postponed until a fair and amicable resolution for both parties can be achieved. Thank you for your prompt attention to this matter.

Sincerely,


Rilla Huml
Account # 1433678447
dreamlife7@att.net, 949-933-7075

EXHIBIT "H"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**18.00**

**2017000455334 10:35 am 10/26/17**

7 405 N15 F13   4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
Zieve, Brodnax & Steele, LLP

WHEN RECORDED MAIL TO:

**Zieve, Brodnax & Steele, LLP**
30 Corporate Park, Suite 450
Irvine, CA 92606

TS No.: 17-49168
APN: 934-50-279

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by

paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___**$6,928.12**___ as of ___10/25/2017___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. **17-49168**

However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST , NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR B ROUGHAM FUND I TRUST**
**c/o BSI FINANCIAL SERVICES**
**Phone: 814-827-3241**
**C/O Zieve, Brodnax & Steele, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: (714) 848-7920**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Zieve, Brodnax & Steele, LLP is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 3/24/2004, executed by RILLA HUML, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of WORLD SAVINGS BANK, FSB as Beneficiary, recorded 3/29/2004, as Instrument No. 2004000254970 of Official Records in the Office of the Recorder of  Orange County, California describing land therein as: **As more particularly described on said Deed of Trust.**

The subject obligation includes **NOTE(S) FOR THE ORIGINAL** sum of **$200,000.00.**  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

 **The monthly installment which became due on 6/1/2017, along with late charges, and all subsequent monthly installments.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. **17-49168**

**Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

**The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.**

Dated: 10/25/2017

Zieve, Brodnax & Steele, LLP, as Trustee

**Michael Busby, Trustee Sale Officer**

Declaration of Mortgage Servicer Pursuant to

Civil Code § 2923.55 (c)

Borrower(s):  RILLA HUML

Mortgage Servicer: BSI Financial Services

Property Address:  25 MEDICI ALISO VIEJO  CA 92656

T.S. No: 1433678447 /

The undersigned, as an authorized agent or employee of the mortgage servicer named below declares that:

1.  ☑ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2329.55 (b) (2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Thirty (30) days, or more, have passed since the initial contact was made.

2.  ☐ Despite the exercise of due diligence pursuant to California Civil Code §2923.55(f), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure".  Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3.  ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section §2920.5.

4.  ☐ The requirements of Cal. Civil Code  §2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate that borrower's default and the right to foreclose, including the borrower's loan status and loan information

10/23/17                                         BSI Financial Services
_____          _____
Date                                              Mortgage Servicer

                                                    _____
                                                    By:

EXHIBIT "I"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 87.00

* S R 0 0 1 0 5 6 3 9 6 6 $ *

**2019000002187** 2:18 pm 01/03/19

63 406 N34   2

0.00 0.00 0.00 0.03 3.00 0.00 0.000.0075.00 3.00

[RECORDING REQUESTED BY]
**Zieve, Brodnax & Steele, LLP**

[WHEN RECORDED MAIL TO:]
**Zieve, Brodnax & Steele, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**

---

T.S. No. 17-49168          APN: 934-50-279          [SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

# NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/24/2004.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **RILLA HUML, AN UNMARRIED WOMAN**
Duly Appointed Trustee: Zieve, Brodnax & Steele, LLP  Deed of Trust recorded 3/29/2004, as Instrument No. 2004000254970, of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**2/4/2019** at 3:00 PM
Place of Sale:       On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange, CA
Estimated amount of unpaid balance and other charges: **$221,748.59**

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of real property:

**25 MEDICI**
**ALISO VIEJO, CA 92656 AKA**
**25 MEDICI**
**LAGUNA HILLS, CA 92656**

Described as follows:
 As more fully described on said Deed of Trust.

A.P.N #.: **934-50-279**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 17-49168.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Dated:  **1/2/2019**          **Zieve, Brodnax & Steele, LLP, as Trustee**
                    **30 Corporate Park, Suite 450**
                    **Irvine, CA 92606**
                    **For Non-Automated Sale Information, call: (714) 848-7920**
                    **For Sale Information: (714) 848-9272   www.elitepostandpub.com**

                    **Andrew Buckelew, Trustee Sale Assistant**

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

EXHIBIT "J"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

87.00

*$ R 0 0 1 0 6 9 2 1 0 5 $ *

2019000076938 2:22 pm 03/12/19

93 Sec4 N34    2

0.00 0.00 0.00 0.03 3.00 0.00 0.000.0075.00 3.00

[RECORDING REQUESTED BY]
Zieve, Brodnax & Steele, LLP

[WHEN RECORDED MAIL TO:]
Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606

---

T.S. No. 17-49168                APN: 934-50-279        [SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

# NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/24/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **RILLA HUML, AN UNMARRIED WOMAN**
Duly Appointed Trustee: Zieve, Brodnax & Steele, LLP  Deed of Trust recorded 3/29/2004, as Instrument No. 2004000254970, of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**4/15/2019** at 3:00 PM
Place of Sale:       On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange, CA
Estimated amount of unpaid balance and other charges: **$225,940.74**

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of real property:

**25 MEDICI**
**ALISO VIEJO, CA 92656 AKA**
**25 MEDICI**
**LAGUNA HILLS, CA 92656**

Described as follows:
 As more fully described on said Deed of Trust.

A.P.N #.: **934-50-279**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 17-49168.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Dated:  **3/11/2019**        **Zieve, Brodnax & Steele, LLP, as Trustee**
                **30 Corporate Park, Suite 450**
                **Irvine, CA 92606**
                **For Non-Automated Sale Information, call: (714) 848-7920**
                **For Sale Information: (714) 848-9272   www.elitepostandpub.com**

                **Michael Busby, Trustee Sale Officer**

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

Exhibit B

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center Drive
Santa Ana, CA 92702

**SHORT TITLE:** Huml vs. SERVIS ONE, INC.

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER:<br>**30-2019-01062402-CU-OR-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Minute Order dated 06/21/19 has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practice and addressed as indicated below. This certification occurred at Santa Ana, California on 6/21/19. Following standard court practice the mailing will occur at Santa Ana, California on 6/21/19.

BLANK ROME
2029 CENTURY PARK EAST 6TH FL
LOS ANGELES, CA 90067

RILLA HUML
25 MEDICI
ALISO VIEJO, CA 92656

Clerk of the Court, by: _____, Deputy

---

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

**V3 1013a (June 2004)**                                    Code of Civ. Procedure , § CCP1013(a)

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 06/21/2019                 TIME: 02:53:00 PM           DEPT: C20

JUDICIAL OFFICER PRESIDING: Charles Margines
CLERK:  Julie Howard
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  Johanna Prado

CASE NO: **30-2019-01062402-CU-OR-CJC** CASE INIT.DATE: 04/08/2019
CASE TITLE: **Huml vs. SERVIS ONE, INC.**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Other Real Property

EVENT ID/DOCUMENT ID: 73072737
**EVENT TYPE**: Under Submission Ruling

**APPEARANCES**

There are no appearances by any party.

The Court, having taken the above-entitled matter under submission on 06/19/2019 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

The court's electronic file in this lawsuit has no record that Plaintiff has served the summons and complaint on any defendant. Proper service of the summons and complaint is required for the court to obtain jurisdiction over a defendant. (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1229; *Dill v. Berquist Const. Co., Inc.* (1994) 24 Cal.App.4th 1426, 1439.) While Defendant BSI has waived any potential defects in the service of summons by making a general appearance, this defect is fatal as to the other named defendants.

At the hearing, BSI directed the court to CCP §418.11, which states that "[a]n appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance … " BSI argued that it has not been served with the summons and complaint and, pursuant to this code section, it has not made a general appearance. Thus, BSI contended that this court does not have jurisdiction to issue the preliminary injunction.

It is true that pursuant to CCP §418.11, BSI's appearance at the original ex parte hearing was not a general appearance. However, BSI has never indicated it is challenging jurisdiction, such as making a special appearance or filing a CCP §418.10 motion to quash summons. More importantly, BSI has since filed an Opposition to the preliminary injunction application on the merits and has never raised any jurisdictional or service objections in its Opposition papers, which constitutes a general appearance:

CASE TITLE: Huml vs. SERVIS ONE, INC.                    CASE NO: **30-2019-01062402-CU-OR-CJC**

---

"Unlike a special appearance to challenge jurisdiction, a general appearance is the equivalent of personal service of summons for jurisdictional purposes, dispensing with any need to effect such service and curing defective service or other lack of notice. [Citations.] To determine whether petitioner has made a general appearance, we do not look to whether it characterizes its appearances as 'general' or 'special.' Instead, we must look to the 'character of the relief asked.' [Citations.] An appearance is general if the party contests the merits of the case or raises other than jurisdictional objections. [Citations.]" (*366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1193–1194; emphasis added.)

*366-386 Geary St., L.P. v. Superior Court, supra*, is directly on point. There, the Court of Appeal rejected appellant's contention that the trial court lacked jurisdiction to issue injunctive relief due to lack of service of summons, finding that because appellant had opposed the application via arguments going "beyond jurisdictional issues, to the substance and/or procedural aspects of real parties' claims … [p]etitioner has thus made a general appearance and waived any personal jurisdictional objections." (Id. at 1194.) Likewise, here, BSI opposed the preliminary injunction application on the merits, without raising any jurisdictional objections, and thus made a general appearance.

The court finds that BSI has made a general appearance in this case.

CCP §526(a) provides:

(a) An injunction may be granted in the following cases:
(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.
(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.
(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.
(4) When pecuniary compensation would not afford adequate relief.
(5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.
(6) Where the restraint is necessary to prevent a multiplicity of judicial proceedings.
(7) Where the obligation arises from a trust.

The party seeking the injunction is required to show all elements necessary to support the issuance of an injunction. (Rutter Group, *Civil Procedure Before Trial*, Chapter 9(II)-A, "Provisional Remedies," Section 9:632.1.) Generally, while the court has broad discretion in ruling on an application for preliminary injunction, such discretion must be exercised in consideration of a two-prong test: (1) whether plaintiff is likely to suffer greater injury from denial of the injunction than defendant is likely to suffer if it is granted; and (2) whether there is a reasonable probability that plaintiff will prevail on the merits. (*Id.* at Section 9:531.)

Real property is generally considered to be "unique" such that injury or loss cannot be compensated in damages. (Rutter Group, *Civil Procedure Before Trial*, Chapter 9(II)-A, "Provisional Remedies," Section 9:523.) Here, as the subject action involves real property, this prong is met.

---

CASE TITLE: Huml vs. SERVIS ONE, INC.                    CASE NO: **30-2019-01062402-CU-OR-CJC**

As to the second prong, Plaintiff has shown a probability of prevailing on the merits of her 4th C/A for violation of CC §2923.5, which states in relevant part:

(a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until both of the following:
(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).
(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

…

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. …

…

Here, Para. 48 of Plaintiff's verified complaint alleges:

48. Here, while the Notice of Default contains a boilerplate statement that BSI contacted the borrower, and purportedly assessed her financial condition, this is <u>not true</u>. In fact, BSI demanded a payment of $12,000 – before it would even consider Plaintiff for a Loan Modification. [Emphasis in original.]

Plaintiff's complaint is verified and thus constitutes evidence which may be considered in assessing whether she has shown a probability of prevailing on the merits. A verified complaint may be sufficient by itself to support an application for preliminary injunction, so long as it contains sufficient evidentiary facts. (Weil & Brown, Rutter Group, *Civil Procedure Before Trial*, Chapter 9(II)-A, Section 9:579, citing CCP 527(a) and *Bank of America Nat'l Trust & Sav. Ass'n v. Williams* (1948) 89 Cal.App.2d 21, 29.)

Responding Party BSI contends that Plaintiff fails to show a probability of prevailing as to this C/A, but its arguments fail. First, BSI argues that CC §2923.5 may be satisfied via the "due diligence" requirements of subdivision (e) of that section. While that is a true statement of the law, the complaint herein alleges

CASE TITLE: Huml vs. SERVIS ONE, INC.          CASE NO: **30-2019-01062402-CU-OR-CJC**

___

that the CC §2923.5 declaration attached to the Notice of Default attests to actual contact, not due diligence. (Complaint at Para. 48.) Further, the complaint includes a copy of the NOD and attached CC §2923.5 declaration, which in fact attests to actual contact, not due diligence. (Ex. H to verified complaint [*see purple flag*].) Thus, as the verified complaint alleges that defendants' CC §2923.5 declaration falsely attests to actual contact, which did not occur, Plaintiff need not address the "due diligence" alternatives of CC §2923.5(e).

Responding Party also argues that it in fact contacted Plaintiff to assess her financial situation and explore foreclosure alternatives. (Opp at 9:24-26, citing to Mallory Decl. in support of Opp at Para. 7.) However, Para. 7 of the Mallory Decl. avers that Plaintiff was contacted by a BSI representative on 1/10/18 to assess her financial situation and explore foreclosure alternatives. [Emphasis added.] However, the notice of default was recorded on 10/26/17. (Ex. H to verified complaint.) CC §2923.5(a) provides that a notice of default may not be recorded until 30 days after the initial contact by the lender/servicer. Thus, evidence that RP contacted Plaintiff on 1/10/18, after the NOD was already recorded, fails to show compliance with CC §2923.5.

If section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed. The available, existing remedy is … to postpone the sale until there has been compliance with section 2923.5. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 223.)

Thus, Plaintiff's verified complaint indicates that Defendants failed to comply with CC §2923.5, rendering the NOD defective. This defective NOD cannot support foreclosure. RP's remedy may be to comply with CC §2923.5 and then file a new NOD, beginning the foreclosure process anew.

While the court agrees with RP's other arguments in the Opp, that plaintiff cannot show a probability of prevailing on any of her other claims (either because they fail to state a valid C/A, or because RP's evidence shows that it provided Plaintiff with the accounting she seeks), Plaintiff need only show a probability of prevailing on one of her claims in order to be entitled to injunctive relief. "A single cause of action can sustain a preliminary injunction." (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 844.) Accordingly, as Plaintiff's evidence shows a probability of prevailing on the merits of her CC §2923.5 claim, the application is GRANTED.

If the injunction halting a foreclosure is granted, MP is required to post a bond in an amount sufficient to compensate defendants for any damages caused by the issuance of the injunction. CCP §529 does not require any minimum amount for such a bond; however, the bond must be sufficient to recompense the enjoined party for any damages incurred as a result of the injunction if the court later determines that the injunction was wrongfully issued. (*Abba Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 18-19.) To do so, the court must evaluate what type of damages the enjoined party may recover if the injunction is later found to be unjustified, including damages for lost profits, attorney fees, or misappropriation. (*Id.* at 20-22.)

Plaintiff's moving papers fail to address the bond requirement, while RP's Opp contends that if the application is granted, Plaintiff should be required to post a bond in the entire outstanding amount of the loan. While the court must order bond, RP fails to show that a bond for the entire loan balance is necessary to compensate RP for any damages it may incur as a result of the injunction. This is particularly true as Plaintiff is only entitled to an injunction postponing the foreclosure sale unless and until RP complies with CC §2923.5. (*Mabry, supra* at 223.) Moreover, as pointed out by the court during the hearing on the TRO, Plaintiff appears to have sufficient equity in her home to assure Defendants that

___

CASE TITLE: Huml vs. SERVIS ONE, INC.                    CASE NO: **30-2019-01062402-CU-OR-CJC**

---

the principal, back interest, and costs and fees associated with a foreclosure will be paid to them from the sale proceeds. Nonetheless, in light of the uncertainty as to when this case will be resolved, the court believes that a bond is appropriate.

The court conditions the preliminary injunction on Plaintiff's posting a bond in the amount of $50,000 within 10 days. Should the bond not be posted, Defendant BSI may appear ex parte – with notice to Plaintiff per Code – to seek an order dissolving the injunction and permitting a foreclosure sale to be held.

The application is denied as to the remaining Defendants. There is no evidence that any defendant other than BSI has been served with summons; thus, the court lacks jurisdiction over any other defendant at this time. (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1229; *Dill v. Berquist Const. Co., Inc.* (1994) 24 Cal.App.4th 1426, 1439.)

Court orders clerk to give notice.

---

Exhibit C

Case 8:22-cv-00378-DOC-KES   Document 1-2   Filed 03/10/22   Page 175 of 277   Page
ID #:185
Case 8:20-cv-00489   Document 1   Filed 03/10/20   Page 1 of 9   Page ID #:1

1  BLANK ROME LLP
2  Cheryl S. Chang (SBN 237098)
   Chang@BlankRome.com
3  Erika R. Schulz (SBN 313289)
4  ESchulz@BlankRome.com
   2029 Century Park East, 6th Floor
5  Los Angeles, CA 90067
   Telephone: 424.239.3400
6  Facsimile: 424.239.3434

7  Attorneys for Defendant
   SERVIS ONE, INC.

8

9          IN THE UNITED STATES DISTRICT COURT

10   CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

11

| 12 | RILLA HUML, an individual, | Case No: 5:20-cv-489 |
|----|-----------------------------|----------------------|
| 13 | Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT SERVIS ONE, INC. PURSUANT TO 28 U.S.C. § 1441** |
| 14 | v. | |
| 15 | SERVIS ONE, INC., a Delaware | **[Federal Question Jurisdiction]** |
| 16 | corporation, authorized to do business in | [Filed concurrently with Certification and Notice of Interested Parties and Civil Cover Sheet] |
| 17 | California, doing business as BSI FINANCIAL SERVICES; | |
| 18 | WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, | Complaint filed: April 8, 2019 |
| 19 | doing business, but not authorized to do | |
| 20 | business, as CHRISTINA TRUST, in California, as Trustee, for BROUGHAM | |
| 21 | FUND I TRUST, an unknown entity; | |
| 22 | ZIEVE, BRODNAX, & STEELE, LLP, a California Limited Liability | |
| 23 | Partnership; WELLS FARGO BANK, | |
| 24 | N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD | |
| 25 | SAVINGS BANK, FSB; WELLS | |
| 26 | FARGO BANK SOUTH CENTRAL, N.A.; and Does 1 through 10, | |
| 27 | | |
| 28 | Defendants. | |

146035.01269/122808900v.3

NOTICE OF REMOVAL

Case 8:22-cv-00378-DOC-KES   Document 1-2   Filed 03/10/22   Page 176 of 277   Page
Case 8:20-cv-00485   Document 1   Filed 03/10/20   Page 2 of 60   Page ID #:2   Page
ID #:186

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO THE**
**PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendant Servis One, Inc. dba BSI
Financial Services ("BSI"), by and through its undersigned counsel, hereby
removes this action by way of this Notice of Removal ("Notice") and related
papers, from the Superior Court of the State of California for the County of Orange,
which is the judicial district in which the action is pending, to the United States
District Court for the Central District of California, Southern Division, pursuant to
28 U.S.C. §§ 1332(a), 1441 and 1446.

## I.     THIS NOTICE OF REMOVAL IS TIMELY FILED

1.     On or about April 8, 2019, plaintiff Rilla Huml ("Plaintiff")
commenced this action by filing a complaint ("Complaint") in the Superior Court of
the State of California in and for the County of Orange ("State Court Action")
alleging several causes of action against, *inter alia,* BSI.  The State Court Action is
captioned *Rilla Huml v. Servis One, Inc., et al.*, Case No. 30-2019-01062402-CU-
OR-CJC.

2.     On September 5, 2019, Plaintiff filed her First Amended Complaint.
On November 7, 2019, BSI filed its Answer to Plaintiff's First Amended
Complaint.  On February 4, 2020. Plaintiff served by mail her Second Amended
Complaint, in which she for the first time alleged a claim for violation of 12 C.F.R.
§1026.39 against BSI.  True and correct copies of all filed documents received by
BSI in this case (including the Complaint, Plaintiff's *Ex Parte* Application for a
Temporary Restraining Order and related documents, BSI's Opposition to
Plaintiff's Application for a Preliminary Injunction and related documents,
Plaintiff's *Ex Parte* Application to Waive Posting of Bond and related documents,
Plaintiff's *Ex Parte* Application for Reconsideration of Order to Post Bond and
related documents, BSI's *Ex Parte* Application to Dissolve TRO and related

documents, Plaintiff's First Amended Complaint, Defendant Wells Fargo's Notice of Demurrer and Demurrer to the First Amended Complaint and related documents, BSI's Answer to the First Amended Complaint, Plaintiff's Second Amended Complaint, Plaintiff's Motions to Compel, and the Court's various minute orders) are attached hereto as **Exhibit A**.

3.     Pursuant to 28 U.S.C. § 1446(b)(3), defendants have thirty days to remove "after receipt…, through service or otherwise, of a copy of an amended pleading… from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3).

4.     All other defendants who have been served with summons have consented to this notice of removal.

5.     To date, BSI is unaware of whether Plaintiff has served any fictional "Doe" defendants with the Summons and Second Amended Complaint, and is otherwise unaware of any opposition to the removal from any unnamed defendants.

## II.     FEDERAL QUESTION JURISDICATION EXISTS

**A.**     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 in that it arises under the Constitution and laws of the United States, specifically, Regulation Z, 12 C.F.R. § 12 C.F.R. §1026.39, of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. These claims arise under the "laws . . . of the United States," and therefore the Court has original jurisdiction over them. *See* 28 U.S.C. § 1331; *see also Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1203 (S.D. Cal. 2009) (Court has jurisdiction over TILA claims).

**B.**     A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983). Plaintiff has alleged a violation of Reg Z by BSI for the first time in her Second Amended Complaint. Specifically, Plaintiff contends that

Case 8:22-cv-00378-DOC-KES   Document 1-2   Filed 03/10/22   Page 178 of 277   Page
Case 8:20-cv-00483   Document 1   Filed 03/10/20   Page 4 of 60   Page ID #:4   Page
ID #:188

BSI violated Section 1026.39 of Reg Z, pertaining to mortgage transfer disclosures. *See* SAC, at ¶¶ 37-40.

**C.** Because Plaintiff asserts a claim under Reg Z of TILA, the prerequisites for removal under 28 U.S.C. § 1441 have been met and this Court is vested with subject matter jurisdiction over this action.

## III. ALL OTHER REMOVAL REQUIREMENTS HAVE BEEN MET

**A.** Pursuant to 28 U.S.C. § 1441(a), copies of all pleadings, process, and orders served on and by BSI in the State Court Action must be attached to the Notice of Removal. All documents served by Plaintiff and co-defendant Wells Fargo N.A. are attached to this Notice.

**B.** In compliance with 28 U.S.C. § 1446(a), a copy of the Notice of Removal of Action to the United States District Court for the Central District of California that will be filed with the Superior Court of California in and for the County of Los Angeles is attached hereto as **Exhibit B**.

**C.** Intra-District Assignment: This Notice of Removal is properly filed in the Central District of California pursuant to 28 U.S.C. §§ 84(d) and 1446(a).

**D.** In the event that Plaintiff seeks to remand this case, or the Court considers remand *sua sponte*, BSI respectfully requests the opportunity to submit such additional argument or evidence in support of removal as may be necessary.

**WHEREFORE**, BSI respectfully removes this action from the Superior Court of the State of California in and for the County of Orange to this Honorable Court pursuant to 28 U.S.C. § 1441.

Case 8:22-cv-00378-DOC-KES   Document 1-2   Filed 03/10/22   Page 179 of 277   Page
ID #:189
Case 8:20-cv-00488   Document 1   Filed 03/10/20   Page 5 of 6   Page ID #:5

DATED:  March 10, 2020          BLANK ROME LLP


By: */s/ Erika Schulz*
_____
          Cheryl S. Chang
          Erika Schulz
Attorneys for Defendant
SERVIS ONE, INC. D/B/A BSI FINANCIAL
SERVICES

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On March 10, 2020, I caused to be served the foregoing document(s):

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT SERVIS ONE, INC. PURSUANT TO 28 U.S.C. § 1441**

on the interested parties in this action addressed and sent as follows:

| | |
|---|---|
| Rilla Huml<br>Plaintiff Pro Per<br>25 Medici<br>Aliso Viejo, CA 92656<br>949-215-7777<br>Dreamlife7@att.net | Zieve, Brodnax & Steel, LLP<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>714-848-7920 |
| Dean A. Reeves<br>Anglin, Flewelling, Rasmussen,<br>    Campbell & Trytten LLP<br>301 North Lake Avenue, Suite 1100<br>Pasadena, CA 91101<br>Tel: 626-535-1900<br>dreeves@afrct.com | |

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☒ **BY MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office or home of the addressee(s) as indicated. I am "readily familiar" with this firm's practice of collection and processing documents for mailing. It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **BY FEDEX:** I deposited such envelope(s) in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 10, 2020, at Los Angeles, California.

_____
Charman S. Bee

Exhibit D

Case 8:22-cv-00839-DOC-KES    Document 1-2   Filed 03/20/22   Page 182 of 277   Page
ID #:192
Case 8:20-cv-00489-DOC-KES    Document 29-2   Filed 03/30/22   Page 2 of 43   Page ID #:895

**Rilla Huml**
Pro Se
949-215-7777
25 Medici
Aliso Viejo, CA 92656
dreamlife7@att.net

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RILLA HUML, an individual,   )

              **Plaintiff,**  )

vs.  )

SERVIS ONE, INC., a Delaware
corporation, authorized to do
business in California, doing
business as BSI FINANCIAL
SERVICES; WILMINGTON
TRUST FUND  SOCIETY, FSB, a
Delaware corporation, doing
business, but not authorized do
business, as CHRISTIANA TRUST
in California) as Trustee, for
BROUGHAM FUND I TRUST,
an unknown entity;
ZIEVE, BRODNAX  &  STEELE,
LLP,  a California Limited Liability
Partnership; WELLS FARGO
BANK, N.A, S/B/M WACHOVIA
MORTGAGE, FSB, F/K/A WORLD
SAVINGS BANK, FSB; WELLS
FARGO BANK SOUTH CENTRAL,
N.A., and,  Does 1 through 10,

          **Defendants.**  )

CASE NO. 8:20-cv-00489-DOC-KES

**VERIFIED THIRD AMENDED
COMPLAINT FOR:**

**(Assigned to Honorable David O.
Carter)**

1. **VIOLATION OF 12 CFR § 1026.39;
   LENDER FAILURE TO PROVIDE
   PROPER MORTGAGE TRANSFER
   DISCLOSURES**
2. **FRAUD AND FRAUD IN THE
   INDUCEMENT**
3. **VIOLATION OF 12CFR 1024.33©
   LENDER FAILURE TO TRANSFER
   PAYMENTS TO NEW LENDER**
4. **NEGLIGENCE**
5. **ACCOUNTING**
6. **VIOLATION OF CIVIL CODE §
   2923.5**
7. **VIOLATION OF CIVIL CODE §
   2923.7**
8. **VIOLATION OF CIVIL CODE §
   2924.11**
9. **BREACH OF THE IMPLIED
   COVENANT OF GOOD FAITH AND
   FAIR DEALING**
10. **UNFAIR BUSINESS PRACTICES
    IN  VIOLATION OF BUS. AND
    PROF. CODE, § 17200, § 17500)**

## THE PARTIES AND VENUE

Plaintiff Rilla Huml ("Plaintiff" or "Huml") respectfully alleges and submits this Third

Amended Complaint for Damages, Injunctive and Declaratory Relief, and Demand for

Jury Trial as follows:

1. Plaintiff RILLA HUML ("Plaintiff" or "Huml") is an individual, who is, and at all times relevant to this action is the sole Borrower of the subject primary Loan, in the original principal amount of $200,000 (the "Loan"), originated by Golden-west Savings/ World Savings, secured by a Deed of Trust recorded against a her residential house and parcel of real property, commonly known as 25 Medici, Aliso Viejo, CA   92656 A.P.N. hereinafter, the ("Property"), and a resident of the Property.

2.   Plaintiff is informed and believes, and based thereon, allege that Defendant SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES ("BSI"), is now the "Servicer" of the Loan.

3.   Plaintiff is informed and believes, and based thereon, allege that Defendant WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity, is the "Lender" of the Loan, and the claimed Beneficiary under the Deed of Trust securing the Loan, and has been receiving Loan payments being collected by BSI from Plaintiff.

4.   Plaintiff is informed and believes, and based thereon, alleges that Defendant ZIEVE, BRODNAX & STEELE, LLP, a California Limited Liability Partnership, is the current "Trustee" under the Deed of Trust securing the Loan, and, the express agent of Defendants BSI and the Lender in processing a foreclosure against the Property.

5.   Plaintiff is informed and believes, and based thereon, alleges that Golden-west Savings/ World Savings was Plaintiff's original Lender.   Wachovia Mortgage purchased Golden-west Savings and its subsidiary World Savings for 25.5 billion dollars, approved by the Federal Reserve System on September 29, 2006.

6.   Plaintiff is informed and believes, and based thereon, alleges that Defendant WELLS FARGO BANK, N.A., aka Wells Fargo & Co., purchased Wachovia Mortgage and Wachovia Bank on December 31, 2008 for 15.1 billion dollars.    Wachovia Corporation was purchased by Wells Fargo & Co. after the bank was nearly taken over by the FDIC.

7.   Plaintiff is informed and believes, and based thereon, alleges that Defendant Defendant WELLS FARGO BANK, N.A. identifies themselves as WELLS FARGO BANK S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB. Wells Fargo, N.A. claims it was formerly known as World Savings and is associated with Wachovia Mortgage by merger.    Plaintiff is informed and believes, and based thereon, alleges that history is inaccurate and that the truth is Wells Fargo was never know as World Savings or Wachovia Mortgage.   Once Wachovia Mortgage purchased World Savings, World Savings ceased to exist, and once Wells Fargo purchased Wachovia Mortgage, Wachovia Mortgage ceased to exist.   Wachovia Mortgage sold its assets 10/12/2007 to Wachovia Bank, N.A.  Wells Fargo changed Wachovia Mortgage from a mortgage company to a national bank before changing their name to Wells Fargo Southwest.    No promissory note was ever initiated between Wells Fargo Bank, N.A. and Plaintiff.

8.  Plaintiff is informed and believes, and based thereon, alleges that at all times Defendant WELLS FARGO BANK, N.A. was identified as the acquired lender and Holder of the Note, and simultaneously Wells Fargo Bank, N.A. was identified as the Servicer of the Loan, and was the only servicer of Plaintiff's loan during the period from January 1, 2009 to February 23, 2017.

9.   Plaintiff is informed and believes, and based thereon, alleges that Defendant WELLS FARGO BANK SOUTH CENTRAL, an unregistered and unlicensed name, a

3

Case 8:20-cv-00433-DOC-KES    Document 21-2    Filed 03/30/22    Page 4 of 43    Page ID #:398

banking branch location on Taylor Street in Texas, was assigned as the Owner of the Loan for a brief moment on February 23, 2017.

10.    The true names and capacities of Does 1-10, inclusive, whether individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff allege on information and belief that each fictitiously named Defendant is responsible in some manner for the events described herein and is liable to Plaintiff for the damages they have incurred. Plaintiff will amend this Complaint to show the true names and capacities of the Doe Defendants when they have been ascertained.

11.    Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants. Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, brokers and/or representatives while they were acting within the actual or ostensible scope of their authority. The exact terms and conditions of the agency, representation, or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of Court will be sought to insert appropriate allegations.

12.    At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent or the assignee or the substitute of other Defendants, and all of Defendants acted within the scope of their agency if acting as an agent, the assignee or the substitute of another.  At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint.

Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.  Each Defendant intended and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

13.    At all relevant times, Defendants have engaged in conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continues to the present.

14. Venue is proper in this Court, as the subject Property is located within its' jurisdiction. The violations of law alleged in this Complaint occurred in Orange County, California, and elsewhere in Orange County, California.

### THE LOAN HISTORY / PRIOR LOAN MODIFICATION

15.  In 1989, Plaintiff purchased the Property.  In March 2004, Plaintiff refinanced the Property with a $200,000 Loan (the "Loan") from World Savings Bank, FSB secured by a Deed of Trust, recorded in priority position against the Property.

16.    In August 2005, Plaintiff borrowed an additional $100,000 from World Savings Bank, FSB, in the form of a Home Equity Line of Credit, secured by a Deed of Trust, recorded in subordinate position against the Property.

17.    On September 29, 2006, Wachovia Corporation acquired World Savings Bank, FSB through a purchase agreement.  World Savings securitized the loan through REMIC and failed to transfer the assignment to the Deed of Trust to Wachovia Corporation, a trust, or any other party.

18.    On December 31, 2008, Wells Fargo Bank, N.A. acquired Wachovia

Corporation through a purchase agreement. Wachovia Corporation was unable to transfer the assignment of the Deed of Trust to Wells Fargo Bank, as they did not have assignment to the Deed of Trust.

19.   On or about 2012, Plaintiff was enticed into a HAMP Loan Modification from Wells Fargo Bank, N.A., which restructured the original variable interest rate loan from World Savings Bank, FSB, into a fixed interest rate loan. The interest rate was increased rather than decreased.  It was later identified as a Streamline Refinance, <u>not a HAMP Modification</u>, which increased the debt significantly and extended the term 40 more years, equating to a 50-year loan.   It was presented as a government HAMP Modification with debt forgiven that has been identified as added to the back of the loan, increasing the amount of the debt.  The Loan Modification Agreement is attached hereto as **Exhibit "A"**, and incorporated herein by this reference.  The HAMP Loan Approval Letter is attached hereto as **Exhibit "B"**, and incorporated herein by this reference.

20.   On February 23, 2017, Wells Fargo Bank, N.A., sold and transferred the Loan to Wells Fargo Bank South Central, their banking branch location in Texas, not a separate registered institution.   <u>See</u> the Corporate Assignment of Deed of Trust attached hereto as **Exhibit "C"**, which is incorporated herein by this reference.

21.   Also, <u>that same day on February 23, 2017</u>, Wells Fargo Bank South Central, N.A. sold and transferred the Loan to Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, the current Lender.  <u>See</u> the Corporate Assignment of Deed of Trust attached hereto as **Exhibit "D"**, which is incorporated herein by this reference.

**PLAINTIFF'S EFFORTS TO RECTIFY THE SERVICER AND LENDER ERRORS**

22.  Neither Wells Fargo Bank, N.A., nor Wells Fargo Bank South Central, N.A, gave Plaintiff proper notice that the Loan had been sold to, Wilmington Savings Fund Society, FSB, a Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, <u>an unknown entity</u>.  When BSI identified itself to Plaintiff as the new Servicer, Plaintiff believed that Wells Fargo Bank, N.A. was still the Lender.    Plaintiff is fully aware of the difference between the role of Servicer and the role of Lender.

23.   In particular, despite having made timely payments on the Loan when it was owned by Wells Fargo Bank, N.A., the Loan balance had increased to over $224,000. Plaintiff also identified that $3,900 was removed by Wells Fargo from her tax escrow account, 3 payments of approximately 1,200. each, made to Wells Fargo Home Mortgage, were never credited to the account despite prior attempts to correct the errors, and that the February 2017 payment made to Wells Fargo during the month of the sale, was placed in the escrow account to hide its deficient status, instead of being applied as the February principal and interest payment.   A payment of $20,000. was omitted from the recorded balance of the HELOC account, which was modified into a second mortgage. Yearly interest rate increases, during the nine years Wells Fargo served the accounts, have recently been identified as exceeding the legal limits of the contract.    There was no Annual Escrow Disclosure Statement provided to Plaintiff for either account.  There was no transfer statement provided to Plaintiff upon sale to new Lender by either party.  Requests for such financial information were denied by Wells Fargo, stating that they no longer have the records or any further relationship with Plaintiff, and Plaintiff was referred to new Lender to request any and all financial information.  Requests for the transfer statement and financial records were denied by

Case 8:20-cv-00489-DOC-KES   Document 21-2   Filed 03/31/20   Page 8 of 43   Page ID #:302

BSI Financial, starting that she would need to request that information from Wells Fargo.   Both Defendants   Wells Fargo and BSI Financial were deliberately and intentionally concealing the pertinent details of the sale and transfer, especially the financial statements.

24. In about July 2017, Plaintiff first noticed errors on the monthly mortgage statement she received from Defendant BSI.   Throughout 2017 and 2018, Plaintiff attempted to communicate with representatives at BSI to obtain clarification regarding the accurate amount owed on the Loan, however, BSI did not properly assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, and BSI did not assign a single point of contact, therefore, Plaintiff was forced to repeat her requests for a Loan reconciliation.

25. In January 2018, Plaintiff filed for a chapter 13 bankruptcy. During the 2018 Plaintiff was instructed to make payments directly to the Lender at the current amount. The majority of the payments made directly to the Lender were placed in "Unapplied Funds" category, were not listed on any of the BSI monthly statements, and they were not recognized as having been paid. Simultaneously, BSI Financial instructed their attorneys Zieve, Brodnax, and Steele, to file a Motion for Relief of the Automatic Stay for the Chapter 13, and to proceed with a foreclosure sale.   The funds currently remain in "Unapplied Funds."

26. In November 2018, Plaintiff contacted BSI regarding the possibility of submitting an Application for a Loan Modification.    A BSI representative told her that she needed to make a payment of $12,000 – before BSI would consider her Application for a Loan Modification.   Plaintiff questioned the requirement of making such a pre-Application payment, particularly, in the amount of $12,000, when Plaintiff believed that there were errors causing the outstanding Loan balance to be improperly high.

27.  In December 2018, Plaintiff submitted an Application for a Loan Modification without making any prior payment.

28.  On January 17, 2019, Plaintiff sent a letter to BSI entitled "<u>Notice of Error, Request for Debt Validation, Qualified Written Request for Information</u>" stating that BSI should not proceed with a foreclosure until the Loan inaccuracies were corrected.  A true and correct copy of Plaintiff's January 17, 2019, letter, is attached hereto as **Exhibit "E"**, and incorporated herein by this reference.

29. On January 29, 2019, BSI wrote Plaintiff informing her that her Application for a Loan Modification was <u>denied</u> for the <u>nonsensical</u> reason that "*Your Loan to Value ratio of 33.76% exceeds acceptable limits. Your loan with remain denied due to Loan to Value.*" See BSI's January 29, 2019, letter, attached hereto as **Exhibit "F"**, which is incorporated herein by this reference.

30.  On March 26, 2019, Plaintiff sent BSI a <u>Second Notice of Error, Request for Debt Validation, Qualified Written Request for Information</u> describing what she believed were Lender and Servicer errors, and demanding that the foreclosure process not proceed until the financial inaccuracies were fixed.  A true and correct copy of Plaintiff's March 26, 2019, letter, is attached hereto as **Exhibit "G"**, and incorporated herein by this reference.

31. Also, on March 26, 2019, Plaintiff sent Steven Coleman, a BSI representative, a letter, further detailing what she believed were Lender and Servicer errors, and demanding that the foreclosure process not proceed until the financial inaccuracies were fixed. A true and correct copy of Plaintiff's March 26, 2019, letter, is attached hereto as **Exhibit "H"**, and incorporated herein by this reference.

**FORECLOSURE STATUS**

9

32.   On October 26, 2017,  BSI directed the Trustee to record a "<u>Notice of Default</u>" with the Orange County Recorder's Office.  The <u>Notice of Default</u> was recorded <u>on October 26, 2017 at 10:30 am</u>.   It is evidenced that the Assignment of the Deed of Trust had not been recorded prior to the Notice of Default.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "I"**, and incorporated herein by this reference.   <u>On October 26, 2017, at 10:30 a.m</u>., a <u>Substitution of Trustee </u>to Wilmington Trust Fund Society was filed in the Orange County Recorder's Office.  A true and correct copy of the Transfer of Assignment is attached hereto as **Exhibit "L"**, and incorporated herein by this reference.

33.  On January 3, 2019, *while Plaintiff's Application for a Loan Modification was pending,* BSI directed the Trustee to record a "Notice of Trustee's Sale", which scheduled a foreclosure sale for February 4, 2019.  A true and correct copy of the "Notice of Sale" is attached hereto as **Exhibit "J"**, and incorporated herein by this reference.

34.  On March 12, 2019, BSI directed the Trustee to record a "<u>Notice of Trustee's Sale</u>", which scheduled a foreclosure sale for April 15, 2019.

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATION OF 12 CFR § 1026.39;  LENDER FAILURE TO PROVIDE**
**PROPER MORTGAGE TRANSFER DISCLOSURES**
**(Against Servis One d/b/a BSI Financial)**

35.   Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

36.  12 CFR § 1026.39, governing mortgage transfer disclosures, provides that:

"(b) Disclosure required. Except as provided in paragraph (c) of this section, each

10

Case 8:22-cv-00378-DOC-KES Document 1-2 Filed 03/10/22 Page 192 of 277 Page
ID #:202
Case 8:20-cv-00489-DOC-KES Document 20-1 Filed 08/31/20 Page 11 of 49 Page ID #:905

covered person [i.e. a Loan owner] is subject to the requirements of this section and shall mail or deliver the disclosures required by this section to the consumer on or before the 30th calendar day following the date of transfer.

(1) Form of disclosures. The disclosures required by this section shall be provided clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures required by this section may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E-Sign Act) (15 U.S.C. 7001et seq.).

(2) The date of transfer. For purposes of this section, the date of transfer to the covered person may, at the covered person's option, be either the date of acquisition recognized in the books and records of the acquiring party, or the date of transfer recognized in the books and records of the transferring party.

(3) Multiple consumers. If more than one consumer is liable on the obligation, a covered person may mail or deliver the disclosures to any consumer who is primarily liable.

(4) Multiple transfers. If a mortgage loan is acquired by a covered person and subsequently sold, assigned, or otherwise transferred to another covered person, a single disclosure may be provided on behalf of both covered persons if the disclosure satisfies the timing and content requirements applicable to each covered person.

(5) Multiple covered persons. If an acquisition involves multiple covered persons who jointly acquire the loan, a single disclosure must be provided on behalf of all covered persons.

(6) Content of required disclosures. The disclosures required by this section shall identify the mortgage loan that was sold, assigned or otherwise transferred,

11

and state the following, except that the information required by paragraph (d)(5) of this section shall be stated only for a mortgage loan that is a closed-end consumer credit transaction secured by a dwelling or real property other than a reverse mortgage transaction subject to § 1026.33 of this part:

(1) The name, address, and telephone number of the covered person.

(i) If a single disclosure is provided on behalf of more than one covered person, the information required by this paragraph shall be provided for each of them unless paragraph (d)(1)(ii) of this section applies.

(ii) If a single disclosure is provided on behalf of more than one covered person and one of them has been authorized in accordance with paragraph (d)(3) of this section to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan, the information required by paragraph (d)(1) of this section may be provided only for that covered person.

(2) The date of transfer.

(3) The name, address and telephone number of an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. However, no information is required to be provided under this paragraph if the consumer can use the information provided under paragraph (d)(1) of this section for these purposes.

(4) Where transfer of ownership of the debt to the covered person is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided."

37. [Neither Wells Fargo Bank, N.A., nor Wells Fargo Bank South Central, N.A,] nor Servis One d/b/a BSI Financial gave Plaintiff the notice required by 12 CFR § 1026.39, that the Loan had been sold, Wilmington Savings Fund Society, FSB, a

Delaware corporation, doing business, but not authorized do business, as Christina Trust, in California, as Trustee, for Brougham Fund I Trust, an unknown entity.  When BSI identified itself to Plaintiff as the new Servicer, Plaintiff believed that Wells Fargo Bank, N.A. was still the Lender.

38.  As a direct and proximate result of Servis One's d/b/a BSI Financial's failure to provide the required notice, Plaintiff is entitled to statutory damages as provided under Regulation Z.

### SECOND CAUSE OF ACTION
### FRAUD AND FRAUD IN THE INDUCEMENT
### (Against Wells Fargo Bank, N.A. and Wells Fargo Bank South Central)

39.  Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

40.  Fraud's legal definition is as follows:  "*A false representation of a matter of fact - whether by words or by conduct, by false or misleading allegations, or by concealment of what should have been disclosed—that deceives and is intended to deceive another so that the individual will act upon it to her or his legal injury*".

41. There are four separate claims of Fraud or Fraud in the Inducement, and they are detailed as follows;

### 1) WELLS FARGO CLAIMED TO BE PLAINTIFF'S SOLE LENDER, DESPITE SECURITIZATION

42.  A.  FALSE STATEMENT OF A MATERIAL FACT

13

Wells Fargo Bank, N.A. acquired Wachovia Mortgage on December 31, 2008, changed Wachovia Mortgage to a National Bank in 2009, and changed Wachovia Mortgage's name to Wells Fargo Southwest.  At all times, when transferring a Deed of Trust from one party to another, the Lender is required to record a copy of the Transfer of Assignment of the Deed of Trust, in the county in which the property is located, in order to be valid.  Plaintiff's property is located in Orange County, California.  The Deed of Trust was not transferred from original Lender World Savings to Wachovia Mortgage upon acquisition of World Savings, and World Savings no longer exists. [Ref. Loan History #17] World Savings loans were securitized through REMIC, and it is plausible that Plaintiff's World Savings loan was securitized through REMIC 14 prior to the acquisition of Wachovia Mortgage, and there was no assignment from World Savings to Wachovia Corporation or to any other Trust, party, or banking institution.

43.  In 2015, Wells Fargo attempted to circumvent the process by transferring an Assignment from deceased World Savings to Wells Fargo, eliminating Wachovia Mortgage's Assignment requirement entirely.  Wells Fargo has identified themselves in Plaintiff's First Amended Complaint as the "original lender."   However, there is no document, no contract, no agreement that originated between Plaintiff and Wells Fargo.  Wells Fargo existed as a separate institution.  Wells Fargo, N.A.  never was, and never will be, the original lender. Wells Fargo was never known as World Savings, and Wells Fargo was never known as Wachovia Mortgage.

44.  Wachovia Mortgage acquired World Savings through a purchase agreement.  World Savings failed to transfer the assignment of Plaintiff's Deed of Trust to Wachovia or any other party, trust, or institution, and World Savings ceased to exist in 2007.   A future Assignment would be deemed invalid and unenforceable.

45.  Wells Fargo concealed from Plaintiff the fact that Plaintiff''s loan was

securitized, and that they were not the true and sole lender.

46. Standing established by unrelated evidence that the original note continued to be held by the original lender despite the name change and merger. On March 2, 2018, the Second District Court of Appeal released the opinion of Heyward v. Wells Fargo Bank, N.A., No. 2D16-3392018 WL 1123831, (Fla. Dist. Ct. App. Mar. 2, 2018), in which there Court held, "standing arguments based on notion that the note changed hands in some fashion after it was delivered to the original lender were refuted by record evidence establishing that note continued to be held by original lender despite name change and merger."

**B) <u>KNOWLEDGE THAT THE STATEMENT IS UNTRUE</u>**

47. Wells Fargo claims to have been Plaintiff's lender, and the sole lender at all times from the purchase of Wachovia Mortgage until February, 2017. This statement is evidenced by verbal communication, written correspondence, and billing identifying Wells Fargo as the lender. Wells Fargo was the ONLY known lender to Plaintiff. Wells Fargo was fully aware that they were not the lender, or legal or sole owner of Plaintiff's note that they acquired, which can be identified by their securitization agreements and in their private communications and records that they withhold from borrowers.

**C) <u>INTENT TO DECEIVE</u>**

48. Wells Fargo concealed true material facts from Plaintiff. Wells Fargo intentionally stated that they were the acquired owner of Plaintiff's note, verbally, in notification, and by their interaction and collection of Plaintiff's payments. Plaintiff Wells Fargo withheld the fact that Plaintiff's loan had been securitized, or that ANY other parties may have been involved in the transfer or transaction. Wells Fargo intentionally withheld material facts that there was a break in the chain of title, that Wells Fargo initiated an invalid assignment in 2015, and that there were other parties that held

15

ownership of Plaintiff's note.   Wells Fargo concealed true facts and provided a false set of facts to Plaintiff regarding her most important investment.

### D) <u>JUSTIFIABLE RELIANCE</u>

49. Plaintiff is not a mortgage, or financial professional.   Plaintiff had no knowledge of the mortgage or banking industry, and had no means to acquire such knowledge.  She fully relied on Wells Fargo's statement that they were the the owner of Plaintiff's note.  When Plaintiff's loan was transferred from World Savings to Wachovia Mortgage, and then from Wachovia Mortgage to Wells Fargo, at all times Plaintiff had no knowledge of any alternative facts, or any securitization, or any other parties involved in the ownership of her note, and furthermore Plaintiff had no choice but to rely on the facts as presented by Wells Fargo, that they were her new lender, and the sole acquired lender.

### E) <u>INJURY AND RESULTING DAMAGES</u>

50. Plaintiff was harmed emotionally and financially by Wells Fargo's deception, claiming that they were the true sole owner of Plaintiff's note, when in fact they were not.  By the vast changes resulting from the securitization, she has paid sums in excess of the original terms of her contract.   Plaintiff has paid substantial sums of money to Wells Fargo, when it is plausible they did not have ownership of Plaintiff's note and did not have a legal right to receive such funds.  Loss of t, work, and costs associated with a lawsuit have substantially added to Plaintiff's damages.

### F) <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

51. Plaintiff is not a mortgage, title, or financial professional.   Plaintiff had no suspicion that Wells Fargo was not the true and sole lender, and she was unable to identify that her loan may be securitized or that an assignment may be missing until she sought legal counsel in January of 2019.  Once Plaintiff sought assistance, in January,

2019, Legal counsel and their title professionals identified that there was a broken chain of title, that World Savings did not transfer the assignment to Wachovia Mortgage, and that it was plausible Wells Fargo did not have a legal claim to Plaintiff's Deed of Trust. Because of Plaintiff's lack of industry knowledge, lack of means to obtain such knowledge, and the bold act of concealment by Wells Fargo, the Statute of Limitations should rightfully be tolled.


## 2) WELLS FARGO'S YEARLY INTEREST RATE ADJUSTMENTS VIOLATED THE TERMS OF PLAINTIFF'S CONTRACT

### A. FALSE STATEMENT OF A MATERIAL FACT

52. According to the terms of Plaintiff's original contract, the rate was an adjustable rate tied to an index, with a cap on yearly rate increases. Wells Fargo exceeded the rate increase cap during multiple years, by a minimum of 1%, beginning with 2009, and including the years 2010, 2011, 2012, and 2013. The higher interest rate eventually affected the calculations used in the modification in 2014, resulting in higher payments and excessive interest rates in all subsequent years. The years excess interest was charged include 2009, 2010, 2011, 2012, 2013, 2014, 2015 and 2016. Throughout 2011 and 2012, with no payments having been past due, Plaintiff was forced to pay 1.7 and 2 times the appropriate rate, and 1.7 to 2 times the amount of monthly payment legally required, in violation of the terms of Plaintiff's loan agreement. None of the payments were applied to principal.

53. Wells Fargo withheld details of the index and margin used to calculate her interest rate, and whether the loan was tied to the index in her original contract with World Savings, or whether the index and terms had been altered as a result of

the acquisitions and securitization.

54.     Plaintiff suspected that the yearly rates were higher than they should have been, and she questioned the accuracy of the annual interest rate changes. Plaintiff was at a disadvantage, as she did not have access to the calculations used by a mortgage servicer to determine the rate changes.   Wells Fargo's customer service representatives were unwilling to alleviate Plaintiff's concern by identifying the index and margin used to arrive at the yearly rate changes.   Wells Fargo customer service representatives gave their word, reasserted and convinced Plaintiff that the rates were accurately calculated, as late as September, 2016.  They avoided providing details of how they determined their calculations were accurate.

55. **B.   <u>KNOWLEDGE THAT THE STATEMENT IS UNTRUE</u>**

Wells Fargo is a is a National Association and a licensed corporation that at all times must conduct business with professional conduct.  Wells Fargo is in the financial and mortgage business, and is required to have full knowledge of mortgages, terms and interest rates and caps.  Wells Fargo, as a licensed and regulated servicer of Plaintiff's loan, should have clearly understood how mortgages are calculated and what the federal regulations were. Wells Fargo had an obligation to abide by Plaintiff's loan contract terms when determining yearly rate adjustments and had an obligation to make that determination with accuracy, and to abide by the governing cap on rate increases.

**C.   <u>INTENT TO DECEIVE</u>**

56.   Wells Fargo failed to provide the accurate rate increase according to the terms of Plaintiff's agreement.  Defendant intentionally raised the interest rate above the contract rate cap limit, year after year, in an effort to enrich their profits.   Wells Fargo would never entertain a discussion about accuracy, and there was no negotiation.  Wells Fargo refused to identify the manner in which they calculated the interest rate

18

adjustment and refused to provide the index and margin they were using each year for Plaintiff's adjustable rate.

### D. **JUSTIFIABLE RELIANCE**

57.  Plaintiff is not a mortgage or banking professional. She is merely a customer, and she did not have the calculations used by a mortgage servicer or mortgage company professional to determine the rate changes.  Plaintiff did not have the means to acquire such information.   She had no choice but to rely on the knowledge and honesty of Wells Fargo's customer service representatives and executives, and to believe them when they reasserted that the calculations were accurate.

### E. **INJURY AND RESULTING DAMAGES**

58.   Plaintiff has been damage emotionally and financially by the excessive yearly interest rate increases that were not in accordance with her original contract and are in violation of federal guidelines.  Plaintiff has paid excessively high sums of interest and has not earned any principal after 17 years of paying on the loan.   In addition, having to file a lawsuit has cost Plaintiff time, loss of work, and financial and emotional damages.

### F. **TOLLING OF THE STATUTE OF LIMITATIONS**

59.  The statute of limitations warrant being tolled because Plaintiff was completely unaware of the yearly interest rate adjustments of her loan had exceeded the contract's rate increase limit, until January 2019 when Plaintiff sought legal counsel, and a professional's investigation began revealing these facts.   Wells Fargo's bold concealment prevented Plaintiff from discovering and identifying the incorrect interest rate adjustments.

### 3) **THE HAMP MODIFICATION PROVIDED TO PLAINTIFF BY WELLS FARGO**

**WAS IN VIOLATION OF THE GOVERNMENT HAMP REGULATIONS AND REQUIREMENTS**

### A. FALSE STATEMENT OF A MATERIAL FACT

60.    In 2013, after a Court ruling required Wells Fargo to modify a substantial amount of their customers' loans, Wells Fargo modification specialist Katherine T. solicited Plaintiff and enticed her with a Government initiated HAMP Modification, stating that it would reduce her monthly payments, reduce her interest rate, and forgive a portion of her principal and interest.   The offer as presented was very appealing. Plaintiff accepted the offer, was approved for a HAMP Modification, proceeded to make trial payments for the HAMP Modification, and successfully completed the terms of the trial payments for the Government's HAMP Modification.   During the process, Plaintiff had also been assisted by other modification representatives including Jessica Trahan, and Carly Lopez.  **[Modification Document, Exhibit "A"]**

61.    According to all documentation and verbal commitments, the contract provided was a Government HAMP modification. The trial acceptance letter states "Federal Government HAMP Modification," yet the modification document reads "Home Affordable Modification Agreement."  Plaintiff identified an increase, rather the promised and anticipated decrease in the interest rate, and an excessive amount of interest spanning a tremendous amount of years.  When Plaintiff questioned the terms provided in the contract, a Wells Fargo modification manager stated "This is not let's make a deal. This is your government HAMP modification you were approved for."   The representative began to pressure Plaintiff stating that trial payments could only be applied to the modification.  She also threatened Plaintiff that if Plaintiff didn't sign the agreement, she would forfeit her 3 trial payments and 3 subsequent payments, from

20

August, 2013 through January, 2014, and her account would be immediately placed in foreclosure.  **[Approval for HAMP Modification, Exhibit "B"]**

62.  <u>Wells Fargo committed Fraud and Fraud in the Inducement.</u>  What Wells Fargo delivered was not the genuine HAMP Modification promised and qualified for, but a refinance that appears to be a "streamline refinance" unrelated to any HAMP Modification.   The terms of this refinance substantially increased Plaintiff's interest rate, added several hundred thousand dollars of additional interest to the maturity of Plaintiff's loan, and added $14,000 of principal to the loan rather than forgiving any of the principal.   Plaintiff recently identified that a valid HAMP Modification's interest rate would have been reduced to 2% or 3%.   Plaintiff's interest rate was increased from 3.4% to to 4.125%. The HAMP Modification could have only been extended to 40 years from the date of inception of the loan.  <u>Plaintiff's loan was extended by 40 years, after she had been paying on the loan for 10 years, extending the life of the loan to 50 years.</u>

Plaintiff would not have accepted the modification if she had know she was not receiving the Government's HAMP Modification with the benefits of the Government's HAMP Modification.

63.  In addition, Wells Fargo offered Plaintiff a modification for her HELOC loan with a four -month trial period. [Ref. Loan History #19]  After completing the trial period plus two additional payments, Wells Fargo told Plaintiff they had no obligation to finalize the modification or provide copy her a signed modification agreement.   Defendant stated that she should continue to make trial payments indefinitely. After 12 consecutive trial payments were made, a modification representative, someone that Plaintiff had not previously interacted with, Michelle Reyna, identified that not one of Plaintiff's 12 payments had been applied to her account, that the funds were sitting in unapplied finds, and that the account was ready to be placed in foreclosure for non-payment.

## B. **KNOWLEDGE THAT THE STATEMENT IS UNTRUE**

64. Wells Fargo is a professional, licensed National Association. Wells Fargo Bank knew that the modification offered to Plaintiff was not an authentic Government HAMP Modification, and that the terms of the modification did not meet the legal requirements of a Government HAMP Modification. As a licensed professional organization, as a participant in the HAMP program, and as defined in their court order, Wells Fargo was required deliver the Government's HAMP Modification when the borrower qualified, and they are required to be well trained and well-versed in the Government's HAMP program. Wells Fargo never mentioned that they would be providing a refinance other than the Government HAMP Modification. Wells Fargo never asked Plaintiff if she would like to refinance with a completely new 40-year loan.

## C. **INTENT TO DECEIVE**

65. Wells Fargo intentionally deceived Plaintiff as to the type of modification she was offered and the type of modification she was enticed into making trial payments for. Wells Fargo presented their refinance as a Government HAMP Modification, although it did not meet the requirements of an authentic Government HAMP modification with respect to the interest rate and amount of years, and it was a financial detriment to Plaintiff.

66. Wells Fargo Bank is a professional, licensed National Association. Wells Fargo Bank knew that the modification offered to Plaintiff was not an authentic Government HAMP Modification, and that the terms of the modification did not meet the legal requirements of a Government HAMP Modification. Wells Fargo knew that if they told Plaintiff that she would not be receiving a HAMP modification, but a refinance for 40 more years with a higher interest rate, that she would decline their offer. As a licensed professional organization, as a participant in the HAMP Modification program, and as

defined in the court order, Wells Fargo is obligated to deliver the Government's HAMP Modification to a qualified and approved borrower, and the modification representatives are required to be well trained and well-versed in the Government's HAMP program.

67. Wells Fargo intentionally deceived Plaintiff as to the type of modification she was receiving, which was a financial detriment to her. Wells Fargo intended to defraud Plaintiff, as Defendant possessed the knowledge and understanding of the legal requirements of Government HAMP Modification, yet presented a false offering and understanding to Plaintiff. Wells Fargo made verbal statements that they were offering a HAMP Modification, and they sent literature stating Plaintiff was applying for a HAMP Modification, and later approved for a HAMP Modification. Wells Fargo even sent return envelopes with HAMP stamped on them. Wells Fargo stated that her 30-year loan would be pushed out to maturity at 40-years, not 50 years. Wells Fargo delivered a refinance <u>with completely different terms than those legally allowed within a Government HAMP Modification.</u> Wells Fargo's modification increased Plaintiff's interest rate, and exceeded the number of years extension legally allowed for a HAMP modification. By providing this bait and switch type of refinance, Wells Fargo provided great financial benefits to themselves, and have seriously defrauded Plaintiff.

D. **JUSTIFIABLE RELIANCE**

68. Plaintiff is not a finance or mortgage professional, and she relied heavily on the knowledge, expertise, and good intention of Wells Fargo's modification professionals, including but not limited to Katherine T., Jessica Trahan, Carly Lopez, and Michele Reyna. Plaintiff is a mere borrower, and she did not have the knowledge or understanding of the guidelines and requirements for a Government HAMP Modification. Plaintiff had no choice but to rely on the experts at Wells

Fargo's modification department, as she entered into a modification agreement believing that it was a Government HAMP modification.

### E.  INJURY AND RESULTING DAMAGES

69.  Plaintiff has suffered financially by paying a raised interest rate rather than a reduced interest rate after the fake HAMP modification.   Plaintiff has also suffered by the additional 20 years of interest having been added to the maturity of her 30-year loan, extending her payments to 40 more years, and the life of her loan to 50 years.  To date, Plaintiff has already paid $48,800 more in interest with Wells Fargo's modified loan terms than what she would have paid by the terms of her original loan.   Plaintiff has suffered financially by having to incur the costs of a lawsuit.  Plaintiff has also suffered emotional damage and loss of work as a result of this deception.

### F.  TOLLING THE STATUTE OF LIMITATIONS

70.  In November of 2018, a Finance and Modification professional identified that Wells Fargo deceived Plaintiff with refinance terms that were not consistent with a Government HAMP Modification, and that the refinance she was provided had been fraudulently presented as a HAMP Modification. The Statute of Limitations warrant being tolled as a result of Wells Fargo's concealment and Plaintiff's lack of knowledge, until the seeking legal advice in November 2018.

### 4)  WELLS FARGO SOLD PLAINTIFF'S NOTE TO ANOTHER PARTY WITHOUT LEGAL AUTHORITY

### A.  FALSE STATEMENT OF A MATERIAL FACT

71.  In February 2017, Wells Fargo sold Plaintiff's note to Wilmington Savings

Fund Society and transferred an invalid Deed of Trust to Wells Fargo South Central, just moments before transferring the Deed of Trust to Wilmington Savings Fund Society in a sales agreement. Plaintiff''s Deed of Trust remained with original Lender Golden-west Savings/World Savings from origination in 2004 until 2015, nine years after World Savings ceased to exist. Wachovia Mortgage acquired World Savings in a purchase agreement on September 29, 2006. An assignment was never transferred from Golden-west Savings/World Savings to Wachovia Mortgage, and Wachovia Mortgage ceased to exist in 2007; therefore, an assignment from Wachovia Mortgage to anyone is impossible. **[Transfer of Trustee in 2015, Attachment "K"]**

72. In 2015, Wells Fargo transferred Plaintiff's assignment to the Deed of Trust to themselves, Wells Fargo Bank, <u>validated by a World Savings signature, nine years after World Savings ceased to exist and completely circumventing Wachovia's assignment.</u> The chain of title was broken down prior to this date, as there is clearly a missing assignment of Plaintiff's Deed of Trust from World Savings to Wachovia Mortgage. Any future Assignment is invalid and the current Assignment of the Deed of Trust is deemed unenforceable. The act of initiating the Transfer of Assignment in 2015 from deceased World Savings to Wells Fargo, with a fake World Savings signature, and the act of selling Plaintiff's Note to another party, with full knowledge of the invalid Assignment, is fraud.

73. To state that wells Fargo Bank, N.A. is the successor by merger is insufficient. It is the legal responsibility of the selling party in a purchase agreement to record each individual change of assignment to the Deed of Trust in the county recorder's office where the property is located, in order for the assignment to be deemed valid. Both Golden-west Savings/World Savings and Wachovia Bank were extinct many years prior to February, 2017 and prior to the sale of Plaintiff's note to

Case 8:22-cv-00378-DOC-KES Document 1-2 Filed 02/10/22 Page 207 of 277 Page
ID #:217
Case 8:20-cv-00489-DOC-KES Document 21-1 Filed 05/31/20 Page 260 of 497 Page ID #:920

Wilmington. **[Assignment #1, Exhibit "C"**], **[Assignment #2, Exhibit "D"]**

### B.  KNOWLEDGE THAT THE STATEMENT IS UNTRUE

74.   Wells Fargo has privileged information that includes detailed knowledge of borrower's accounts, as well as Wells Fargo's assignments, mergers, acquisitions, and the securitization of these loans.  Wells Fargo has all the knowledge that they withhold from borrowers, labeled as privileged and confidential. Wells Fargo is solely responsible for transferring their assignments and for recognizing when an assignment is flawed.  As a licensed National Association, Wells Fargo had full knowledge of Plaintiff's account status and history, including securitization, acquisition, and assignment.

### C.   INTENT TO DECEIVE

75.   Wells Fargo intentionally committed an act of omission and fraud when transferring Plaintiff's Deed of Trust to another party, knowing the Assignment from World Savings was missing, and that a future assignment would be deemed invalid.

76.   Wells Fargo knew exactly what their intention was, as they concealed the details of the missing "World Savings to Wachovia assignment" from Plaintiff, and from any purchaser as well, in order to cash in on their investments from World Savings and Wachovia Mortgage.   In 2015, Wells Fargo transferred Plaintiff's assignment to the Deed of Trust, which was <u>validated by a World Savings signature, nine years after World Savings ceased to exist</u> and completely circumventing the required legal transfer of assignment to Wachovia.   The transfer to Wells Fargo South Central serves as a smoke-screen for the missing assignment from Wachovia, which had been renamed a similar name,  Wells Fargo Bank Southwest.  When Plaintiff inquired as to who the legal owner of her note was, she was denied all responsive information.

### D.   JUSTIFIABLE RELIANCE

77.   Plaintiff is not a banking, title, or mortgage professional.   Plaintiff did not

26

have knowledge, understanding, or the means to obtain such knowledge relating to the transfers of assignment. Plaintiff's requests for such information were denied as Privileged and Confidential. Plaintiff relied entirely on Wells Fargo's professionals' and executives' integrity, honesty, and professional conduct. Plaintiff expected Wells Fargo's representatives and executives to conduct business while abiding by legal authority. Wells Fargo concealed the ownership, securitization, assignments, and title transfers of Plaintiff's note from Plaintiff entirely, until Plaintiff sought legal counsel in January, 2019.

## E. <u>INJURY AND RESULTING DAMAGES</u>

78. Plaintiff has been financially and emotionally harmed by this act of deception. Wells Fargo involved another party in the broken chain of title, sold an invalid assignment to the Deed of Trust, and transferred an inaccurate debt balance to a new lender. Plaintiff has suffered extensive financial and emotional damages as a result of this deception. Plaintiff has suffered loss of work and harassment. As a direct and proximate result of Defendants' unfair, willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## F. <u>WITHIN THE STATUTE OF LIMITATIONS</u>

79. This Fraud claim that Wells Fargo sold Plaintiff's note to another party without legal authority is within the Statute of Limitations. In January 2019, when seeking advice of legal counsel, a professional shared information with Plaintiff that identified a break in her chain of title. He identified that her World savings loan had been securitized, and it was plausible that Wilmington Savings Fund Society's purchase of Plaintiff's note was invalid.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF 12CFR 1024.33 (C)**
**LENDER FAILURE TO TRANSFER PAYMENTS TO NEW LENDER**
**(Against Wells Fargo N.A. and Wells Fargo Bank, South Central, N.A.)**

**OVERRULED IN DEFENDANT WELLS FARGO'S DEMURRER TO SAC**
**PREVIOUSLY FOURTH CAUSE OF ACTION**

80.   Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

81.   **Borrower Payments During Transfer of Servicing–12CFR1024.33(c)** *During the 60-day period beginning on the date of transfer, no late fee or other penalty can be imposed on a borrower who has made a timely payment to the transferor servicer (former servicer). Additionally, if the transferor servicer (former servicer) receives any incorrect payments on or after the effective date of the transfer, the transferor servicer must either transfer the payment to the transferee servicer (new servicer) or return the payment and inform the payor of the proper recipient of the payment.*

82.   As a direct and proximate result of Wells Fargo Bank, N.A.'s, and Wells Fargo Bank South Central, N.A.'s failure to transfer funds belonging solely to the account of Plaintiff, failure to transfer an accurate loan balance, and failure to post payments made to Wells Fargo by Plaintiff designated for the purpose of monthly mortgage payments, the misappropriation of these funds has resulted in substantial damages and injuries to Plaintiff.

83.   As a direct and proximate result of Defendant Wells Fargo's unfair, willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against BSI and Lender)**

84. In the process of transferring and purchasing the Loan from Wells Fargo Bank, N.A. and Wells Fargo Bank South Central, N.A. to Lender and BSI, for servicing, Lender and BSI had duties of reasonable care to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance.

85. BSI and Lender breached these duties by: (a) failing to determine the correct amounts that Plaintiff had paid on the Loan, and the outstanding Loan balance, (b) by sending monthly mortgage statements to Plaintiff that were incorrect, and requesting that Plaintiff pay amounts that were not due and owing, and (c) by not properly calculating Plaintiff's income and expense figures when considering her for a Loan Modification.

86. According to the Court of Appeals in *Alvarez v. BAC Home Loan Servicing, L.P.* (2014), the six factors set forth *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650-651, should be evaluated when determining if a loan servicer has breached a duty of care to a borrower:

(a) **the extent to which the party intended the transaction to affect the Plaintiff** – here, the review and decision on Plaintiff's Application will impact whether or not she can keep her home;

(b) **the foreseeability of harm to Plaintiff** – here, the potential harm to Plaintiff from mishandling her Application processing was readily foreseeable: the potential loss of an opportunity to keep her home, notwithstanding there was no guarantee that modification would be granted;

(c) **the degree of certainty that Plaintiff suffered injury** – here, injury to Plaintiff is certain, in that if Defendants do not correctly determine the accurate amounts due on the Loan, then, they cannot properly evaluate her Application, and she will lose the opportunity of obtaining a loan modification and her home will be sold;

(d) **the closeness of connection between defendant's conduct and injury suffered** – here, there is a close connection, because as set forth at length in Plaintiff's Application, she is eligible for, and qualifies for, a Modification; however, Defendants' focus on conducting the sale, is preventing them from properly reviewing the Application; and,

29

(e) **the moral blame attached to defendant's conduct** – here, Plaintiff's ability to protect her property interests through the loan modification process is completely subject to dealing with BSI, which as alleged in this Complaint, has her very concerned! BSI's superior position, coupled with BSI's negligence, all point to assigning significant moral blame. BSI's actions have resulted in a Notice of Trustee's Sale being recorded, and have allowed the foreclosure process to take precedence over BSI properly focusing on making a decision on Plaintiff's well-qualified Application.[1]

(f) **the policy of preventing future harm** – here, this is evidenced by the California legislature passing the Homeowner's Bill of Rights, which is designed to establish fair procedures by which lenders and servicers must review Applications, in an attempt to afford borrowers the opportunity to keep their homes.

"A borrowers' 'ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." [citing *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 900]….."Traditional mortgage lending involved a bank evaluating a borrower and her security, and issuing a loan with terms reflecting the perceived risk that the borrower would default. The same bank would then (i) retain the loan, making its profit on the interest the borrower paid; and (ii) service the loan, meaning that it would be in contact with the borrower directly, collecting the borrower's payments and negotiating any changes in loan terms….. These tasks have been dispersed among different actors in the modern mortgage servicing context, however, changing the relationships between the borrower, the loan originator, the ultimate holder of the loan, and the servicer of the loan. First, borrowers are captive, with no choice of servicer, little information, and virtually no bargaining power. Servicing rights are bought and sold without input or approval by the borrower. Borrowers cannot pick their servicers or fire them for poor performance. The power to hire and fire is an important constraint on opportunism and shoddy work in most business relationships. But in the absence of this constraint, servicers may actually have positive incentives to misinform and under-inform borrowers. Providing limited and low-quality information not only allows servicers to save money on customer service, but increases the chances they will be able to collect late fees and other penalties from confused borrowers." *Alvarez v. BAC Home Loan Servicing, L.P.* (2014) 228 Cal. App. 4th 941, 949.

87. BSI Financial failed to determine the appropriate interest rate, failed to apply all payments made by Plaintiff, placed numerous payments, consisting of over $5,200, made by Plaintiff in the category of "Unapplied Funds, while adding over fifteen thousand dollars of attorney fees and costs to her account. BSI Financial blamed the unapplied funds on their process of "inventory." BSI has also not accounted for (3)

30

additional payments made, consisting of another sum of $3,600

88.     As a direct and proximate result of BSI and Lender negligence, Plaintiff has been damaged in that she has been denied a fair review of her Application for a Loan Modification; Plaintiff has paid thousands of dollars that are not being credited to her account; Plaintiff has been placed and remains in the foreclosure process, which is costing her excessive interest rate charges, late fees, penalties and other foreclosure costs; and, Plaintiff is now involved in this litigation which is causing her to incur certain attorneys' fees and costs, all to Plaintiff's damage and injury.

89.     The assignment of the Deed of Trust from Wells Fargo South Central to Wilmington Trust Fund Society appears to be invalid.   If the assignment is proven in Court to be invalid, all payments provided  by Plaintiff will be unwarranted and must be refunded and all foreclosure efforts must cease.

90.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.


## FIFTH CAUSE OF ACTION
### ACCOUNTING
### (Against BSI and Lender)

91.   Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

92. The balance due on the Loan from Plaintiff to Lender can only be ascertained by an accounting.   Accordingly, Plaintiff requests that the Court order Defendant BSI and Lender to provide a full accounting of all amounts paid on the Loan from Plaintiff to Lender, all interest rates charged by prior lender per year,   all interest rate adjustments by prior lender per year, and all amounts due on the Loan from Plaintiff

31

to Lender; full copy of the transfer statement from Wells Fargo South Central to BSI Financial; and the purchase agreement between Wells Fargo and the new Lender.

93.   The elements of an action for the equitable remedy of accounting are: (1) the existence of a relationship which requires an accounting; and (2) an allegation that some sum is due to Plaintiff. (Brea v. McGlashan (1935) 3 Cal.App.2d 454, 460). Plaintiff would not only be current with loan payments if the accounting were corrected, but a significant sum of money would be applied to principal for payments made to Wells Fargo between 2008 and 2017, as well as payments made to original lender World Savings and acquired lender Wachovia Mortgage between 2004 and 2008.  The sum of over $280,000 has been paid to prior lender Wells Fargo.  The inaccuracies that Wells Fargo transferred to new lender on Plaintiff's primary loan include: $84,000 of compounded excessive interest paid between 2004 and 2017, caused by excessive rate increases and the streamline refinance presented as a modification, $14,000 added to principal during modification, $3,900 removed as "miscellaneous" from escrow, $3,600 regular payments remaining unapplied, and additional costs are continuing to occur; costs of suit, attorneys fees and costs.  Copy of Plaintiff's Notice of Error to Wells Fargo, dated January 5, 2018, is included as **Exhibit "E."**

94.   BSI's accounting has compounded the damage to Plaintiff.  BSI Financial failed to determine the appropriate interest rate, failed to apply all payments, placed numerous payments made by Plaintiff, consisting of over $5,200, in the category of "Unapplied Funds, while adding over fifteen thousand dollars of attorney fees and costs to her account in 2018.  BSI Financial blamed the unapplied funds errors that spanned nearly a year on their process of "inventory."   BSI has also not accounted for (3) additional subsequent payments made, consisting of another sum of $3,600.

95.   As a direct and proximate result of Defendant BSI Financial's negligent

accounting, Plaintiff has suffered money damages, and costs and damages continue to accrue, in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial

### SIXTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE, SECTION 2923.5
### (Against BSI and Lender)

96.   Plaintiff re-alleges and incorporates by reference the above paragraphs as set

forth fully herein.

97.   Civil Code, Section 2923.5, provides that:

*"(a)(1)  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:*
*(A)  Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).*
*(B)  The mortgage servicer complies with subdivision (a) of Section 2924.11 , if the borrower has provided a complete application as defined in subdivision (f) of Section 2924.11.*

*(2)  A mortgage servicer shall contact the borrower in person or by telephone in order <u>to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure</u>.  During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.  The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.  In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.  Any meeting may occur telephonically.*

*(b)  A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5."*

98.   Here, while the Notice of Default contains a boilerplate statement that BSI

contacted the borrower, and purportedly assessed her financial condition, this is <u>not</u> <u>true</u>. In fact, in December 2018, BSI demanded a payment of $12,000 – before it would even consider Plaintiff for a Loan Modification.

99. As a direct and proximate result of Defendants' statutory violations, Plaintiff has suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial. **[Notice of Default, Exhibit "I"]**

### SEVENTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE, SECTION 2923.7
### (Against BSI and Lender)

100. Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

101. Civil Code Section 2923.7, contained in the Homeowner's Bill of Rights, provides that:

*(a) Upon request from a borrower who requests a foreclosure prevention alternative, <u>the mortgage servicer shall promptly establish a single point of contact</u> and provide to the borrower one or more direct means of communication with the single point of contact.*
  *(b) <u>The single point of contact shall be responsible for doing all of the following</u>:*
  *(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.*
  *(2) <u>Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application</u>.*
  *(3) <u>Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.</u>*
  *(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.*
  *(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.*

*(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.*

*(d) <u>The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor</u>.*

*(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. <u>The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process</u>.*

102.   Here, as alleged above, BSI never designed any one person as the official Single Point of Contact at BSI. The BSI representatives with whom Plaintiff spoke, did not seem knowledgeable about the status of Plaintiff's Application.    None of these representatives said that they were working as a team on Plaintiff's Application, and their inconsistent statements and actions demonstrated that they were not working as a coordinated team. These facts establish a violation of Section 2923.7(e).

103.   As a direct and proximate result of Defendants' statutory violation, Plaintiff have suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### **EIGHTH CAUSE OF ACTION**
### **VIOLATION OF CIVIL CODE, SECTION 2924.11**
### **(Against BSI, Lender and Trustee)**

104.    Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

105.   Civil Code, Section 2924.11, provides in pertinent part that:

*(a)  If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent <u>shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been</u>*

*provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.*

106.    Here, while Plaintiff's December 2018, Application for Loan Modification was pending, on January 3, 2019, BSI directed the Trustee to record a Notice of Trustee's Sale.  After BSI denied the Application on January 29, 2019, BSI re-recorded a second Notice of Trustee's Sale on March 12, 2019, setting the April 15, 2019, foreclosure sale date. **[ Notice of Sale, Exhibit "J"]**

107.   Civil Code, Section 2924.11, also provides in pertinent part that:

*(b) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower <u>identifying with specificity the reasons for the denial</u> and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer.*

108.   Here, BSI's January 29, 2019, letter, denying Plaintiff's Application, makes absolutely no sense!   If the Loan is only one-third of the Property value, then, this should be a good reason to grant a loan modification.

109.    As a direct and proximate result of Defendants' statutory violation, Plaintiff have suffered money damages in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.


## NINTH CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against BSI and Lender)

110.    Plaintiff re-allege and incorporate by reference each and every allegation above as though fully set forth herein.

111.    When Plaintiff followed-up with BSI regarding her January 17, 2019, and March 26, 2019, letters pointing out the errors in the Loan balance, a BSI representative told her "*We will review your letters carefully, and a specialist is performing a*

*reconciliation. If there are errors, then, it should be no problem in postponing the foreclosure sale.*" **[Notice of Error, Exhibit "F"], [Second Notice of Error, Exhibit H]**

112. Given the borrower-servicer and borrower-lender relationship which existed between Plaintiff and Defendants, the parties had duties to act in good faith and deal fairly with each other in performing their respective duties, such that the parties could reasonably attain the mutual benefits of their bargain.

113. Unfortunately, as detailed above, Defendants have acted in bad faith, in that despite being in receipt of Plaintiff's letter, and promising to perform a Loan reconciliation, Defendants are continuing to take steps towards a foreclosure sale scheduled for March 4 2020 **[BSI Financial Denial Letter, Exhibit "G"]**

114. Plaintiff has performed each and every obligation required to be performed by her under the oral agreement, except as excused by Defendants.

115. As a direct and proximate result of Defendants' breach of the implied covenant or good faith and fair dealing, Plaintiff has been damaged in an amount in excess of the minimum jurisdiction of this court, as will be proven at time of trial.

### TENTH CAUSE OF ACTION
**UNFAIR COMPETITION UNDER BUS. AND PROF. CODE,
SEC. 17200 AND 17500 ET SEQ.
(Against BSI and Lender)**

116. Plaintiff re-alleges and incorporate by reference each and every allegation above, as though set forth fully herein.

117. California Business and Professions Code, Section 17200, provides that:

*"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."*

118. California Business and Professions Code, Section 17500, provides that:

*"It is unlawful for any person, firm, corporation or association, or any employee thereof <u>with intent directly or indirectly</u> to dispose of real or personal property or <u>to perform
services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto,</u> to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, <u>which is untrue or misleading,</u> and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or
<u>disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.</u> Any violation of the provisions of this section
is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."*

119. As alleged above, Defendants BSI and Lender engaged in "unfair" acts, and an incompetent course of action, involving: (a) failing to designate a Single Point of Contact who was knowledgeable about the status of Plaintiff's Application, (b) failing to promptly postpone the foreclosure sale date upon confirming that Plaintiff's Application was complete, in compliance with the Homeowner's Bill of Rights, irrespective of when BSI would make a decision to approve or deny Plaintiff's Application, and (c) failing to properly process Plaintiff's Application under legitimate Loan Modification Guidelines.

120. Under the three-pronged "section 5 test"[2] defining an "unfair" act, Plaintiff alleges:

(a) **a substantial consumer injury** – here, despite Plaintiff's well-qualified

---

[2] This "Section 5" test is derived from the definition of "unfair" in Section 5 of the Federal Trade Commission Act. See 15 U.S.C. § 45, subd.(n). *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

Application, and the identified Loan errors, Plaintiff is facing an April 15, 2019, foreclosure sale;

(b) **that the injury outweighs any countervailing benefits to consumers or competition** – here, BSI's practices and procedures create no benefits to other consumers or free competition, which outweigh the harm being caused to Plaintiff; and

(c) **that the injury could not reasonably have been avoided** – here, Plaintiff is essentially forced to dealing with BSI.

121. BSI has engaged in "unfair" business practices by (a) offending the public policies of a fair review of a borrower's complete Application, without the imminent pressure of a foreclosure sale, as established by the Homeowner's Bill of Rights, and by (b) engaging in unethical, oppressive, and unscrupulous conduct that is substantially injurious to Plaintiff and other consumers. These factual allegations constitute a sufficient allegation of an "unfair" business practice under an alternative test applied by California courts. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.* (1999) 72 Cal. App. 4th 861.

122. Defendant BSI's unfair acts have resulted in substantial damages and injuries to Plaintiff in that she has not received an affordable loan modification; she has wasted time in attempting to process this Loan Modification Application; she has remained in the foreclosure process, which is costing her excessive interest rate charges, late fees, penalties and other foreclosure costs; and, she is now involved in this litigation, which is causing her to incur attorneys' fees and costs in order to protect her Property, all resulting in monetary damages.

123. The damages and injuries suffered by Plaintiff outweigh any countervailing benefits to other consumers or free competition resulting from BSI's conduct. Plaintiff

has been required to comply with the procedures dictated by Wells Fargo for processing an Application for a Loan Modification, therefore, Plaintiff injuries could not reasonably have been avoided.

124.    By their unfair actions, Defendants have engaged in unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code § 17200 and § 17500, *et seq.*, and, as a result, Plaintiff has suffered and will continue to suffer damages.

125.    As a direct and proximate result of Defendants' unfair, willful and intentional actions, Plaintiff have suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## PRAYER FOR RELIEF

**WHEREFORE,** in addition to the damages and relief alleged above in each cause of action, Plaintiff prays for the entry of Judgment against Defendants:

## ON ALL CAUSES OF ACTION

1. In light of Defendants' statutory violations, negligence and unfair competition, actual controversies now exist concerning the interpretation and effectiveness of the Assignment of the Deed of Trust, the Notice of Default, the Notice of Trustee's Sale, and the entire Trustee's foreclosure sale process.  Therefore, Plaintiff seeks a judgment declaring that Defendants have violated Plaintiff's rights, and that Defendants are not entitled, to foreclose upon Plaintiff' Property, whereas Defendants dispute this.

2. For recovery of the costs of suit; reimbursement of attorneys' fees incurred, interest on all damages at the maximum legal rate; and such other and further relief as the Court may deem just and proper.

Dated: May 31, 2020

Rilla Huml, Plaintiff

40

## VERIFICATION

I, Rilla Huml, an individual, am a Plaintiff in the above-entitled action. I have read the foregoing Verified Complaint against Servis One, et. al., and I know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

This Verification was executed at Aliso Viejo, California on May 31, 2020.

_____
Rilla Huml

## PROOF OF SERVICE

1

2    STATE OF CALIFORNIA, COUNTY OF ORANGE

3    I am the Plaintiff in the above action:

4    On May 31, 2020, I caused to be served the foregoing document(s):
     on the interested parties in this action and sent as follows:
5

6
     Cheryl Chang and Associates                                    BY E-FILE
7    Blank Rome, Atty. for Servis One                               and EMAIL
     D/B/A  BSI Financial
8    2029 Century Park East, 6th Floor
     Los Angeles, CA 90067
9
     Dean A. Reeves, Atty. for Wells Fargo                          BY E-FILE
10   Anglin Flewelling, Rasmussen, Campbell, & Trytten              and EMAIL
     301 N. Lake Avenue, Suite 1100
11   Pasadena, CA 91101-4158

12   Zieve, Brodnax, & Steele, LLP                                  BY E-FILE
     and on Behalf of Wilmington Savings Trust Fund Society         and EMAIL
13   30 Corporate Park, Ste 450
     Irvine, CA 92606
14

15   ✦    BY EMAIL:  As agreed by all parties, and as required by Federal Court mandate
          during the COVID-19 pandemic, by emailing a true copy thereof to the email
16        addresses as indicated.

17
     Executed on May 31, 2020, at Aliso Viejo, California
18                                                          _____
                                                            E-Filed by Rilla Huml, Plaintiff
19

20                                                          _____
                                                            E-MAILED by Amir Oreyzei
21

22

23

24

25

26

27

28

THIRD AMENDED COMPLAINT (Huml vs Servis One, Wells Fargo Bank, N.A)

Case 8:20-cv-00493-DOC-KES   Document 29-1   Filed 05/31/20   Page 196 of 225   Page ID #:235

1

2

3

4

5

6

7

# EXHIBIT "A"

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mail Workflow

FEB 1 0 2014

# HOME AFFORDABLE MODIFICATION AGREEMENT

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

Borrower ("I"):  **RILLA HUML**

Lender ("Lender"):  **Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.**

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):  **03/24/2004**
Loan Number:  **0022061402**
Property Address ("Property"):  **25 MEDICI**
**ALISO VIEJO, CA 92656**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B.  I live in the property as my principal residence, and the Property has not been condemned; or

    if I was displaced, but the property qualifies as "owner occupied" then I certify that (i) I lived in the Property as a principal residence immediately prior to my displacement, (ii) I intend to re-occupy the Property as a principal residence in the future, (iii) I do not own any single-family real estate other than the Property, and (iv) the Property has not been condemned; or

    If the Property is a rental property that does not qualify as "owner-occupied" then this representation applies. The certification I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned.

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program")).

Loan Number 0022061402

    E  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

    F  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G  I have made or will make all payments required under a trial period plan.

    H  If I received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, then this representation applies. I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

    C  If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under the trial period plan, this modification will not take effect. The first modified payment will be due on 11/01/2013.

    A  The new Maturity Date will be: 10/01/2053.

    B  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. less amounts forgiven or waived for NSF fees and outstanding, uncapitalized interest. The new principal balance of my Note will be $216,301.34 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C  Interest at the rate of 4.125% will begin to accrue on the Interest Bearing Principal Balance as of 10/01/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 11/01/2013. My payment schedule for the modified Loan is as follows:

Loan Number 1022961402

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-40 | 4.75% | 12/01/2013 | $920.09 | $336.76 May adjust periodically | $1,257.85 May adjust periodically | 1/01/2013 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents including but not limited to, provisions for an adjustable, step or simple interest rate

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4  **Additional Agreements.** I agree to the following

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents) or (iii) the Lender has waived this requirement in writing

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or workout plan that I previously entered into with Lender

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under the Loan Documents, (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents, and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event

Page 3 of 6

Loan Number 8022061402

of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect, nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents, and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows. If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option require immediate payment in full of all sums secured by the Mortgage. However Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall

Loan Number 807286[...]

give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn-St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Modification Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan, (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s), (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program, and (v) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests

Loan Number 0022061802

of me under this Section 4 N shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P   If your mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule. To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled. You need to complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting.

Q   If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Wells Fargo Bank, N.A.  
Lender

_____ 1/30/14 (Seal)  
RILLA HUML          Date

By _____  
**Bao Kee Yang**  
Vice President Loan Documentation

2-27-14  
Date

# THIS SPACE LEFT BLANK INTENTIONALLY

1
2
3
4
5
6
7                    EXHIBIT  "B"
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**WELLS FARGO** | **HOME MORTGAGE**

June 10, 2013                    Loan Number: 0022061402


Rilla Huml
25 Medici
Aliso Viejo, CA 92656 1475


Re: 25 Medici, Aliso Viejo CA 92656
    Case Number: 13-11072

Dear Rilla Huml :

Wells Fargo Home Mortgage has reviewed the above referenced loan for
eligibility under the Home Affordable Modification Program (HAMP).
We are pleased to offer you a Trial Period Plan.

The attached Trial Period Plan outlines the due dates and amounts of the
new trial period payments (these will temporarily replace the current
mortgage payments during the HAMP Trial Period Plan).  Also, enclosed are
Frequently Asked Questions and Important Program Information.  Please
review all this information carefully.  To accept this offer, please
call me at the phone number listed below no later than 14 calendar days
from the date listed at the top of the Trial Period Plan or send in the
first monthly trial period payment instead of the normal monthly
mortgage payment.  If you do not contact me within 14 days or send in
the monthly payment by the due date, you will no longer be eligible for
this offer.  During the 14 day period (when your application is pending)
the foreclosure process will not move forward.

If you do not call to accept the offer within 14 days or send in the
first payment by the due date, the foreclosure process will move
forward.  We will continue to work with you to help avoid a foreclosure
sale. However, please understand that if the loan has not yet been
referred to foreclosure that process could begin at any time.  If the
mortgage has been referred to foreclosure, as part of the foreclosure
process, you may receive notices from a third-party attorney delivered
by mail, or see steps being taken to proceed with a foreclosure sale of
the property.  During the HAMP Trial period, a foreclosure sale will not
be held as long as you comply with the terms of the Trial Period Plan
and make all the payments on time.

If the bankruptcy automatic stay is not in place and the loan was
previously referred to foreclosure, Wells Fargo Home Mortgage will halt
the foreclosure process once the Trial Period Plan is accepted as long
as trial plan payments are timely made.  If you do not comply with the

BK015 009 JSS

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801                    0000 001044  L 11740



**WELLS FARGO | HOME MORTGAGE**

Rilla Huml
June 10, 2013
Page 2

terms of the Trial Period Plan, you will be sent a Non-Approval Notice.
In most cases, you will have 30 days to review the reason for
non-approval and contact us to discuss any concerns you may have.

Please note: As a result of your bankruptcy case, this letter is not an
attempt to collect a debt from you or in any way violate any provision
of the United States Bankruptcy Code. This letter has been sent to you
for informational purposes only. This is not a bill or a request for
payment, or a statement that you are personally obligated in any way to
make a payment. Your decision to discuss workout options with Wells
Fargo Home Mortgage is strictly voluntary. You are not obligated to
pursue any workout options discussed with us. At your request, we will
immediately terminate any such discussions should you no longer
wish to pursue these options.

Your credit score - When you become past due on mortgage payments, it's
important to understand that the actions you take to correct the
situation can affect your credit score. If a loan modification is
chosen, your credit score could be negatively impacted during the Trial
Period Plan, but it may not be as impacted as an ongoing series of late
payments or foreclosure. During that process, we are required to
continue to report the delinquency status of the loan to the credit
reporting agencies as "paying under a partial or modified payment
agreement". When you are approved for a permanent loan modification,
the modification process is complete and is recorded on your credit
report as "loan modified" as long as you make the permanently modified
payments on time. Keep in mind that the degree of impact to your credit
score depends on your overall credit circumstances and is different for
each individual. We are required by the Fair Credit Reporting Act
(FCRA) to accurately report the status of the loan to the credit
bureaus. For more information about your credit scores, go to
http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm

If I can be of further assistance, please call the number listed below.
A Home Preservation Specialist is available to assist you Monday-Friday,
8 AM to 5 PM, Central Time at 877-270-3616.

Sincerely,

JESSICA TRAHAN
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-270-3616
Ext: 03455
Fax: 1-800-313-0892

c: AMRANE COHEN

BK015 009 JSS



**HELPING YOU STAY IN YOUR HOME.**

MAKING HOME AFFORDABLE SM

WELLS FARGO | HOME MORTGAGE

**You may be able to make your payments more affordable!**
**Call 1-877-270-3616 ext. 03455 for Immediate Assistance.**

June 10, 2013

RILLA HUML
25 MEDICI
ALISO VIEJO, CA 92656

Loan Number: 0022061402

Dear RILLA HUML:

**Congratulations!** You are approved to enter into a trial period plan under the federal government's Home Affordable Modification Program. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

**What you need to do...**
To accept this offer please call me at the phone number listed below no later than 14 calendar days from the date listed at the top of this letter or send in your first monthly trial period payment instead of your normal monthly mortgage payment. If you do not contact me within 14 days or send in your monthly payment by the due date, you will no longer be eligible for this offer. During the 14 day period (when your application is pending) the foreclosure process will not move forward. Send your monthly trial period payments instead of your normal monthly mortgage payments as follows:

> 1st payment: $ 1281.49 by 08/01/13
> 2nd payment: $ 1281.49 by 09/01/13
> 3rd payment: $ 1281.49 by 10/01/13

If you do not call to accept the offer within 14 days or send in your first payment by the due date, the foreclosure process will move forward. We will continue to work with you to help you avoid a foreclosure sale. However, please understand that if you have not yet been referred to foreclosure, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, or see steps being taken to proceed with a foreclosure sale of your home. During the HAMP Trial period, a foreclosure sale will not be held as long as you comply with the terms of the trial period plan and make all your payments on time.

After all trial period payments are timely made and you have submitted all the required documents, your mortgage would then be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) **If each payment is not received by Wells Fargo Home Mortgage in the month in which it is due, this offer will end and your loan will not be modified under the Making Home Affordable Program.**

If you have received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, you will not have personal liability on the debt pursuant to this Agreement. This is not a reaffirmation agreement.

Attachments: (1) Frequently Asked Questions; (2) Additional Trial Period Plan Information and Legal Notices; (3) Trial Period Plan Notice (Verified Income)

The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

If you have any questions or if you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home but still want to avoid foreclosure, please call me at 1-877-270-3616 ext. 03455 as we may be able to help you. (Also, please review the attached "Frequently Asked Questions")

Sincerely,

JESSICA TRAHAN
Home Preservation Specialist
Wells Fargo Home Mortgage
Phone Number: 1-877-270-3616 ext. 03455

---

**Get free counseling to help manage expenses and avoid foreclosure.** Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to **www.hud.gov/offices/hsg/sfh/hcc/fc.** Or call 1-800-569-4287.
Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

---

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights against the property.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT   "C"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

* $ R 0 0 0 9 0 8 2 3 1 1 $ *
2017000076245 8:51 am 02/23/17
65 401 A32 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
"HUML"

PREPARED BY: WELLS FARGO BANK, N.A.

# RECORD 1ST

For Value Received, WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to WELLS FARGO BANK SOUTH CENTRAL, N.A. at 2005 TAYLOR ST, HOUSTON, TX  77077 all its interest under that certain Deed of Trust dated 03/24/2004 , in the amount of $200,000.00, executed by RILLA HUML, AN UNMARRIED WOMAN to WORLD SAVINGS BANK, FSB and Recorded: 03/29/2004  as Instrument No.: 2004000254970 in the County of Orange, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB
On  2-21-17

_____
Kristoffer Michael Pumarlo
Vice President Loan Documentation

STATE OF  Minnesota
COUNTY OF  Dakota

On  2/21/2017 , before me,  Jennifer Rae Anderson , a Notary Public in the State of
Minnesota , personally appeared  Kristoffer Michael Pumarlo , Vice President Loan
Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jennifer Rae Anderson
Notary Expires:  1/31/2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

(This area for notarial seal)

*CMK*CMKWFEM*02/15/2017 06:54:03 AM* WFEM02WFEMA00000000000000001546195* CAORANG* CASTATE_TRUST_ASSIGN_ASSN_**KP6WFEM*

1
2
3
4
5
6
7

# EXHIBIT  "D"

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  9.00
* $ R 0 0 0 9 0 8 2 3 1 2 $ *
2017000076246 8:51 am 02/23/17
65 401 A32 F13  1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Orange, California
"HUML"

PREPARED BY: WELLS FARGO BANK, N.A.

# RECORD 2nd

For Value Received, WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION hereby grants, assigns and transfers to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE BROUGHAM FUND I TRUST at 13266 BYRD STREET, #447, ODESSA, FL 33556 all its interest under that certain Deed of Trust dated 03/24/2004 , in the amount of $200,000.00, executed by RILLA HUML, AN UNMARRIED WOMAN to WORLD SAVINGS BANK, FSB and Recorded: 03/29/2004 as Instrument No.: 2004000254970 in the County of Orange, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK SOUTH CENTRAL, NATIONAL ASSOCIATION
On  2-21-17

_____
Kristoffer Pumarlo
Authorized Individual

STATE OF    Minnesota
COUNTY OF  Dakota

On  2/21/2017  , before me,  Jennifer Rae Anderson  , a Notary Public in the State of
Minnesota , personally appeared  Kristoffer Pumarlo  , Authorized Individual,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jennifer Rae Anderson
Notary Expires: 1/31/2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

(This area for notarial seal)

"CMK"CMKWFEM*02/15/2017 08:54:00 AM* WFEM02WFEMA00000000000000001548368* CAORANG* CASTATE_TRUST_ASSIGN_ASSN.**KP6WFEM*

Case 8:22-cv-00878-DOC-KES Document 1e21 Filed 03/10/23 Page 241 of 277 Page
Case 8:20-cv-00489-DOC-KES Document 192-1 Filed 05/31/23 Page 174 of 212 Page
ID #:5251
ID #:554

EXHIBIT "E"

BSI Financial Services                                        January 17, 2019
Attn: Qualified Written Requests
P.O. Box 517
314 S. Franklin Street Titusville, PA 16354

Notice Re: Loan #0483678447
Rilla Huml
25 Medici
Aliso Viejo, CA 92656

## NOTICE OF ERROR, REQUEST FOR DEBT VALIDATION, QUALIFIED WRITTEN REQUEST FOR INFORMATION

Pursuant to FDCPA, Fair Debt Collection Practices Act  and FCRA, Fair Credit Reporting Act, and RESPA, the following claims apply:

. Failure to apply accepted payments to principal, interest, or escrow under the terms of the mortgage loan and applicable law.

. Failure to credit payments to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

. Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

. Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

Dear Sir or Madam:

BSI Financial, is the servicer of a mortgage loan at the above address. I dispute the amount that you claim is owed according to the monthly billing statement and recorded in a Notice of Sale. I request that you send information about the fees, costs, and escrow accounting on my loan since you became the servicer in 2016. Please treat this as a "Request for Information" and "Notice of Error" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)).

Specifically I am requesting the following information:

1. Validation that BSI Financial has the servicing rights, assignment, original agreement that bears signature of debtor, and original promissory note with original creditor.

2. A payment history or schedule that can be easily understood listing the dates and amounts of all payments and transactions credited or debited to my account, including any escrow account and any suspense account, and showing how they have been applied or credited, or, if not applied, showing how they have been treated;

3. A breakdown of the amount of claimed arrears or delinquencies on my account, including an itemization of all fees and charges you claim are currently due;

4. An explanation of how the amount of post-petition payments, made directly to BSI Financial during bankruptcy, were calculated, and why the Monthly Billing Statement dated 12/2018 reflects post-petition payments of 0, and an explanation of why this amount does not reflect $11,200 in bankruptcy payments made directly to the court; An explanation of why the most recent statement reflects $14,000 of unpaid post-petition payments, and an explanation of why the amount recorded in the Notice of Sale dated January 2, 2019, has been increased by $14,000.

5. The exact sum and breakdown of disbursement of funds received from KeepYour Home California, Cal/HFA on behalf of homeowner Rilla Huml, and an explanation as to why a KYHC loan to Wells Fargo Mortgage in the amount of 31,000 reflects an equity cash-out to BSI Financial in the amount of 54,000, as a lien on title and in public records.

6. The payment dates, purpose of payment, and recipient of any and
   all foreclosure fees and costs that have been charged to my
   account or have been advanced on my behalf since the date BSI
   Financial took over servicing.

7. The payment dates, purpose of payment, and recipient of all
   escrow items charged to my account since the date BSI Financial
   took over the servicing;

8. A breakdown of the current escrow charge showing how it is
   calculated and the reasons for any increase within the last twenty-
   four months;

9. A copy of any annual escrow statements, and notices of a
   shortage, deficiency, or surplus, that were sent to me within the
   last three years;

10. Any notes created by your personnel reflecting communications
    with me about my mortgage account;

*BSI Financial has an obligation to address and correct the items listed in the Notice of
Error, and does not have authority to proceeding with the foreclosure process while
financial inaccuracies are pending resolution, which would in fact significantly alter the
status of the loan.*

Thank you for taking the time to acknowledge and answer this request as required by
the Real Estate Settlement and Procedures Act (section 2605(e)).

*Very truly yours,*

Rilla Huml

1
2
3
4
5
6
# EXHIBIT  "F"
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 BSI Financial
Services

314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb com/BSI

## NON-APPROVAL, NOT ELIGIBLE FOR ALTERNATIVE TO FORECLOSURE

January 29, 2019

[Sent Via First Class Mail/FedEx/Fax/Etc.]

RILLA HUML
25 MEDICI
ALISO VIEJO, CA  92656

Re:  Result Following Review of Loss Mitigation Application
Property Address - 25 MEDICI
ALISO VIEJO, CA 92656
Loan #: 1433678447

Dear RILLA HUML:

Thank you for contacting us about your mortgage. Our review of your financial and other information indicates that although you may have a hardship, you do not qualify for a loan modification. Please contact our Customer Service Department for reinstatement or payoff figures.

If you have questions about your mortgage payment, please contact us at 1-800-327-7861. If you have concerns about the evaluation of your mortgage for foreclosure alternatives, then please contact JAMIE TAYLOR at 1-866-581-4514 Ext. 154.

The following details the specific reason(s) for this:
- Your Loan to Value ratio of 33.67% exceeds acceptable limits. Your loan will remain denied due to Loan to Value.

The following foreclosure prevention alternatives may be available to you:
- Payoff
- Reinstatement
- Deed in Lieu

### Right to Appeal

You have the right to appeal our determination not to offer you the loan modification option(s) listed above. If you would like to appeal, you must contact us in writing at the address provided below, no later than **February 28, 2019**, and state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You may also specify the reasons for your appeal, and provide any supporting documentation. Your right to appeal expires

**Licensed as Servis One, Inc. dba BSI Financial Services**
BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon  - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET) If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "G"

THIRD AMENDED COMPLAINT (Huml vs Servis One, Wells Fargo Bank, N.A)

BSI Financial Services
Attn: Qualified Written Requests
314 S. Franklin Street
Titusville, PA 16354

Second Notice Re: Loan #0483678447

Rilla Huml
25 Medici
Aliso Viejo, CA 92656

March 26, 2019

**SECOND NOTICE OF ERROR, REQUEST FOR DEBT VALIDATION, QUALIFIED WRITTEN REQUEST FOR INFORMATION**

Pursuant to FDCPA, Fair Debt Collection Practices Act and FCRA, Fair Credit Reporting Act, and RESPA, the following claims apply:

. Failure to apply accepted payments to principal, interest, or escrow under the terms of the mortgage loan and applicable law.

. Failure to credit payments to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

. Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

. Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

Dear Sir or Madam:

On January 17, 2019, notice was provided to BSI Financial, the servicer of a mortgage loan at the above address, that there are significant errors in the balance transferred from Wells Fargo in March of 2017, and subsequently numerous accounting errors between March 2017 and March 2019.

As previously stated, I dispute the amount that you claim is owed according to the monthly billing statement and recorded in a Notice of Sale. I request that you pause any sale activity until the amount claimed due is properly investigated and either appropriately corrected or validated in full detail. Please treat this as a "Request for Information" and "Notice of Error" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)).

Specifically I am requesting the following information:

1. Validation that BSI Financial has the servicing rights, assignment, original agreement that bears signature of debtor, and original promissory note with original creditor.

2. The exact account balance transferred to BSI Financial on March 21, 2017, including a detailed summary of all amounts, including payments applied, outstanding balance, escrow, fees, and unapplied payments, and credits. and, if not applied, showing how they have been treated;

3. Previously requested with inadequate response: A detailed breakdown of the

mortgage account;

9. Explanation as to why BSI Financial has provided me a copy of a confidential loan document as a prior response, Heloc account #0030037147, that is not a loan that BSI is servicing, or has ever serviced, and is in violation of security.

10. It is imperative that I be assigned a new One Point of Contact to assist with communication relating to this matter, as the existing OPOC has failed to perform or cooperate, and has displayed unprofessionalism.

BSI Financial has an obligation to address and correct the items listed in the Notice of Error, and does not have authority to proceeding with the foreclosure process while financial inaccuracies are pending resolution, which would in fact significantly alter the status of the loan and invalidate the need for any foreclosure proceedings.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement and Procedures Act (section 2605(e)).

Very truly yours,

Rilla Huml

Case 8:22-cv-00373-DOC-KES   Document 1-2   Filed 03/10/22   Page 250 of 277   Page
ID #:963
Case 8:20-cv-00493-DOC-KES   Document 29-2   Filed 05/31/20   Page 40 of 130   Page ID #:260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "H"

Mr. Steven Coleman
BSI Financial Services

March 26, 2019

Dear Mr. Coleman,

I am reaching out to you in an effort to initiate a resolution of critical financial errors in the accounting of loan #1433678447. The loan was sold, and servicing was transferred from Wells Fargo to BSI Financial on 2/21/2017. I provided a Notice of Error to BSI Financial on January 18, 2019. I received a response to the Notice of Error recently, on March 15, 2019. A recent payoff statement identified some of the discrepancies in the accounting, and other calculations provided are vague and ambiguous, categorized simply as fees or unapplied funds. The answers I was seeking were not provided in the response to my Notice of Error.

I am not sure if the appropriate action is to initiate another new Notice of Error, or to designate an individual at BSI, that is qualified and cooperative with me, to investigate the specific discrepancies and correct any errors identified. I have been told that my one point of contact is remains Jamie Taylor. My request to Jamie for assistance regarding the financial discrepancies on March 19th was met with a disrespectful, uncooperative attitude. She told me to file a new NOE. She stated that if she thought *my information was relevant, she would forward it to someone. The conversation* ended with Jamie telling me she would note the file that I would be getting an attorney, and then she hung up on me. Due to the importance and urgency of the matter, It is imperative that I be assigned someone at a higher level that handles such matters with respect.

The modification request submitted by Coast Realty to Jamie Taylor was inappropriately handled and therefore must be considered void. Here are the violations:

> 1) *Although they had all the records and initiated the modification request,* Coast Realty was told to cease communication with BSI and directed all correspondence to me.
> 2) The review was completed within 2 business days, insufficient time-frame to provide to the lender and make an informed decision.
> 3) Jamie asked me to <u>pay $12,000</u> to the lender for a modification <u>prior to submission.</u>
> 4) The appeal was denied the same day the appeal was received in the mail. I sent a copy to Jamie by email. The lender would not have had time to receive and sort the mail by the time the denial was sent.

In response to the NOE, I was provided a copy of the original loan documents for a loan that BSI does not service, and due to confidentiality should not have in its

possession, loan #0030037147 by World Savings.  I believe this is a breach of confidentiality.

The account #1433678447 has an inadvertent outstanding balance on paper of *approximately $16,400*.  *There is a sale date scheduled for 4/15/2019.*  *It is unlawful to attempt to sell a property and collect a sum of money that is inaccurate and excessive.  It is unlawful to add fees and attorney fees for a sum of money that is inaccurately calculated and inadvertently billed.*  When all accounting errors have been identified and corrected, there would be NO OUTSTANDING DEBT to dispute, collect on, or threaten a sale for.  This is not the first request to address and make these corrections.  Here are the financial errors that have not been corrected:

The identified financial errors are as follows:

- Wells Fargo Payment, October 2016 actual <u>36,000</u> vs credited <u>$31,000</u> = $5,000 credit deficit
- Wells Fargo's transferred balance: actual <u>$204,890</u> vs transferred <u>$208,846</u> = $3,956 credit deficit
- Taxes are included in the total monthly payment, ($256) and are identified as being billed separately in addition to the monthly payment.
- Several payments paid directly to BSI during bankruptcy in 2018 in the amounts of $1,190, and $958., are listed as "Miscellaneous Receipt" instead of payment.
- There are unapplied funds in the amount of $3,540.
- There are charges for fees in the amount of of $3,900. A very small portion of that amount has accounted for in BSI's explanations.
- The calculations provided to me (a chart showing payments received) in response to the NOE, have inaccurate totals and inaccurate dates, and are listed as "Arrears Credits"., but are not reducing the balance.

The outstanding debt is noted in the reinstatement quote are:  $ 16,400
Outstanding financial errors/credits estimation:          $ 15,846

I am seeking an amicable resolution.  Once the accounting is 100% accurate and all errors are corrected or satisfied, I intend to reinstate the loan and pay any legitimate outstanding balance I owe. The research may need to include applicable records from the prior servicer from October 2016 until the transfer on 2/21/17.  It is imperative that the sale date of April 15, 2019 be postponed until a fair and amicable resolution for both parties can be achieved.  Thank you for your prompt attention to this matter.

Sincerely,

Rilla Huml
Account # 1433678447
dreamlife7@att.net, 949-933-7075

1
2
3
4
5
6
7

# EXHIBIT "I"

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**18.00**

\* $ R 0 0 0 9 6 5 8 3 9 6 $ \*

**2017000455334 10:35 am 10/26/17**

7 405 N15 F13   4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
**Zieve, Brodnax & Steele, LLP**

WHEN RECORDED MAIL TO:

**Zieve, Brodnax & Steele, LLP**
30 Corporate Park, Suite 450
Irvine, CA 92606

---

TS No.: 17-49168
APN: 934-50-279

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___**$6,928.12**___ as of ___**10/25/2017**___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
TS No. 17-49168

However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST , NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR B ROUGHAM FUND I TRUST**
**c/o BSI FINANCIAL SERVICES**
**Phone: 814-827-3241**
**C/O Zieve, Brodnax & Steele, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: (714) 848-7920**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Zieve, Brodnax & Steele, LLP is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 3/24/2004, executed by RILLA HUML, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of WORLD SAVINGS BANK, FSB as Beneficiary, recorded 3/29/2004, as Instrument No. 2004000254970 of Official Records in the Office of the Recorder of Orange County, California describing land therein as: **As more particularly described on said Deed of Trust.**

The subject obligation includes **NOTE(S) FOR THE ORIGINAL** sum of **$200,000.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**The monthly installment which became due on 6/1/2017, along with late charges, and all subsequent monthly installments.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. 17-49168

Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.

Dated: 10/25/2017                    Zieve, Brodnax & Steele, LLP, as Trustee

Michael Busby, Trustee Sale Officer

## Declaration of Mortgage Servicer Pursuant to

### Civil Code § 2923.55 (c)

Borrower(s): RILLA HUML

Mortgage Servicer: BSI Financial Services

Property Address: 25 MEDICI ALISO VIEJO CA 92656

T.S. No: 1433678447 /

The undersigned, as an authorized agent or employee of the mortgage servicer named below declares that:

1. ☑ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2329.55 (b) (2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ Despite the exercise of due diligence pursuant to California Civil Code §2923.55(f), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section §2920.5.

4. ☐ The requirements of Cal. Civil Code §2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate that borrower's default and the right to foreclose, including the borrower's loan status and loan information

10/23/17                           BSI Financial Services

Date                               Mortgage Servicer

                                   By:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "J"

[RECORDING REQUESTED BY]
Zieve, Brodnax & Steele, LLP

[WHEN RECORDED MAIL TO:]
Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 87.00
* S R 0 0 1 0 5 6 3 9 6 6 $ *
2019000002187 2:18 pm 01/03/19
63 406 N34  2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

T.S. No. 17-49168                APN: 934-50-279          [SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO**
*BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE*
**COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/24/2004. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state will be held by the duly appointed trustee as shown below, of all
right, title, and interest conveyed to and now held by the trustee in the hereinafter described property
under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or
warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining
principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as
provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges
*and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale)*
reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **RILLA HUML, AN UNMARRIED WOMAN**
Duly Appointed Trustee: Zieve, Brodnax & Steele, LLP  Deed of Trust recorded 3/29/2004, as Instrument
No. 2004000254970, of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**2/4/2019** at 3:00 PM
Place of Sale:       On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange,
                     CA
Estimated amount of unpaid balance and other charges: **$221,748.59**

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of real property:

**25 MEDICI
ALISO VIEJO, CA 92656 AKA
25 MEDICI
LAGUNA HILLS, CA 92656**

Described as follows:
 As more fully described on said Deed of Trust.

A.P.N #.: **934-50-279**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 17-49168.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Dated:  **1/2/2019**        **Zieve, Brodnax & Steele, LLP, as Trustee
30 Corporate Park, Suite 450
Irvine, CA 92606
For Non-Automated Sale Information, call: (714) 848-7920
For Sale Information: (714) 848-9272  www.elitepostandpub.com**

**Andrew Buckelew, Trustee Sale Assistant**

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

Case 8:22-cv-00878-DOC-KES   Document 1-2   Filed 03/10/22   Page 261 of 277   Page
ID #:5741
Case 8:20-cv-00489-DOC-KES   Document 192   Filed 05/31/22   Page 13 of 18   Page ID
#:5741

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "K"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

2015000566820 8:00 am 11/02/15
217 402 S15 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording requested by:
Clear Recon Corp.

**Title365**

When Recorded Mail To:
Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

Trustee Sale Number: 035394-CA
APN: **934-50-279**

Space above this line for Recorder's use only

### SUBSTITUTION OF TRUSTEE

WHEREAS, **RILLA HUML, AN UNMARRIED WOMAN** was the original Trustor, **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION** was the original Trustee, and **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES** was the original Beneficiary, under that certain Deed of Trust dated **3/24/2004** and recorded on 3/29/2004, as Instrument No. 2004000254970 of official records of **Orange** County, **California**; and WHEREAS, the undersigned is the present Beneficiary ("Beneficiary") under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under the said Deed of Trust in place and stead of said present Trustee. NOW, THEREFORE, the Beneficiary hereby substitutes, **CLEAR RECON CORP.**, whose address is: **4375 Jutland Drive Suite 200, San Diego, California 92117**, as Trustee so long as in accordance with the Deed of Trust and applicable law. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:

_10/28/15_

**WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER TO WACHOVIA MORTGAGE, FSB F.K.A. WORLD SAVINGS BANK, FSB**

**By Andrea Whitney of the firm Aldridge Pite, LLP as its attorney in fact**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ **CALIFORNIA** _____ )
County of _____ **SAN DIEGO** _____ )

On _**OCT 28 2015**_ , before me _____ **Silver De Vera** , Notary Public, personally appeared **ANDREA WHITNEY** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ **CALIFORNIA** _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Silver De Vera**

OFFICIAL SEAL
SILVER DE VERA
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2110957
SAN DIEGO COUNTY
MY COMM. EXP. MAY 10, 2019

003-CA-V5

TS No.: 035394-CA

Case 8:22-cv-00878-DOC-KES   Document 192   Filed 05/10/23   Page 263 of 277   Page
ID #:5763
Case 8:20-cv-00489-DOC-KES   Document 192   Filed 05/31/23   Page 1 of 18   Page ID #:5763

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "L"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$R0009658395S*

2017000455333 10:35 am 10/26/17

7 405 S15 F13  1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

9.00

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions
Fidelity National Title

AND WHEN RECORDED MAIL TO:
Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606

TS No.: 17-49168

# SUBSTITUTION OF TRUSTEE

**WHEREAS, RILLA HUML, AN UNMARRIED WOMAN** was the original Trustor, **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION** was the original Trustee, and **WORLD SAVINGS BANK, FSB** was the original Beneficiary under that certain Deed of Trust dated 3/24/2004 and recorded on 3/29/2004, as Instrument Number 2004000254970 of Official Records of Orange County, **California**; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **Zieve, Brodnax & Steele, LLP, 30 Corporate Park, Suite 450, Irvine, CA 92606** as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 10/23/17

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST , NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR B ROUGHAM FUND I TRUST, by Servis One, Inc. dba BSI Financial Services, its attorney in fact**

By: _____
By: Karin Murphy, AVP

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of TEXAS

County of DALLAS

On 10/23/17 before me, Markela Black Notary Public, personally appeared Karin Murphy, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MARKELA BLACK
Notary Public, State of Texas
Comm. Expires 03-17-2021
Notary ID 131050173

Exhibit E

JS-6

1     UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA

3

4     RILLA HUML, an individual,

5              Plaintiff,

6          v.

7     SERVIS ONE, INC., a Delaware
      corporation, authorized to do business
8     California, doing business as BSI
      FINANCIAL SERVICES;
9     WILMINGTON SAVINGS FUND
      SOCIETY, FSB, a Delaware
10    corporation, doing business, but not
      authorized to do business, as
11    CHRISTINA TRUST, in California, as
      Trustee, for BROUGHAM FUND I
12    TRUST, an unknown entity, ZIEVE,
      BRODOX & STEELE, LLP, a
13    California Limited Partnership; WELLS
      FARGO BANK, N.A., S/B/M
14    WACHOVIA MORTGAGE, FSB
      F/K/A WORLD SAVINGS BANK,
15    FSB; WELLS FARGO BANK SOUTH
      CENTRAL, N.A.; and DOES 1 through
16    10, inclusive
17             Defendants.
18
19

| CASE NO.: 8:20-cv-00489-DOC-KES |
| --- |
| *[Assigned to the Hon. David O. Carter]* |
| **JOINT JUDGMENT AS TO SERVIS ONE, INC. DOING BUSINESS AS BSI FINANCIAL SERVICES, WELLS FARGO BANK, N.A., S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB, AND WELLS FARGO BANK SOUTH CENTRAL, N.A.** |

20

21

22         This action was initially filed on April 8, 2019 in the Superior Court of the

23    State of California for the County of Orange ("State Court") as Case No. 30-2019-

24    01062402-CU-OR-CJC.

25         1.      On January 22, 2020, the State Court sustained demurrers to the First

26    Amended Complaint without leave to amend as to the following causes of action

27    against defendant Wells Fargo Bank, N.A., successor by merger with Wells Fargo

28    Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank,

1

FSB and Wells Fargo Bank South Central, N.A. (collectively "Wells Fargo") that were alleged in the First Amended Complaint:

      a.  Second cause of action for violation of 12 C.F.R. § 1024.17 and § 1024.17(f) and (i), violation of Regulation X, misappropriation of escrow funds; failure to provide annual escrow disclosure statements lender failure to provide annual escrow funds statement; and

      b.  Third cause of action for violation of 12 C.F.R. § 1014.14 lender failure to prohibit kickbacks and unearned fees.

2.     On March 1, 2020, defendant Servis One, Inc. dba BSI Financial Services ("BSI") removed the case to federal court. (Dkt. 1).

3.     On May 18, 2020, the Court granted Wells Fargo's motion to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) and dismissed the following causes of action against Wells Fargo with prejudice (Dkt. 28):

      a.  First cause of action for violation of 12 C.F.R. § 1026.39 (for lender failure to provide proper mortgage transfer disclosures);

      b.  Third cause of action for invalid assignment of the deed of trust;

      c.  Fifth cause of action for gross negligence;

      d.  Sixth cause of action for negligence; and

      e.  Seventh cause of action for an accounting.

4.     On August 7, 2020, the Court granted Wells Fargo's motion to dismiss the Third Amended Complaint under Fed. R. Civ. P. 12(b)(6) and dismissed the following cause of action against Wells Fargo with prejudice (Dkt. 51): Second cause of action for fraud and fraud in the inducement.

5.     On January 29, 2021, the Court granted Wells Fargo's motion for judgment on the pleadings and granted BSI's motion to join Wells Fargo's motion. (Dkt. 84). The Court found judgment on the pleadings for Wells Fargo and BSI and ruled:

1       a.  Wells Fargo is entitled to judgment on the third cause of action

2           against Wells Fargo for violation of 12 C.F.R. § 1024.33(c);

3       b.  BSI is entitled to judgment on the first cause of action against BSI for

4           violation of § 1026.39, provision of Regulation X under the Truth in

5           Lending Act;

6       c.  BSI is entitled to judgment on the fourth cause of action against BSI

7           for negligence;

8       d.  BSI is entitled to judgment on the fifth cause of action against BSI for

9           an accounting;

10      e.  BSI is entitled to judgment on the sixth cause of action against BSI for

11          violation of Civil Code § 2923.5;

12      f.  BSI is entitled to judgment on the seventh cause of action against BSI

13          for violation of Civil Code § 2923.7;

14      g.  BSI is entitled to judgment on the eighth cause of action against BSI

15          for violation of Civil Code § 2924.11;

16      h.  BSI is entitled to judgment on the ninth cause of action against BSI

17          for breach of the implied covenant of good faith and fair dealing in the

18          Loan agreement; and

19      i.  BSI is entitled to judgment on the tenth cause of action for violations

20          of §§ 17200 and 17500 of the California Business & Professions

21          Code.

22    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

23    1.  Judgment is entered in favor of Wells Fargo and BSI against plaintiff

24       Rilla Huml.

25    2.  This action is dismissed with prejudice as to BSI and Wells Fargo.

26

27

28

1    SO ORDERED.

2

3

4    DATED:  _____September 10, 2021_____      *David O. Carter*

5                                              HON. DAVID O. CARTER
                                               UNITED STATES DISTRICT JUDGE

6

7    Pursuant to the Court's order, this judgment is jointly submitted by:

8    Dated:  February 5, 2021          ANGLIN FLEWELLING & RASMUSSEN LLP

9

10                                      By:  */s/ Leigh O. Curran*

11                                          Leigh O. Curran
                                            Attorneys for Defendants WELLS FARGO
12                                          BANK, N.A., successor by merger with
                                            Wells Fargo Bank Southwest, N.A., f/k/a
13                                          Wachovia Mortgage, FSB, f/k/a World
                                            Savings Bank, FSB and WELLS FARGO
14                                          BANK SOUTH CENTRAL, N.A.
15

16

17   Dated:  February 5, 2021          BLANK ROME LLP

18

19                                      By: */s/ Nicole Bartz Metral*
                                            Cheryl S. Chang
20                                          Nicole Bartz Metral
                                            Jessica McElroy
21                                          Erika Schulz
                                            Attorneys for Defendant SERVIS ONE,
22                                          INC. DBA BSI FINANCIAL SERVICES
23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 301 North Lake Avenue, Suite 1100, Pasadena, California 91101-4158.

    On the date below, I served the foregoing document(s) described as: **JOINT [PROPOSED] JUDGMENT AS TO SERVIS ONE, INC. DOING BUSINESS AS BSI FINANCIAL SERVICES, WELLS FARGO BANK, N.A., S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB, AND WELLS FARGO BANK SOUTH CENTRAL, N.A.** on the interested parties in this action by placing a true and correct copy enclosed in a sealed envelope as follows:

**Served Electronically Via the Court's CM/ECF System**

| *Plaintiff, In Pro Per*<br>*Rilla Huml* | *Attorneys for Defendant*<br>*Servis One Inc.* |
|---|---|
| Rilla Huml<br>25 Medici<br>Aliso Viejo, CA 92656<br><br>Tel.: 949-933-7075<br>Email: dreamlife7@att.net | Nicole Metral, Esq.<br>Cheryl S. Chang, Esq.<br>Christine Lee,Esq.<br>Erika Schulz, Esq.<br>BLANK ROME LLP<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067<br>Email: chang@blankrome.com<br>eschulz@blankrome.com<br>Tel.: 424-239-3400 | Fax: 424-239-3434 |
| *Attorneys for Defendant ZBS Law, LLP.*<br><br>Bradford E. Klein, Esq.<br>ZBS LAW, LLP.<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Email: bklein@zbslaw.com<br>Tel: 714-848-7920<br>Fax: 714-908-2615 | |

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on February   , 2021.

Carol Leach
_____
(Type or Print Name)

_____
(Signature of Declarant)

94000/HR1630/02519478-3

1

## <u>PROOF OF SERVICE</u>

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

5

6

On February 14, 2022, I caused to be served the foregoing document(s):

7

### DEFENDANTS REQUEST FOR JUDICIAL NOTICE

8

on the interested parties in this action addressed and sent as follows:

9

10

11

12

13

Brian P. Ballo
LAW OFFICE OF BRIAN BALLO
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Telephone: (949) 690-4100
Facsimile: (949) 315-3100
Email: *brian@ballo.law*

Former Attorney for *Plaintiff*
RILLA HUML

14

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

15

16

17

☐ **BY FEDEX:** I deposited such envelope(s) in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

18

19

20

21

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) listed above to be transmitted to the person(s) at the e-mail address(es) as indicated.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

22

☒ **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

Executed on February 14, 2022, at Los Angeles, California.

25

                                    /s/ AJ Cruickshank

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

Electronically Filed by Superior Court of California, County of Orange, 02/15/2022 08:56:00 AM.
30-2022-01244882-CU-OR-CJC - ROA #18 - DAVID H. YAMASAKI, Clerk of the Court By eHinguser, Deputy Clerk.
Case                                                                                          Page 272 of 277
ID #:282

1  BLANK ROME LLP
   Cheryl S. Chang (SBN 237098)
2  Chang@BlankRome.com
   Alice M. Hodsden (SBN 340796)
3  Alice.Hodsden@BlankRome.com
   2029 Century Park East, 6th Floor
4  Los Angeles, CA 90067
   Telephone:    424.239.3400
5  Facsimile:    424.239.3434
6
7  Attorneys for Defendants
   SERVIS ONE INC. dba BSI FINANCIAL SERVICES;
8  WILMINGTON SAVINGS FUND SOCIETY, FSB;
   AND CHRISTIANA TRUST
9

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## ORANGE COUNTY, CENTRAL JUSTICE CENTER

| | |
|---|---|
| RILLA HUML, an individual,<br><br>                  Plaintiff,<br><br>    vs.<br><br>BROUGHAM REO OWNER LP, a foreign limited partnership based in NEW YORK county in DELAWARE, doing business as Prime Asset Fund III, an unknown entity; SERVIS ONE, INC., a Delaware corporation, authorized to do business in California, doing business as BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware corporation, doing business, but not authorized do business, as CHRISTIANA TRUST, in California, as Trustee, for BROUGHAM FUND I TRUST, an unknown entity; and, Does 1 through 10,<br><br>                  Defendants. | Case No.: 30-2022-01244882-CU-OR-CJC<br>*[Assigned to Hon. Martha Gooding, Dept. 31]*<br><br>**DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC. dba BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND CHRISTIANA TRUST'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Date:    February 15, 2022<br>Time:    8:45 a.m.<br>Dept:    C20<br><br>Complaint filed:    February 14, 2022<br>Trial Date:    None Set |

146035.01269/128209113v.1

DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC.
DBA BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND CHRISTIANA
TRUST'S

# DECLARATION OF CHRISTOPHER L. CARMAN

I, Christopher L. Carman, do declare as follows:

1.      I am employed as a Vice President, Bankruptcy, Special Servicing Counsel for defendant Servis One, Inc. d/b/a BSI Financial Services, LLC ("BSI"). I make this declaration in support of Defendants Servis One, Inc. d/b/a BSI Financial Services ("BSI"); Wilmington Savings Fund Society, FSB; and Christiana Trust (collectively, the "Defendants") Opposition to the plaintiff Rilla Huml's ("Plaintiff") *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("Application"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently hereto.

2.      The information in this declaration is taken from BSI's business records. In the regular performance of my job functions, I am familiar with business records maintained by BSI for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time of an act or event by, or from information provided by, a person with knowledge of the activity and transactions reflected in such records, and are made and kept in the course of business activity conducted regularly by BSI. It is the regular practice of BSI to make these records. In connection with making this declaration, I have acquired personal knowledge of the matters stated herein by personally examining these business records and could and would testify competently hereto.

3.      I have reviewed the loan file for the loan ("Loan") of Plaintiff secured by the deed of trust ("Deed of Trust") recorded against real property located at 25 Medici, Aliso Viejo, CA 92656 ("Property").

4.      On or about February 21, 2017, BSI became the loan servicer on Plaintiff's Loan. BSI sent Plaintiff a correspondence dated February 28, 2017 that notified Plaintiff that BSI was the new servicer on the Loan.

5.      As of July 31, 2017, the unpaid principal balance on Plaintiff's Loan was $208,306.30.

6.      On or about October 25, 2017, Plaintiff defaulted on the Loan.

7.     On or about January 10, 2018, a BSI representative contacted Plaintiff by telephone to assess her financial situation and to explore options for her to avoid foreclosure.

8.     On January 10, 2018, BSI assigned Jamie Taylor as Plaintiff's single point of contact ("SPOC"). BSI informed Plaintiff of the assignment of her SPOC and her SPOC's contact information on or about January 10, 2018.

9.     BSI's records reflect that Plaintiff's SPOC asked if Plaintiff would be able to contribute $12,000.00 towards the modification of the Loan. Typically, the owner of a promissory note will request a down payment amount or contribution towards a modification in circumstances where a loan modification is approved. If the modification is approved, then the contribution amount, once received, would be credited to the account to pay down the outstanding amount due on the loan. Plaintiff was never required to make a payment prior to the submission of a loan modification application.

10.     On or about January 16, 2019, BSI received Plaintiff's incomplete loan modification application. Subsequently, Plaintiff provided the required additional documents, and on January 23, 2019, BSI confirmed the receipt of Plaintiff's complete loan modification application.

11.     On or about January 29, 2019, BSI denied Plaintiff's loan modification application. A borrower's qualification for a loan modification is contingent on a number of factors, including factors unrelated to her income and/or amounts due on the Loan. Here, BSI denied the Plaintiff's application because the Loan-to-Value ratio exceeded the Loan's investor's requirements for providing a modification. The Loan-to-Value ratio calculation takes into account the total amount of the overall loan and the value of the property. Plaintiff's income has no bearing on the Loan-to-Value ratio. Furthermore, the amounts owing and/or paid on the Loan also have no bearing on the Loan-to-Value ratio.

12.     On February 27, 2019, Plaintiff's SPOC received Plaintiff's modification appeal letter via email. BSI reviewed Plaintiff's appeal letter and confirmed that the Loan-to-Value ratio exceeded the Loan's investor's requirements for providing a modification. On February 28,

**DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC. DBA BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND CHRISTIANA TRUST'S**

1  2019, BSI sent Plaintiff a letter denying her appeal of the denial of her loan modification
2  application.

3        13.    On January 17, 2019, Plaintiff sent a Qualified Written Request for Information
4  ("QWR") to BSI asserting what she believed to be "Lender and Servicer Errors."

5        14.    On March 6, 2019, BSI responded the QWR.  In its March 5, 2019 response, BSI
6  provided payment histories of the Loan while it was serviced by Wells Fargo and BSI, a
7  Reinstatement Quote showing the claimed arrears of delinquencies on the account, a complete
8  itemization of all advances and charges against the loan, Annual Escrow Account Disclosure
9  Statements, and numerous other responsive documents and information.

10        15.    On March 26, 2019, Plaintiff sent a QWR to BSI asserting what she believed to be
11  "Lender and Servicer Errors."

12        16.    On May 2, 2019, BSI responded to Plaintiff's QWR with a letter providing a full
13  accounting of the Loan and detailing the prior assignment of her SPOC and the denial of her
14  appeal of her loan modification application denial.  BSI again undertook and set forth a detailed
15  accounting of the Loan to ensure that the correct payments were made on the Loan as they were
16  due.  The May 2, 2019 letter confirms that BSI determined the correct amounts due on the Loan
17  and that the mortgage statements sent to Plaintiff were accurate.

18        17.    On February 24, 2021, Plaintiff sent a QWR to BSI "disput[ing] the validity of
19  [the] lawful ownership, funding, entitlement right, and the current debt" and also requesting "the
20  current amount needed to pay-off the loan in full."

21        18.    On April 9, 2021, BSI responded to Plaintiff's QWR with a letter providing a
22  payoff calculation.  BSI again undertook and explained to Plaintiff the accounting of the Loan to
23  ensure that the correct payments were made on the Loan as they were due.  The March 10, 2021
24  letter confirms that BSI determined the correct amounts due on the Loan..

25        19.    On June 16, 2021, Plaintiff sent yet another QWR to BSI.

26        20.    On  August 13, 2021, BSI responded to Plaintiff's QWR.  BSI again undertook the
27  accounting of the Loan to ensure that the correct payments were made on the Loan as they were

28

**DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC.
DBA BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND
CHRISTIANA TRUST'S**

1   due. The August 13, 2021 response letter confirms that BSI determined the correct amounts due

2   on the Loan.

3        23.    As of February 14, 2022, the current unpaid principal balance owed on the Loan is

4   $207,203.25, and Plaintiff has been in default on the Loan for 51 months.

5        I declare under penalty of perjury under the laws of the State of California that the

6   foregoing is true and correct.

7        Executed this 15th day of Feb., 2022, at Dallas, Texas.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC. DBA BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND CHRISTIANA TRUST'S**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

  I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

  On **February 15, 2022**, I served the foregoing document(s): DECLARATION OF CHRISTOPHER L. CARMAN IN SUPPORT OF DEFENDANTS SERVIS ONE, INC. dba BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY, FSB, AND CHRISTIANA TRUST'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION on the interested parties in this action addressed and sent as follows:

Rilla Huml
25 Medici
Aliso Viejo, CA 92656
Plaintiff, Pro Se
(949) 215-7777
dreamlife7@att.net

☐ **BY ENVELOPE:** by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☐ **BY MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office or home of the addressee(s) as indicated.  I am "readily familiar" with this firm's practice of collection and processing documents for mailing.  It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **BY FEDEX:** I caused such envelope(s) to be deposited in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, or CCP § 1010.6(e), as applicable, I caused the document(s) listed above to be transmitted to the person(s) at the e-mail address(es) as indicated.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

☒ **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  Executed on **February 15, 2022**, at Los Angeles, California.

_Michelle Grams_
_____
Michelle Grams